UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE ROSENFELD,

                Plaintiff,

v.

TARA LENICH,

                Defendant.

**COMPLAINT & JURY DEMAND**

17 Civ. _____

Plaintiff Stephanie Rosenfeld, by her attorneys Emery Celli Brinckerhoff & Abady LLP, alleges as follows:

1. Tara Lenich, a supervising attorney at the Kings County District Attorney's Office ("Kings County DA"), forged judicial orders to conduct an illegal wiretap on Plaintiff's private cell phone for months. Unbeknownst to Plaintiff, Lenich spent months reviewing Plaintiff's private communications with family and friends. And then Lenich used and disclosed Plaintiff's private communications to harass and harm Plaintiff and her family.

2. On April 3, 2017, Lenich pleaded guilty to two counts of illegal interception of communications in connection with her illegal wiretapping of Plaintiff's cell phone. She is scheduled to be sentenced on February 5, 2018.

3. Lenich's unlawful conduct has had a devastating impact on Plaintiff's life. Plaintiff was, until recently, an Assistant District Attorney with the Kings County DA. After the illegal wiretapping operation was made public and covered extensively in the media, she endured months of humiliating looks and behind-the-back comments from supervisors and colleagues at the Kings County DA, defense attorneys in the courthouse, and even judges and court staff.

1

Ultimately, she could no longer endure the humiliation and was forced to resign as an Assistant District Attorney, a post she had held for the past eleven and a half years. She has not been able to find another job. Plaintiff's full name is included in this lawsuit only because her name has already been mentioned repeatedly in articles that are recorded on the internet and that will continue to haunt her anytime her name is typed into an internet search engine.

4. Plaintiff now seeks redress against Lenich under the Electronic Communications Privacy Act, the United States Constitution, and state common law.

## PARTIES

5. Plaintiff Stephanie Rosenfeld is a United States citizen and resident of Brooklyn, New York.

6. At all relevant times, Tara Lenich was the Deputy Bureau Chief in Charge of Special Investigations at the Kings County DA, acting in the capacity of agent, servant, and employee of the City of New York, within the scope of her employment as such, and acting under color of state law. Lenich is sued in her individual capacity.

## JURISDICTION & VENUE

7. This action arises under 18 U.S.C. §§ 2510, *et seq.*, 18 U.S.C. §§ 2701, *et seq.*, the Fourth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.

8. This jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1367(a).

9. The acts complained of occurred in the Eastern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

10. Plaintiff demands trial by jury in this action.

## FACTS

**Plaintiff's Work at the Kings County DA**

11. Plaintiff joined the Kings County DA's office as an Assistant District Attorney ("ADA") in January 2006.

12. Joining the Kings County DA's office fulfilled Plaintiff's lifelong dream of being a prosecutor in New York City.

13. As an ADA, Plaintiff was the lead trial attorney on many criminal trials and served as a supervising attorney on many more.

14. Plaintiff worked with Lenich in the Kings County DA's Red Zone Trial Bureau, one of the Kings County DA's general practice bureaus, from approximately 2007 until approximately 2012, when Lenich was transferred from the Red Zone to the Kings County DA's Special Investigations Bureau.

15. Plaintiff was transferred to the Kings County DA's School Advocacy Bureau in July 2016, where she remained until she left the Kings County DA in May 2017.

**Lenich's Work at the Kings County DA**

16. From May 2015 through November 28, 2016, Lenich was the Deputy Bureau Chief in charge of Special Investigations at the Kings County DA.

17. Upon information and belief, Lenich supervised between two and six ADAs who conducted investigations within the Kings County DA.

18. Upon information and belief, Lenich also supervised the Kings County DA's wire room staff, which included Kings County DA employees who were not attorneys, as well as members of the New York City Police Department.

19. Upon information and belief, Lenich had final decision-making authority within the Kings County DA over whether to seek a wiretap, how a wiretap was set up, and the operation of a wiretap.

**Conducting a Wiretap at the Kings County DA**

20. At all relevant times, ADAs seeking to conduct a wiretap were required to file a wiretap application with a court of competent jurisdiction, along with an affidavit demonstrating the need for the wiretap and the requisite probable cause.

21. Kings County DA policy required that a supervisor, such as Lenich, approve these wiretap applications.

22. Upon information and belief, all Kings County DA wiretaps are required to be conducted from the Kings County DA's wire room.

23. Only those individuals named in the order authorizing the wiretap are permitted to review the communications that are intercepted through the wiretap. Upon information and belief, a wiretap order typically authorizes a minimum of two ADAs, as well as all of the supervisors above those ADAs in the chain of command, to review the intercepted communications.

**Lenich Wiretaps Plaintiff's Private Cell Phone**

24. Between approximately June 2015 and December 2015, Lenich intercepted and recorded electronic communications sent to and from Plaintiff's private cell phone.

25. Lenich forged the signatures of various New York State Supreme Court Justices on documents that purported to be judicial orders authorizing the interception and recording of Plaintiff's private cell phone.

26. Upon information and belief, Lenich and/or someone acting on Lenich's behalf sent the forged orders (or caused them to be sent) to Plaintiff's cell phone provider to allow for

the interception and recording of the communications transmitted to and from Plaintiff's private cell phone.

27. In total, Lenich created, submitted, and/or caused to be submitted seven forged judicial orders to intercept the oral and electronic communications transmitted to and from Plaintiff's private cell phone.

28. Plaintiff used her private cell phone to communicate with her friends and family, and Lenich contemporaneously intercepted and recorded those private communications.

29. Neither Plaintiff nor any party to Plaintiff's private communications consented to having those private communications intercepted or recorded.

30. Lenich reviewed Plaintiff's private communications that were intercepted under the guise of fraudulent court orders.

31. When she reviewed Plaintiff's private communications, Lenich knew that they had not been intercepted lawfully.

32. Upon information and belief, Lenich used information contained in Plaintiff's private communications to harass Plaintiff and her family and alienate affections and/or direct other persons to harass Plaintiff and her family and alienate affections.

33. In or about and between May 2015 and November 2016, Lenich forged search warrants authorizing the seizure of text messages sent to and from Plaintiff's private cell phone.

34. Upon information and belief, Lenich used the forged search warrants to gain access to Plaintiff's cell phone provider and obtain and review text messages that were sent to or from Plaintiff's private cell phone and stored with Plaintiff's cell phone provider.

35. Lenich also used forged court orders and other documents to intercept and record oral and electronic communications sent to and from another cellular phone that does not belong

to Plaintiff, from approximately August 2015 through November 2016.

36. Upon information and belief, the oral and electronic communications Lenich intercepted from this other phone included communications sent to and/or from Plaintiff.

37. Plaintiff did not authorize the interception of such communications.

38. Upon information and belief, Lenich disclosed Plaintiff's private communications to Kings County DA employees and others.

39. Upon information and belief, Lenich used information she gathered from Plaintiff's private communications to harass Plaintiff and her family.

**Criminal Charges Are Filed Against Lenich**

40. On or about November 28, 2016, the Kings County DA filed a criminal complaint in Kings County Criminal Court charging Lenich with two counts of eavesdropping under Penal Law § 250.05 and two counts of criminal possession of a forged instrument in the second degree under Penal Law § 170.25.

41. The complaint charged that Lenich "falsely made or created court orders" authorizing "various forms of electronic surveillance including eavesdropping of telephonic and electronic communications" pertaining to two cellular phones.

42. It further charged that Lenich "requested and was provided computerized access to review telephonic and electronic communications over" Plaintiff's cellular phone and that Lenich "did review the telephonic and electronic communications intercepted over" Plaintiff's cellular phone.

43. Plaintiff learned that her private communications had been intercepted, recorded, and obtained on November 28, 2016, just hours before the Kings County DA filed its criminal complaint against Lenich.

44. Lenich's arrest was covered extensively in the media. Plaintiff's name was leaked to the media, which reported that one of the phones that Lenich wiretapped belonged to Plaintiff. Plaintiff's name appeared in multiple news sources for days. Reporters staked out Plaintiff's private residence and accosted her and her family in an effort to obtain more information about the wiretapping operation.

**Lenich is Indicted by a Federal Grand Jury**

45. On or about March 23, 2017, a federal grand jury indicted Lenich on two counts of illegal interception of communications in violation of 18 U.S.C. §§ 2511(1)(a), 2511(4)(a), and 3551 *et seq.* A copy of the indictment is attached hereto as Exhibit A.

46. The indictment alleges that Lenich, "without lawful authorization, knowingly and intentionally intercepted, endeavored to intercept and procured another person to intercept and endeavor to intercept the wire, oral and electronic communications" of Plaintiff.

47. On April 3, 2017, Lenich pleaded guilty to both counts in the indictment. She is scheduled to be sentenced in February 2018.

**Plaintiff's Substantial Damages**

48. Plaintiff was forced to leave her job at the Kings County DA as a result of Lenich's unlawful wiretapping operation and the dissemination of her private communications throughout the Kings County DA's office and beyond.

49. Kings County DA employees were talking about Plaintiff behind her back; her supervisors looked at her differently; defense attorneys and even judges treated her differently.

50. She could not remain at the Kings County DA under these circumstances, and she left in May 2017.

51. Despite her significant efforts, Plaintiff has yet to find another job. A simple

Google search of her name reveals the extensive media coverage she received as a result of this unlawful wiretapping operation, making it extremely difficult for her to find new employment.

52. Since the wiretapping operation was revealed to Plaintiff in November 2016, she has started seeing a psychiatrist, who has diagnosed her with post-traumatic stress disorder.

53. Plaintiff has been accosted by reporters multiple times in front of her home; on at least one occasion, a reporter approached her while she was with her children.

54. Plaintiff has become scared to walk in her neighborhood on her own for fear she is being followed or subject to surveillance.

55. Plaintiff has also had recurring dreams in which she is being watched and/or followed—sometimes by a stranger and sometimes by Lenich herself.

56. In December 2017, Plaintiff submitted a Victim Impact Statement to Judge William F. Kuntz, United States District Judge, Eastern District of New York, in connection with Lenich's sentencing. Plaintiff's Victim Impact Statement included the following passages describing the damages Plaintiff has suffered as a result of Lenich's misconduct:

- Tara's actions have destroyed my sense of security and I am afraid I will never get it back. I fear the loss of trust and affection from my husband; I am embarrassed around friends and family; and I am constantly anxious, waiting for Tara to again use whatever information she gathered against me.

- After Tara's abuse was revealed, the press was constantly ringing my bell, making me terrified to answer the door. Every time the bell rang, I ran upstairs. I wouldn't even let my children go near the front door because I was terrified someone would take their picture.

- Shortly after news broke of Tara's crime, I was scheduled to begin a hearing and trial. With extreme embarrassment and humiliation, I had to approach the bench with the defense attorney and ask that there be a delay in the proceedings. My biggest concern was that the press would be camped outside the courtroom or even sitting in the front row snapping pictures. Not only was I concerned for myself, but, more importantly, I didn't want the hullabaloo surrounding me to put undue press scrutiny on the defendant. I didn't want the press to suddenly take interest in the defendant's case. The defendant deserved a fair trial without press involvement. And so the proceedings were delayed, and I walked

out of the courthouse mortified and humiliated in front of a Justice of the Supreme Court and a defense attorney.

- Tara poisoned my workplace against me. I could no longer walk through the lobby of the office building without people staring at me side-eyed wondering did she or didn't she have an affair with the police officer. I could no longer walk into court without defense attorneys and judges trying to talk to me about what happened. The humiliation every time somebody spoke to me about what happened was crippling.

- My LinkedIn profile was viewed so many times by court employees and defense attorneys and other ADAs that it recorded an over 2000% spike in viewership. I had no choice but to shut down all of my social media platforms and try to erase any photographs that already existed of me online.

- Because of Tara, I no longer work at a job I loved, I have lost my paycheck and future earning potential and my pension. I lost my career. And the harm continues. Anytime I apply for a new job, potential employers will google me and see the press stories. That could be enough to ruin any potential future employment. So far, despite my attempts, I have still been unable to procure a new job.

## FIRST CLAIM
(Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, 18 U.S.C. §§ 2701 *et seq.*)

57. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

58. Lenich intentionally intercepted, used, reviewed, recorded, and disclosed Plaintiff's private electronic and oral communications in a manner that was not authorized under law, in violation of 18 U.S.C. § 2511(1).

59. Plaintiff is a subscriber of an electronic communication service through which electronic communications sent to and from her cellular phone, including text messages, are transmitted and stored.

60. Through the use of a fraudulent search warrant, Lenich intentionally obtained access to a facility through which Plaintiff's electronic communication service is provided and Plaintiff's electronic communications are stored, and thereby obtained Plaintiff's stored electronic communications, in violation of 18 U.S.C. § 2701(a).

9

61. As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
(42 U.S.C. § 1983/Fourth and Fourteenth Amendments)

62. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

63. By intercepting, searching, reviewing, using, and storing Plaintiff's private communications without cause and without judicial authorization, Lenich deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

64. Lenich acted under pretense and color of state law and within the scope of her employment as a Kings County DA employee. Her actions were taken without authority of law and in abuse of her powers. She acted willfully, knowingly, and with specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

65. As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
(Tortious Interference with Employment)

66. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

67. At all relevant times, Plaintiff was an employee of the Kings County DA.

68. Lenich interfered with Plaintiff's employment relationship with the Kings County

DA by intercepting Plaintiff's private communications, by disclosing Plaintiff's private communications to other members of the Kings County DA, and by using Plaintiff's private communications to harass and harm Plaintiff and interfere with her ability to do her job.

69. Lenich's conduct was unlawful and was undertaken willfully and for the sole purpose of harming Plaintiff.

70. As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff was no longer able to continue working for the Kings County DA and sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1. Compensatory damages in an amount to be determined at trial for the economic, psychological, and emotional injuries sustained by Plaintiff as a result of the events alleged herein.

2. Punitive damages in an amount to be determined at trial.

3. An order awarding Plaintiff reasonable attorneys' fees, together with the costs of this action.

4. Such other and further relief as the Court may deem appropriate.

Dated: December 14, 2017
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

Richard D. Emery
Samuel Shapiro
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff*