UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE ROSENFELD,

                 Plaintiff,

      v.

TARA LENICH; CITY OF NEW YORK;
LU-SHAWN M. THOMPSON, AS
ADMINISTRATOR OF ESTATE OF
KENNETH P. THOMPSON; ERIC
GONZALEZ; WILLIAM SCHAEFER; BRIAN
DONAHUE; and JOHN/JANE DOES 1-10,

                 Defendants.

**FIRST AMENDED
COMPLAINT &
JURY DEMAND**

17 Civ. 7299

Plaintiff Stephanie Rosenfeld, by her attorneys Emery Celli Brinckerhoff & Abady LLP,
alleges as follows:

1.      Tara Lenich, a supervising attorney at the Kings County District Attorney's

Office ("Kings County DA"), forged a series of judicial orders to conduct an illegal wiretap on

Plaintiff's private cell phone for months. Kings County DA supervisors, including District

Attorney Eric Gonzalez, allowed this repeated, flagrant violation of Plaintiff's privacy to happen

through their lack of supervision and tacit approval. Gonzalez and other Kings County DA

supervisors then compounded their misconduct by using and disclosing Plaintiff's private

communications even though they knew they had been illegally obtained. Plaintiff's name was

even leaked to the media, leading to days of coverage and speculation about Plaintiff's private

life. Plaintiff's full name is included in this lawsuit only because her name has already been

mentioned repeatedly in articles that are recorded on the internet and that will continue to haunt

her anytime her name is typed into an internet search engine.

2.      On April 3, 2017, Lenich pleaded guilty to two counts of illegal interception of

communications in connection with her illegal wiretapping of Plaintiff's cell phone. She is

scheduled to be sentenced on February 2, 2018.

3.      Plaintiff has been devastated by this entire series of events. She was, until recently, an Assistant District Attorney with the Kings County DA. After the illegal wiretapping operation was made public and received extensive media coverage, she endured months of humiliating looks and behind-the-back comments from supervisors and colleagues at the Kings County DA, defense attorneys in the courthouse, and even judges and court staff. Ultimately, she could no longer endure the humiliation and was forced to resign as an Assistant District Attorney, a post she had held for the past eleven and a half years. She has not been able to find another job.

4.      Plaintiff now seeks redress under the Electronic Communications Privacy Act, the United States Constitution, and state common law against Lenich, the Kings County DA supervisors who allowed Lenich to invade Plaintiff's privacy and who used and disclosed Plaintiff's communications knowing they had been illegally obtained, and the City of New York.

## PARTIES

5.      Plaintiff Stephanie Rosenfeld is a United States citizen and resident of Brooklyn, New York.

6.      At all relevant times, Tara Lenich was the Deputy Bureau Chief in Charge of Special Investigations at the Kings County DA, acting in the capacity of agent, servant, and employee of Defendant City of New York, within the scope of her employment as such, and acting under color of state law. Upon information and belief, Lenich was responsible for the policy, practice, and supervision of the Kings County DA wire room and of wiretaps conducted by the Kings County DA. Lenich is sued in her individual capacity.

7.      Defendant City of New York ("City") is a municipal corporation that is

responsible for the disciplinary, management, and administrative practices of the Kings County

DA.  The Kings County DA, through its senior officials, promulgates and implements

administrative policies, including those with respect to applications for wiretaps and the

operation of wiretaps.

8.      From 2014 until his death on October 9, 2016, Kenneth P. Thompson was the

District Attorney for Kings County, acting in the capacity of agent, servant, and employee of

Defendant City, within the scope of his employment as such, and acting under color of state law.

Thompson was responsible for the policy, practice, supervision, implementation and conduct of

all Kings County DA matters and was responsible for the training, supervision and conduct of all

Kings County DA personnel, including Defendant Tara Lenich. Since Thompson is deceased,

Lu-Shawn M. Thompson, who is, upon information and belief, the Administrator of Thompson's

Estate, is named as a defendant herein.

9.      From 2014 until approximately October 9, 2016, Eric Gonzalez was the Deputy

District Attorney for the Kings County DA; from October 9, 2016 until approximately January

21, 2018, Gonzalez was the Acting District Attorney for Kings County; since January 21, 2018,

Gonzalez has been the District Attorney for Kings County. In all three roles, Gonzalez acted in

the capacity of agent, servant, and employee of Defendant City, within the scope of his

employment as such, and under color of state law. Gonzalez was responsible for the policy,

practice, supervision, implementation and conduct of all Kings County DA matters and was

responsible for the training, supervision and conduct of all Kings County DA personnel,

including Defendant Tara Lenich. Gonzalez is sued in his individual capacity.

10.     At all relevant times, William Schaeffer was an Executive Bureau Chief within

the Kings County DA, acting in the capacity of agent, servant, and employee of Defendant City,

within the scope of his employment as such, and acting under color of state law. Upon

information and belief, Schaeffer was responsible for the policy, practice, supervision,

implementation and conduct of Kings County DA matters and was responsible for the training,

supervision and conduct of Kings County DA personnel, including Defendant Tara Lenich.

Schaeffer is sued in his individual capacity.

11.     At all relevant times, Brian Donahue was an Assistant Deputy Chief Investigator

within the Kings County DA, acting in the capacity of agent, servant, and employee of

Defendant City, within the scope of his employment as such, and acting under color of state law.

Upon information and belief, Donahue was responsible for reviewing all judicial orders

authorizing the Kings County DA to conduct wiretaps to ensure they contained proper signatures

and seals, as well as physically setting up the wiretaps in a designated, controlled location.

Donahue is sued in his individual capacity.

12.     At all relevant times, John/Jane Does 1-5 were employees of the Kings County

DA, acting in the capacity of agents, servants, and employees of Defendant City, within the

scope of their employment as such, and acting under color of state law. John/Jane Does 1-5 were

responsible for overseeing wiretaps that were conducted by the Kings County DA, as well as

setting and implementing Kings County DA policy with respect to overseeing wiretap operations

conducted by the Kings County DA. John/Jane Does 1-5 are sued in their individual capacities.

13.     At all relevant times, John/Jane Does 6-10 were employees of the Kings County

DA, acting in the capacity of agents, servants, and employees of Defendant City, within the

scope of their employment as such, and acting under color of state law. John/Jane Does 6-10

used and/or disclosed Plaintiff's private communications knowing they were obtained

unlawfully. John/Jane Does 6-10 are sued in their individual capacities.

4

14.     Defendants Thompson, Gonzalez, Schaffer, and John/Jane Does 1-5 are collectively referred to as the "Supervisory Defendants."

15.     Lenich, the Supervisory Defendants, Donahue, and John/Jane Does 6-10 are collectively referred to as the "Individual Defendants."

## JURISDICTION & VENUE

16.     This action arises under 18 U.S.C. § 2510, *et seq.*, 18 U.S.C. §§ 2701, *et seq.*, the Fourth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.

17.     This jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a).

18.     The acts complained of occurred in the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

19.     Plaintiff demands trial by jury in this action.

## FACTS

**Plaintiff's Work at the Kings County DA**

20.     Plaintiff joined the Kings County DA's office as an Assistant District Attorney ("ADA") in January 2006.

21.     Joining the Kings County DA's office fulfilled Plaintiff's lifelong dream of being a prosecutor in New York City.

22.     As an ADA, Plaintiff was the lead trial attorney on many criminal trials and served as a supervising attorney on many more.

23.     Plaintiff worked with Lenich in the Kings County DA's Red Zone Trial Bureau,

one of the Kings County DA's general practice bureaus, from approximately 2007 until approximately 2012, when Lenich was transferred from the Red Zone to the Kings County DA's Special Investigations Bureau.

24.     Plaintiff was transferred to the Kings County DA's School Advocacy Bureau in July 2016, where she remained until she left the Kings County DA in May 2017.

**Lenich's Policymaking Authority**

25.     From May 2015 through November 28, 2016, Lenich was the Deputy Bureau Chief in charge of Special Investigations at the Kings County DA.

26.     Upon information and belief, Lenich reported to Schaeffer.

27.     Upon information and belief, Lenich had the authority to report and make requests directly to the District Attorney, without going through anyone else in the chain of command.

28.     Upon information and belief, Schaeffer, Thompson, and later Gonzalez were all responsible for supervising Lenich and overseeing the investigations Lenich was conducting personally as well as the investigations she was overseeing.

29.     Upon information and belief, Lenich supervised between two and six ADAs who conducted investigations within the Kings County DA.

30.     Upon information and belief, Lenich also supervised the Kings County DA's wire room staff, which included Kings County DA employees who were not attorneys, as well as members of the New York City Police Department.

31.     Upon information and belief, in her role as Deputy Bureau Chief, Lenich had the authority to open a Kings County DA investigation, decide whether to press charges against a suspect, decide not to prosecute a suspect, and offer plea deals to suspects and arrested individuals.

32.     Upon information and belief, as the supervisor of the Kings County DA's wire room, Lenich had the authority to set Kings County DA policy with respect to the operation of a wiretap, the oversight of wiretaps, the documentation that is required when conducting wiretaps, and reporting requirements of individuals working under her command in the wire room.

33.     Upon information and belief, Lenich had final decision-making authority within the Kings County DA over whether to seek a wiretap, how a wiretap was set up, and the operation of a wiretap.

**Conducting a Wiretap at the Kings County DA**

34.     At all relevant times, ADAs seeking to conduct a wiretap were required to file a wiretap application with a court of competent jurisdiction, along with an affidavit demonstrating the need for the wiretap and the requisite probable cause.

35.     Kings County DA policy required that a supervisor, such as Lenich, approve these wiretap applications.

36.     Upon information and belief, once an order authorizing a wiretap is properly signed and sealed by a court of competent jurisdiction, it is given to Donahue, an Assistant Deputy Chief Investigator, who is responsible for ensuring the order is properly signed and sealed, and for setting up the wiretap in the Kings County DA's wire room.

37.     Upon information and belief, Donahue was responsible for reviewing the order authorizing a wiretap to ensure it had all necessary signatures and a raised judicial seal.

38.     Upon information and belief, all Kings County DA wiretaps are required to be conducted out of the Kings County DA's wire room.

39.     Upon information and belief, Kings County DA policy did not permit wiretaps to be conducted using personal laptops.

40.     Only those individuals named in the order authorizing the wiretap are permitted to review the communications that are intercepted through the wiretap. Upon information and belief, a wiretap order typically authorizes a minimum of two ADAs, as well as all of the supervisors above those ADAs in the chain of command, to review the intercepted communications.

**Lenich Uses Kings County DA Equipment, Facilities, and Personnel to Conduct a Sweeping Eavesdropping Operation on Plaintiff's Private Cell Phone**

41.     Between approximately June 2015 and December 2015, Lenich intercepted and recorded electronic communications sent to and from Plaintiff's private cell phone.

42.     Lenich forged the signatures of various New York State Supreme Court Justices on documents that purported to be judicial orders authorizing the interception and recording of Plaintiff's private cellular phone.

43.     Upon information and belief, Lenich showed the forged orders to Donahue, who reviewed them and accepted them.

44.     Upon information and belief, none of the forged orders Lenich showed to Donahue had a raised judicial seal.

45.     Upon information and belief, Lenich and/or Donahue sent the forged orders (or caused them to be sent) to Plaintiff's cell phone provider to allow for the interception and recoding of the communications transmitted to and from Plaintiff's private cell phone.

46.     In total, Lenich created and submitted and/or caused to be submitted at least *seven* forged judicial orders to intercept the oral and electronic communications transmitted to and from Plaintiff's private cell phone.

47.     Plaintiff used her private cell phone to communicate with her friends and family, and Lenich contemporaneously intercepted and recorded those private communications.

48.     Neither Plaintiff nor any party to Plaintiff's private communications consented to having those private communications intercepted or recorded.

49.     Lenich reviewed Plaintiff's private communications that were intercepted under the guise of fraudulent court orders.

50.     When she reviewed Plaintiff's private communications, Lenich knew that they had not been intercepted lawfully.

51.     In or about and between May 2015 and November 2016, Lenich forged multiple search warrants authorizing the seizure of text messages sent to and from Plaintiff's private cell phone.

52.     Upon information and belief, Lenich used the forged search warrants to gain access to Plaintiff's cell phone provider and obtain and review text messages that were sent to or from Plaintiff's private cell phone and stored with Plaintiff's cell phone provider.

53.     Upon information and belief, Lenich used information contained in Plaintiff's private communications to harass Plaintiff and her family and alienate affections and/or direct other persons to harass Plaintiff and her family and alienate affections.

54.     Lenich also used forged multiple court orders and other documents to intercept and record oral and electronic communications sent to and from another cellular phone that does not belong to Plaintiff, from approximately August 2015 through November 2016.

55.     Upon information and belief, the oral and electronic communications Lenich intercepted from this other phone included communications sent to and/or from Plaintiff.

56.     Plaintiff did not authorize the interception of such communications.

57.     Upon information and belief, Lenich disclosed Plaintiff's private communications to Kings County DA employees and others.

58.     Upon information and belief, Lenich used Kings County DA equipment and facilities to intercept, record, and review the oral and electronic communications sent to and/or from Plaintiff's cell phone.

**Kings County DA Supervisors Fail to Protect Plaintiff**

59.     Upon information and belief, Lenich told other Kings County DA employees that the unlawful wiretapping operation she conducted against Plaintiff was part of a confidential law enforcement investigation.

60.     Lenich's unlawful wiretapping operation against Plaintiff was not part of any law enforcement investigation.

61.     Upon information and belief, Schaeffer, Thompson, and Gonzalez were responsible for knowing what investigations Lenich was conducting at all times.

62.     Schaeffer, Thompson, and Gonzalez knew Lenich was not conducting any law enforcement operation against Plaintiff.

63.     Upon information and belief, the Supervisory Defendants knew, or should have known, Lenich was conducting an unlawful wiretapping operation for approximately eighteen months because Lenich submitted forged judicial orders to Donahue that were stored within the Kings County DA's office, she used Kings County DA equipment and facilities to conduct her operation, she claimed she was conducting a confidential law enforcement investigation that did not exist, she was using Kings County DA equipment and facilities to transmit forged court orders to cellular phone providers, and she needed the assistance of other Kings County DA employees to conduct a wiretapping operation of this breadth and length.

64.     Upon information and belief, Lenich was also the subject of multiple EEOC complaints from fellow ADAs during the period in which she was conducting the unlawful

wiretaps about which the Supervisory Defendants knew or should have known. Upon information and belief, the complaints detailed erratic behavior, including barging into rooms, kicking open doors, and calling colleagues names. As a result of these complaints, upon information and belief, Lenich was ordered to undergo sensitivity training.

65.     These complaints and the resulting sensitivity training alerted, or should have alerted, the Supervisory Defendants to Lenich's erratic behavior and compelled them to monitor her more closely.

66.     Despite their actual and/or constructive knowledge that Lenich was conducting unlawful wiretaps for a period of approximately eighteen months, the Supervisory Defendants permitted, tolerated, and were deliberately indifferent to Lenich's conduct, allowing her to intercept and record months' worth of Plaintiff's private communications.

67.     The Supervisory Defendant's deliberate indifference to Lenich's misconduct violated Section 3-1.3 of the National Prosecution Standards, Third Edition, issued by the National District Attorneys Association, which requires prosecutors who become aware that "evidence has been illegally obtained" to "take affirmative steps to investigate and remediate such problems." It also violated Section 2.12(f) of the American Bar Association's Standards on Prosecutorial Investigations, which states that "[t]he prosecutor should stay informed of actions of law enforcement agents and contract personnel throughout the use of non-consensual electronic surveillance and should take appropriate steps to determine whether the required procedures are being followed by those carrying out the surveillance."

**Criminal Charges Are Filed Against Lenich**

68.     On or about November 28, 2016, the Kings County DA filed a criminal complaint in Kings County Criminal Court charging Lenich with two counts of eavesdropping under Penal

Law § 250.05 and two counts of criminal possession of a forged instrument in the second degree under Penal Law § 170.25.

69.     The complaint charged that Lenich "falsely made or created court orders" authorizing "various forms of electronic surveillance including eavesdropping of telephonic and electronic communications" pertaining to two cellular phones.

70.     It further charged that Lenich "requested and was provided computerized access to review telephonic and electronic communications over" Plaintiff's cellular phone and that Lenich "did review the telephonic and electronic communications intercepted over" Plaintiff's cellular phone.

71.     Plaintiff learned that her private communications had been intercepted, recorded, and obtained on November 28, 2016, just hours before the Kings County DA filed its criminal complaint against Lenich.

72.     Upon information and belief, the Supervisory Defendants and Donahue all knew prior to November 28, 2016 that Lenich had intercepted Plaintiff's private communications and that Plaintiff's private communications were stored on Lenich's laptop.

73.     Rather than arrest Lenich, the Supervisory Defendants did nothing, allowing Lenich continued access to Plaintiff's private communications and providing her with an opportunity to potentially delete or destroy evidence.

74.     Lenich's arrest was covered extensively in the media. Plaintiff's name was leaked to the media, which reported that one of the phones that Lenich wiretapped belonged to Plaintiff. Plaintiff's name appeared in multiple news sources for days. Reporters staked out Plaintiff's private residence and accosted her and her family in an effort to obtain more information about the wiretapping operation.

**The Kings County DA Uses and Discloses Plaintiff's Private Communications**

75.     Upon information and belief, Schaeffer, Gonzalez, Donahue, and Does 1-10 received, used, reviewed, and disclosed copies of telephonic and electronic communications that were unlawfully intercepted from Plaintiff's private cellular phone.

76.     Upon information and belief, Schaeffer, Gonzalez, Donahue, and Does 1-10 knew Plaintiff's communications had been unlawfully obtained at the time they received, used, reviewed, and disclosed them because they knew Lenich had forged court orders to wiretap Plaintiff's cell phone.

77.     Upon information and belief, Schaeffer, Gonzalez, Donahue, and Does 1-10 all disclosed Plaintiff's private, unlawfully obtained communications to one another, as well as others, without Plaintiff's permission.

78.     Neither Plaintiff nor any party to the private communications consented to anyone from the Kings County DA using or disclosing Plaintiff's private communications.

79.     On December 6, 2016, Plaintiff's counsel sent a letter to the Kings County DA, requesting that the office:

     i.    Provide Plaintiff's counsel with a copy of all of the private communications that were unlawfully intercepted by Lenich or any other member of the Kings County DA;

     ii.    Provide Plaintiff's counsel with a copy of all court orders and any supporting documents that Lenich or any other member of the Kings County DA used to obtain and record the private communications;

     iii.    Destroy all other copies of Plaintiff's intercepted communications in the possession of the Kings County DA, or in the alternative, maintain all other copies under seal and inaccessible to anyone absent permission from a court of competent jurisdiction, with notice to Plaintiff;

     iv.    Identify all individuals and entities to whom the Kings County DA provided copies of Plaintiff's private communications;

13

v.  Reveal to Plaintiff's counsel the results of the Kings County
DA's search of Lenich's home and computers and the
likelihood that Lenich or her counsel could still have any of
Plaintiff's private communications; and

vi.  Provide Plaintiff's counsel with notice of any attempt to review
or obtain Plaintiff's private communications.

80.  The Kings County DA refused to identify the individuals who reviewed Plaintiff's

private communications, return Plaintiff's private communications that were unlawfully

intercepted, or confirm that all copies of Plaintiff's private communications have been destroyed.

81.  Upon information and belief, despite receiving this letter from Plaintiff's counsel,

Gonzalez disclosed, or directed the disclosure of, Plaintiff's private communications to the

United States Department of Justice ("DOJ") even though he knew Plaintiff's communications

had been obtained unlawfully.

82.  The Kings County DA still maintains copies of Plaintiff's private

communications.

83.  In or around January 2018, the Kings County DA disclosed Plaintiff's private

communications to a Justice of the New York Supreme Court without Plaintiff's authorization.

At the time the Kings County DA disclosed Plaintiff's private communications, it knew that

Plaintiff's private communications had been obtained illegally. Upon information and belief, the

Supervisory Defendants authorized the disclosure of Plaintiff's private communications, despite

their knowledge that Plaintiff's private communications had been obtained illegally.

**Lenich is Indicted by a Federal Grand Jury**

84.  On or about March 27, 2017, a federal grand jury indicted Lenich on two counts

of illegal interception of communications in violation of 18 U.S.C. §§ 2511(1)(a), 2511(4)(a) and

3551, *et seq.* A copy of the indictment is attached hereto as Exhibit A.

85.  The indictment alleges that Lenich, "without lawful authorization, knowingly and

14

intentionally intercepted, endeavored to intercept and procured another person to intercept and endeavor to intercept the wire, oral and electronic communications" of Plaintiff.

86.     On April 3, 2017, Lenich pleaded guilty to both counts in the indictment. She is scheduled to be sentenced in February 2018.

**Plaintiff's Substantial Damages**

87.     Plaintiff was forced to leave her job at the Kings County DA as a result of Lenich's unlawful wiretapping operation and the dissemination of her private communications throughout the Kings County DA's office and beyond.

88.     Kings County DA employees were talking about her behind her back; her supervisors looked at her differently; defense attorneys and even judges treated her differently.

89.     She could not remain at the Kings County DA under these circumstances, and she left in May 2017.

90.     Despite her significant efforts, Plaintiff has yet to find another job. A simple Google search of her name reveals the extensive media coverage she received as a result of this unlawful wiretapping operation, making it extremely difficult for her to find new employment.

91.     Since the wiretapping operation was revealed to Plaintiff in November 2016, she has started seeing a psychiatrist, who has diagnosed her with post-traumatic stress disorder.

92.     Plaintiff has been accosted by reporters multiple times in front of her home; on at least one occasion, a reporter approached her while she was with her children.

93.     Plaintiff has become scared to walk in her neighborhood on her own for fear she is being followed or subject to surveillance.

94.     Plaintiff has also had recurring dreams in which she is being watched and/or followed—sometimes by a stranger and sometimes by Lenich herself.

95.     In December 2017, Plaintiff submitted a Victim Impact Statement to Judge

William F. Kuntz, United States District Judge, Eastern District of New York, in connection with

Lenich's sentencing. Plaintiff's Victim Impact Statement included the following passages

describing the damages Plaintiff has suffered as a result of Lenich's misconduct:

- Tara's actions have destroyed my sense of security and I am afraid I will never get it back. I fear the loss of trust and affection from my husband; I am embarrassed around friends and family; and I am constantly anxious, waiting for Tara to again use whatever information she gathered against me.

- After Tara's abuse was revealed, the press was constantly ringing my bell, making me terrified to answer the door. Every time the bell rang, I ran upstairs. I wouldn't even let my children go near the front door because I was terrified someone would take their picture.

- Shortly after news broke of Tara's crime, I was scheduled to begin a hearing and trial. With extreme embarrassment and humiliation, I had to approach the bench with the defense attorney and ask that there be a delay in the proceedings. My biggest concern was that the press would be camped outside the courtroom or even sitting in the front row snapping pictures. Not only was I concerned for myself, but, more importantly, I didn't want the hullabaloo surrounding me to put undue press scrutiny on the defendant. I didn't want the press to suddenly take interest in the defendant's case. The defendant deserved a fair trial without press involvement. And so the proceedings were delayed, and I walked out of the courthouse mortified and humiliated in front of a Justice of the Supreme Court and a defense attorney.

- Tara poisoned my workplace against me. I could no longer walk through the lobby of the office building without people staring at me side-eyed wondering did she or didn't she have an affair with the police officer. I could no longer walk into court without defense attorneys and judges trying to talk to me about what happened. The humiliation every time somebody spoke to me about what happened was crippling.

- My LinkedIn profile was viewed so many times by court employees and defense attorneys and other ADAs that it recorded an over 2000% spike in viewership. I had no choice but to shut down all of my social media platforms and try to erase any photographs that already existed of me online.

- Because of Tara, I no longer work at a job I loved, I have lost my paycheck and future earning potential and my pension. I lost my career. And the harm continues. Anytime I apply for a new job, potential employers will google me and see the press stories. That could be enough to ruin any potential future employment. So far, despite my attempts, I have still been unable to procure a new job.

**Plaintiff's Notice of Claim**

96.      Within ninety days of Plaintiff's discovery of the unlawful wiretapping scheme, a written Notice of Claim, sworn by Plaintiff, was served upon Defendants at the Comptroller's Office at 1 Centre Street, New York, New York.

97.      At least thirty days have elapsed since the service of the Notice of Claim and adjustment or payment of the claim has been neglected or refused.

**FIRST CLAIM**

(Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, 18 U.S.C. §§ 2701 *et seq.*
Against All Defendants)

98.      Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

99.      Lenich intentionally intercepted, used, reviewed, recorded, and disclosed Plaintiff's private electronic and oral communications in a manner that was not authorized under law, in violation of 18 U.S.C. § 2511(1).

100.     The other Individual Defendants intentionally used, reviewed, and/or disclosed Plaintiff's electronic and oral communications knowing that they had been intercepted without Plaintiff's permission and in a manner that was not authorized under law, in violation of 18 U.S.C. § 2511(1).

101.     Plaintiff is a subscriber of an electronic communication service through which electronic communications sent to and from her cellular phone, including text messages, are transmitted and stored.

102.     Through the use of a fraudulent search warrant, Lenich intentionally obtained access to a facility through which Plaintiff's electronic communication service is provided and Plaintiff's electronic communications are stored, and thereby obtained Plaintiff's stored electronic communications, in violation of 18 U.S.C. § 2701(a).

103.     The City, as employer of the Individual Defendants, is responsible for their misconduct under the doctrine of *respondeat superior*.

104.     As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff sustained the damages hereinbefore alleged.

### SECOND CLAIM
(42 U.S.C. § 1983/Fourth and Fourteenth Amendments Against Lenich)

105.     Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

106.     By intercepting, searching, reviewing, using, and storing Plaintiff's private communications without cause and without judicial authorization, Lenich deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

107.     Lenich acted under pretense and color of state law and within the scope of her employment as a Kings County DA employee. Her actions were taken without authority of law and in abuse of her powers. She acted willfully, knowingly, and with specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

108.     As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
(42 U.S.C. § 1983/Fourth and Fourteenth Amendments Against City)

109.    Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

110.    Lenich had final decision-making authority over whether and under what circumstances to conduct a wiretap of Plaintiff, as well as the operation of that wiretap.

111.    Defendant City is liable for Lenich's decision to unlawfully wiretap Plaintiff because Lenich deliberately chose to conduct an unreasonable search of Plaintiff's cell phone through the use of an unauthorized wiretap, and she had final decision-making authority within the Kings County DA to carry out her deliberate decision.

112.    Defendant City, through the Kings County DA, acting under the pretense and color of law, permitted, tolerated, and was deliberately indifferent to Lenich's pattern and practice of forging dozens of judicial orders and unlawfully wiretapping electronic communications from at least two cell phones over an approximately eighteen month period using Kings County DA facilities and/or equipment. This widespread tolerance of Lenich's misconduct constituted a municipal policy, practice, or custom and led to the unlawful search of Plaintiff's private communications.

113.    By adopting a policy of unlawfully searching Plaintiff's private cell phone, and by permitting, tolerating, and sanctioning such a policy, Defendant City has deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

114.    As a direct and proximate result of the misconduct and abuse of authority

described above, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
(Negligent Retention/Supervision Against City and Supervisory Defendants)

115.   Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

116.   At all relevant times, Lenich was employed by Defendant City and supervised by the Supervisory Defendants.

117.   The City and the Supervisory Defendants had a duty to protect Plaintiff from having her private communications intercepted, recorded, stored, used, and disclosed by Lenich.

118.   The City and the Supervisory Defendants breached that duty by allowing Lenich to intercept, record, store, use, and disclose Plaintiff's private communications.

119.   The City and the Supervisory Defendants knew, or should have known, that Lenich was conducting an unlawful wiretapping operation for months because Lenich submitted forged judicial orders to Donahue that were stored within the Kings County DA's office, she used Kings County DA equipment and facilities to conduct her operation, she told Kings County DA employees that she was conducting a confidential law enforcement investigation that did not exist, she used Kings County DA equipment and facilities to transmit forged court orders to cellular phone providers, and she needed the assistance of other Kings County DA employees to conduct a wiretapping operation of this breadth and length.

120.   As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
(Negligence Against City, Supervisory Defendants, and Donahue)

121.    Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

122.    The Supervisory Defendants had a duty to ensure that proper protections, policies, and protocols were in place to prevent the unlawful interception of Plaintiff's private communications by Lenich or any other Kings County DA employee.

123.    The Supervisory Defendants breached that duty by failing to implement and maintain protections, policies, and protocols that would have prevented Lenich from unlawfully wiretapping Plaintiff's private cell phone, thereby allowing Lenich to intercept, record, store, use, and disclose Plaintiff's private communications.

124.    Donahue had a duty to review the forged judicial orders submitted to him by Lenich to ensure they were not forged.

125.    Donahue breached his duty by failing to use reasonable care to notice that the orders Lenich presented to him had forged signatures and lacked the required raised judicial seal.

126.    The City, as employer of the Supervisory Defendants and Donahue, is responsible for their misconduct under the doctrine of *respondeat superior*.

127.    As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
(Tortious Interference with Employment Against City and Lenich)

128.    Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

129.    At all relevant times, Plaintiff was an employee of the Kings County DA.

130.    Lenich interfered with Plaintiff's employment relationship with the Kings County

21

DA by intercepting Plaintiff's private communications, by disclosing Plaintiff's private communications to other members of the Kings County DA, and by using Plaintiff's private communications to harass and harm Plaintiff and interfere with her ability to do her job.

131.   Lenich's conduct was unlawful and was undertaken willfully and for the sole purpose of  harming Plaintiff.

132.   The City, as Lenich's employer, is responsible for her misconduct under the doctrine of *respondeat superior*.

133.   As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff was no longer able to continue working for the Kings County DA and sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

1.     Compensatory damages in an amount to be determined at trial for the economic, psychological, and emotional injuries sustained by Plaintiff as a result of the events alleged herein.

2.     Punitive damages against the Individual Defendants in an amount to be determined at trial.

3.     An order awarding Plaintiff reasonable attorneys' fees, together with the costs of this action.

4.     Such other and further relief as the Court may deem appropriate.

Dated: February 1, 2018
       New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

_____/s_____
Richard D. Emery
Samuel Shapiro
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff*