UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, Plaintiff, ) 17-CR-00154 (WFK)

V. ) United States Courthouse, Brooklyn, New York

TARA LENICH, Defendant. ) MONDAY, APRIL 3, 2017, 12:00 noon

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE WILLIAM F. KUNTZ II
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: BRIDGET M. ROHDE
United States Attorney's Office
Eastern District of New York
BY: MARIA CRUZ MELENDEZ
ROBERT POLEMENI
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, New York 11201

FOR THE DEFENDANT: WILSON SONSINI GOODRICH & ROSATI PC
BY: MORRIS J. FODEMAN, ESQ.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019

THE COURT REPORTER: NICOLE CANALES, RPR, CSR
225 Cadman Plaza East
Brooklyn, New York 11201
cnlsnic@aol.com

Proceedings recorded by mechanical stenography, transcript Produced by Computer-Assisted Transcript.

THE CLERK: U.S.A. versus Lenich, Case Number 17CR00154.

Counsel, please state your names for the record.

MS. CRUZ MELENDEZ: Good afternoon, your Honor. Maria Cruz Melendez and Robert Polemeni for the United States. Maria, M-a-r-i-a, Cruz, C-r-u-z, Melendez, M-e-l-e-n-d-e-z, Robert, R-o-b-e-r-t, Polemeni, P-o-l-e-m-e-n-i.

THE COURT: Good afternoon. Please be seated. Remain seated during the balance of the conversation.

MR. FODEMAN: Good afternoon, Judge. Moe Fodeman, from Wilson Sonsini Goodrich & Rosati, for the defendant, Tara Lenich. Also with me is co-counsel, Gary Farrell. Fodeman is F-o-d-e-m-a-n; first name Morris, M-o-r-r-i-s; and Gary, G-a-r-y, Farrell, F-a-r-r-e-l-l.

Good afternoon, Judge.

THE COURT: Good afternoon. You may all be seated. Thank you.

Are there any other counsel who wish to note their appearance for the record today?

Hearing none, Mr. Jackson, would you please swear the defendant.

THE CLERK: Ma'am, please stand and raise your right hand. You do solemnly swear or affirm that the answers you're about to give to the Court will be the truth, the whole truth and nothing but the truth, so help you God?

THE DEFENDANT: I do.

THE COURT: Please be seated, ma'am. Thank you. Good morning.

THE DEFENDANT: Good morning.

THE COURT: I'm going to begin by asking you a few questions about your background. Where were you born, ma'am?

THE DEFENDANT: Worcester, Massachusetts.

THE COURT: I'm going to ask you to pull the microphone closer to you. Speak right into it.

THE DEFENDANT: Worcester, Massachusetts.

THE COURT: And what is your date of birth?

THE DEFENDANT: May 2nd, 1975.

THE COURT: And are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: Beginning with grammar school, would you briefly describe your educational background.

THE DEFENDANT: I went to grammar school in Worcester, Massachusetts.

THE COURT: You're going to have to keep your voice up, and speak a little more slowly.

THE DEFENDANT: I went to grammar school in Worcester, Massachusetts.

THE COURT: Which school?

THE DEFENDANT: Nelson Place (phonetic) was the name of it. I then moved with my family to Connecticut, where I

attended Cider Mill School from fourth to sixth grade, and then Middlebrook Middle School, as well as Wilton High School for four years. I then went to Colby College for four years, and then I went to law school at Emory Law School.

THE COURT: And when did you graduate from Emory Law School?

THE DEFENDANT: 2003.

THE COURT: When were you admitted to the bar?

THE DEFENDANT: 2003, in New York, and 2004, in Connecticut.

THE COURT: Have you taken any drugs, any medicine, any pills, or consumed any alcoholic beverage within the past 24 hours?

THE DEFENDANT: No.

THE COURT: You understand what is happening here today?

THE DEFENDANT: Yes.

THE COURT: Defense counsel, do you have any doubt as to the defendant's competence to proceed, at this time?

MR. FODEMAN: No, your Honor.

THE COURT: Prosecution, do you have any doubt as to the defendant's competence to proceed, at this time?

MS. CRUZ MELENDEZ: No, your Honor.

THE COURT: The Court hereby finds based on the defendant's representations and the representations of all

counsel of record that the defendant is competent to proceed. The Court has marked the Indictment as Court Exhibit 1 for identification.

May I have a motion to admit Court 1 into evidence?

MR. FODEMAN: So moved, Judge.

THE COURT: Any objection?

MS. CRUZ MELENDEZ: No objection.

THE COURT: The Indictment is now admitted into evidence as Court 1. I will now read the Indictment.

The grand jury charges. Introduction to all counts. At all times relevant to this indictment, unless otherwise indicated:

I. The Kings County District Attorney's Office:

One: The Kings County District Attorney's Office, also known as the Brooklyn District Attorney's Office, ("the KCDA"), was a government agency responsible for investigating and prosecuting New York State and local criminal offenses in the borough of Brooklyn, New York. Assistant District Attorneys, quote, ("ADAs"), at the KCDA were responsible for investigating and prosecuting such criminal offenses.

II: Procedures for gathering certain evidence.

Two: In order to investigate and prosecute such criminal offenses, ADAs have authority to gather evidence in a variety of ways, for example, ADAs were authorized by law to apply for orders and warrants to be issued by a judge of a

competent court, such as justices of the New York State Supreme Court, to search electronic media stored by telecommunications provider, or to intercept oral or electronic communications transmitted to and from particular telephones.

To attain such orders and warrants, ADAs were authorized to submit applications to judges that include sworn affidavits from law enforcement personnel. If a judge considering such an application was satisfied that the application met the relevant legal standard, the judge issued a search warrant and written order, authorizing the search or interception, which the ADA or other KCDA staff served on the telecommunications provider by facsimile or other similar method.

Three: ADAs also gathered evidence by issuing, in the name of the sitting grand jury, subpoenas for stored records. ADAs often issued such grand jury subpoenas to telecommunications providers for stored records pertaining to particular subscribers. ADAs were permitted to issue a grand jury subpoena if the ADA had a good faith basis to believe that the information sought by the subpoena was relevant to a criminal investigation the ADA was conducting.

Four: As ADAs understood, state and federal law imposed rules governing the acquisition of such evidence and the use of such evidence-gathering techniques. As ADAs also

understood, they held a position of public trust that required them to follow these laws.

III: The Defendant's Scheme to Illegally Eavesdrop.

Five: The defendant, Tara Lenich, was employed as an ADA and a KCDA. As part of her job responsibilities at the KCDA, Lenich was responsible for supervising other ADAs.

A: Cellular Telephone 1.

Six: In or about and between June 2015 and December 2015, the defendant, Tara Lenich, forged the signatures of various New York State Supreme Court Justices on documents that purported to be judicially authorized orders. These forged signatures purported to authorize the KCDA and other law enforcement agencies to intercept and record oral and electronic communications transmitted to and from a particular cellular telephone line, the assigned number and subscriber information of which is known to the grand jury, (Cellular Telephone 1.)

Seven: To accomplish this forgery, the defendant, Tara Lynch, physically cut a copy of each such judge's signature from a legitimate document and taped the signature onto the fraudulent documents she had created. In fact, Lenich never submitted to any judge any application for permission to intercept communications transmitted to and from Cellular Telephone 1, and Lenich was not authorized by the KCDA to conduct any investigation involving such

communications.

Eight: The defendant, Tara Lenich, transmitted and caused to be transmitted the forged orders that she created with telecommunications company servicing Cellular Telephone 1 ("Provider 1"). Each such forged judicial order purported to authorize law enforcement officials to intercept and record the oral and electronic communications transmitted to and from Cellular Telephone 1 for a period of 30 days.

At the end of one or more 30-day periods, Lenich created and submitted an additional forged order that purported to authorize the continued interception and recording of the communications transmitted to and from Cellular Telephone 1 for an additional 30 days. In total, Lenich created and submitted to "Provider 1" seven forged judicial orders to intercept the oral and electronic communications transmitted to and from Cellular Telephone 1.

Nine: After defendant, Tara Lenich, submitted these fraudulent judicial orders to Provider 1, Lenich misappropriated KCDA equipment and facilities in order to illegally intercept and record the oral and electronic communications transmitted to and from Cellular Telephone 1, and did illegally intercept, eavesdrop on, and record such communications.

Ten: Also as part of her illegal eavesdropping scheme, in or about and between May of 2015 and November of

2016, the defendant, Tara Lenich, created and submitted to Provider 1 forged search warrants, authorizing the seizure of text messages transmitted to and from Cellular Telephone 1.

B: Cellular Telephone 2.

Eleven: In or about and between August 2015 and November 27th, 2016, the defendant, Tara Lenich, also created another series of similar forged judicial orders, which she transmitted, and caused to be transmitted, the telecommunications company, ("Provider Number 2"), servicing another cellular telephone line, the assigned number and subscriber information of which is known to the grand jury, Cellular Telephone 2.

Each such forged judicial order purported to authorize law enforcement officials to intercept and record the oral and electronic communications, occurring over Cellular Telephone 2, for a period of 30 days. In total, Lenich created and submitted to ("Provider 2") 17 forged judicial orders to intercept the oral and electronic communications transmitted to and from Cellular Telephone 2.

In fact, Lenich never submitted to any judge any application for permission to intercept communications transmitted to and from Cellular Telephone 2. Lenich was not authorized by the KCDA to conduct any investigation involving such communications.

12: After defendant, Tara Lenich, submitted these

fraudulent judicial orders to Provider 2, Lenich misappropriated KCDA equipment and facilities in order to illegally intercept and record the oral and electronic communications transmitted to and from Cellular Telephone 2, and did illegally intercept, eavesdrop on and record such communications.

C: Preventing Detection of the Scheme.

Thirteen: To avoid having her illegal eavesdropping scheme discovered, the defendant, Tara Lenich, lied to other KCDA employees. Specifically, Lenich informed them that she was intercepting the communications over Cellular Telephone 1 and Cellular Telephone 2 as part of a confidential law enforcement investigation that she was conducting, and instructed them not to listen to, read or otherwise review the communications granted to and from Cellular Telephone 1 or Cellular Telephone 2.

D: Unlawful Grand Jury Subpoenas.

Fourteen: In or about and between June 2015 and November 27th, 2016, the defendant, Tara Lenich, also created and submitted several grand jury subpoenas to telecommunications providers seeking subscriber information for some of the telephone numbers that communicated Cellular Telephone 1 and Cellular Telephone 2 during the period Lenich was illegally eavesdropping on him. Lenich did not have a good faith basis to believe that the information that she

would obtain via these subpoenas was relevant to any ongoing criminal investigation.

Count One: Illegal Interception of Communications - Cellular Telephone 1.

Fifteen: The allegations contained in paragraphs 1 through 14 are realleged and incorporated as set forth fully in this paragraph.

Sixteen: In or about and between June 2015 and January 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, Tara Lenich, without lawful authorization, knowingly and intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavored to intercept the wire, oral and electronic communications to others, to wit: oral and electronic communications transmitted to and from Cellular Telephone 1, in violation of Title 18 United States Code, Sections 2511(1)(a), 2511(4)(a) and 3551 et sequentia.

Count Two: Illegal Interception of Communications - Cellular Telephone 2:

Seventeen: The allegations contained in paragraphs 1 through 14 are realleged and incorporated as set forth fully in this paragraph.

Eighteen: In or about and between August 2015 and November 2016, both dates being approximate and inclusive,

within the Eastern District of New York and elsewhere, the defendant, Tara Lenich, without lawful authorization, knowingly and intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept the wire, oral and electronic communications of others, to wit: Oral and electronic communication transmitted to and from Cellular Telephone 2 [*sic*].

Title 18, United States Code, Sections 2511(1)(a), 2511(4)(a) and 3551 et sequentia.

Criminal Forfeiture Allegation.

Nineteen: The United States hereby gives notice to the defendant that upon her conviction of either of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 2513 and Title 28, United States Code, Section 2461(c), of any electronic, mechanical, or other device used, sent, carried, manufactured, assembled, possessed, sold or advertised, in violation of Title 18, United States Code, Section 2511(1)(a).

Twenty: If any of the above-described forfeitable property as a result of any act or omission of the defendant:

A: Cannot be located upon the exercise of due diligence;

B: Has been transferred or sold to, or deposited with, a third party;

C: Has been placed beyond the jurisdiction of the court;

B: Has been substantially diminished in value; or

E: Has been commingled with other property which cannot be divided without difficulty.

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant, up to the value of the forfeitable property described in this forfeiture allegation.

Title 18 United States Code, Section 2513, Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c).

A True Bill, signed by the foreperson and signed by Bridget M. Rohde, R-h-o-d-e, Acting United States Attorney, Eastern District of New York.

Have I accurately read the Indictment that is in evidence as Court 1?

MS. CRUZ MELENDEZ: Yes, your Honor.

MR. FODEMAN: Yes.

THE COURT: We have a Plea Penalty Sheet in this case. There is no plea agreement. May I have the Plea Penalty Sheet, which has been marked as Court Exhibit 2, for identification.

May I have a motion to admit the penalty sheet into

evidence, please?

MS. CRUZ MELENDEZ: So moved, your Honor.

THE COURT: Any objection?

MR. FODEMAN: No, your Honor.

THE COURT: It is admitted. I will now read the Plea Penalty Sheet, Exhibit 2, which is in evidence.

The Plea Penalty Sheet reads as follows:

Caption of this case begins as follows:

This is not, underscore, a plea agreement. The government submits this Plea Penalty Sheet to advise the Court of the penalties the defendant faces upon pleading guilty to Counts One and Two of the above-captioned indictment, each count charging a violation of Title 18, United States Code, Section 2511(1)(a).

A. Statutory Penalties:

Each count carries the following statutory penalties:

One: Maximum term of imprisonment: 5 years. (18 U.S.C. Section 2511(4)(A).

Two: Minimum term of imprisonment: 0 years. (18 U.S.C. Section 25114(a).

Three: Maximum supervised release term: 3 years, to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced to up to 2 years without credit for prerelease imprisonment for time previously

served on post-release supervision, (18 U.S.C. Section 3583 (b) & (e)).

Four: Maximum fine: $250,000 (18 U.S.C. Section 357(b)(3).

Five: Restitution: Mandatory, to be determined by the Court at the time of sentencing (18 U.S.C. Sections 3663A and 3664).

Six: $100 special assessment, (18 U.S.C. Section 3013.)

Seven: Criminal forfeiture to be determined at sentencing. The government will seek forfeiture of all right, title and interest to any electronic, mechanical or other device used, sent, carried, manufactured, assembled, possessed, sold or advertised in violation of Title 18, United States Code, Section 2511(1)(a), and/or as substitute assets. (18 U.S.C. Section 2513; 21 U.S.C. Section 853(p); 28 U.S.C. Section 2461(c)).

The sentences imposed on Counts One and Two may run consecutively.

B: Guidelines Estimates:

1. The guidelines calculation set forth herein are only estimates and are not binding on the government, the Probation Department, or the Court. The inclusion of a downward adjustment under Section 3E1.1 in the estimates depends on the defendant demonstrating acceptance of

responsibility, elocution (phonetic), and substantive conduct prior to the imposition of sentence.

One: Count One, base offense level (Section 2H3.1(a)(1) nine, plus abuse of trust. (Section 3B1.3), plus two. Total 11.

Two: Count Two: Base offense level. (Section 2H3.1(a)(1) nine. Plus: Abuse of trust, Section 3B1.3, plus 2. Total 11.

Multiple-count analysis, Section 3D1.4.

Count One, Level 11, Unit 1, Count Two, Level 11, Unit 1. Levels added to the highest offense level, plus 2.

Adjusted offense level: 13.

Less: Acceptance of responsibility, Section 3E1.1(a), minus 2.

Total Offense Level: 11.

This level carries a range of imprisonment of 8 to 14 months, assuming the defendant falls within criminal history Category 1.

Dated: Brooklyn, New York, March 28th, 2017, Bridget M. Rohde, Assistant United States Attorney, Eastern District of New York, by Robert T. Polemeni, Assistant United States Attorney, with a cc shown to the Clerk of the Court (WFK), via ECF, and defense counsel via e-mail and ECF.

I would just note that the plea agreement -- Plea Penalty Sheet I just read was not physically signed by the

Assistant United States Attorney.

Do we have a signed version of that?

MR. POLEMENI: I can do it right now.

THE COURT: Why don't you do that.

And is that acceptable that we have that as a Court Exhibit 2?

MR. FODEMAN: Yes, Judge. No objection to that.

THE COURT: Any objection to anything that I have read about the Plea Penalty Sheet accurately read?

MR. FODEMAN: It was accurately read. Just two points I would like to make.

THE COURT: Yes. Absolutely. Make them slowly, so the reporter can get them.

MR. FODEMAN: Fair enough, Judge. Thank you. First, with respect to footnote one, and I think this is obvious to all the parties in the Court, but just for Ms. Lenich's benefit, obviously these are estimates, these guidelines. And while they are not binding on the Court, the Probation Department or the government, they're also not binding on the defense either, and there will be a probation report, and, obviously, we'll have an opportunity to address the applicability of the guidelines at sentencing.

THE COURT: There's no objection to that statement, is there?

MS. CRUZ MELENDEZ: No, your Honor.

MR. FODEMAN: And the other -- thank you, Judge. The other point, just to point out -- and I understand that this is the government's estimate, but in the interest of being fulsome and completely accurate, the range -- the total offense level, as calculated by the government, totalling 11, it does carry a range of 8 to 14 months, but it also falls within Zone C of the sentencing chart, making -- if this turns out to be the applicable range, then the sentence can be served, if your Honor were inclined, by way of house arrest or halfway house. I just wanted to point that out for the record.

THE COURT: Any objection to that comment?

MS. CRUZ MELENDEZ: That's the government's understanding as well.

THE COURT: Anything else?

MR. FODEMAN: Nothing further. Thank you, Judge.

THE COURT: You're welcome.

The only thing I would note -- and it's a minor point -- on page 2, paragraph 6, that refers to the $100 special assessment. Under 18 U.S.C. Section 3013, it's my understanding that that's $100 per count and per individual.

Is that the government's understanding?

MS. CRUZ MELENDEZ: Yes, your Honor.

THE COURT: Is that defense counsel's understanding as well?

MR. FODEMAN: Yes.

THE COURT: I've been paying attention, in the five-and-a-half years I've been on the bench.

MR. FODEMAN: I missed that one.

THE COURT: That's why they pay me the big bucks. I don't take credit for this; the law clerks figure these things out. All right.

MS. CRUZ MELENDEZ: Your Honor, would you like Mr. Polemeni to incorporate Court Exhibit 2 now?

THE COURT: Why don't you sign it now, and we will have Court Two that is part of the physical record with the signature. And that will be on ECF, so defense counsel will be able to have a copy of the signed version as well, but that's the only change that's been made to Court Two that we have.

MR. FODEMAN: Understood, Judge. Thank you.

THE COURT: Is that acceptable with all parties?

MS. CRUZ MELENDEZ: Yes, your Honor.

MR. FODEMAN: It is, Judge.

THE COURT: Ms. Lenich, unless your counsel or the prosecution counsel wishes to be heard, or has an objection or further comment, at this time, the Court believes we will now turn to the final procedures for taking your plea in this case. Are you ready to proceed to that?

MS. CRUZ MELENDEZ: Yes.

MR. FODEMAN: Yes.

THE COURT: Ms. Lenich, your attorney advises this Court that you wish to plead guilty to Counts One and Counts Two of the Indictment, and that you are aware of the contents of the Indictment and the Plea Penalty Sheet, both of which I have just read to you. Do you wish me to read either or both of them to you again?

THE DEFENDANT: No, your Honor.

THE COURT: And are you, in fact, aware of their contents?

THE DEFENDANT: Yes.

THE COURT: Thank you. Just ask you to keep your voice up using the microphone. I say again this is a serious decision, and I must be certain that you make it understanding your rights and the consequences of your plea.

Do you understand that having been sworn to tell the truth to this Court you must do so, and if you were to lie to this Court deliberately, in response to any question I ask you, you could and would face further criminal charges for perjury? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you need me to repeat anything, you have only to ask. It is important that you understand everything that goes on in these proceedings; is that clear, ma'am?

THE DEFENDANT: Yes.

THE COURT: Ms. Lenich, I must be certain that whatever decision you make today, you make with a clear head, so I'm going to ask you some questions about your health.

Are you presently or have you recently been under the care of any kind of doctor, psychiatrist, physician, or psychologist for any reason?

THE DEFENDANT: No, your Honor.

THE COURT: In the past 24 hours, ma'am, have you taken any pills, any drugs, or any medicine of any kind?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized or treated for any drug-related problem?

THE DEFENDANT: No.

THE COURT: Have you ever participated in any court-ordered drug treatment program?

THE DEFENDANT: No.

THE COURT: In the past 24 hours, ma'am, have you consumed any alcoholic beverage?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been hospitalized or treated for any alcohol-related problem?

THE DEFENDANT: No.

THE COURT: Have you ever participated in a court-ordered alcohol treatment program?

THE DEFENDANT: No.

THE COURT: Is your mind clear as you sit here today?

THE DEFENDANT: Yes.

THE COURT: Do you understand everything being said to you?

THE DEFENDANT: Yes.

THE COURT: Defense counsel, have you discussed the question of a guilty plea with your client?

MR. FODEMAN: Yes, Judge.

THE COURT: In your view, sir, does she understand the rights she would be waiving by pleading guilty?

MR. FODEMAN: In my view, she does.

THE COURT: Defense counsel, do you have any question as to your client's competence to proceed today?

MR. FODEMAN: None, Judge.

THE COURT: Ms. Lenich, are you satisfied with the assistance your attorney has given you thus far in your case?

THE DEFENDANT: Yes.

THE COURT: Do you believe you have received effective assistance of counsel in your case?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you believe to have not received effective assistance of counsel, you have the right to appeal on that basis; do you understand that?

THE DEFENDANT: Yes.

THE COURT: Counsel for the defendant, do you feel that you need more time to discuss the question of guilty plea with your client?

MR. FODEMAN: No, your Honor.

THE COURT: Ms. Lenich, I have read to you the Indictment and again read the penalty sheet, and I'll ask you again do you need me to read them out loud to you again, as I have done?

THE DEFENDANT: No.

THE COURT: Now, ma'am, you have a right to plead not guilty. No one can be forced to plead guilty; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead not guilty, or if you persist in your plea of not guilty, you have a right under the Constitution and the laws of the United States of America to a speedy trial and a public trial before a jury of your peers, with the assistance of your counsel; do you understand?

THE DEFENDANT: Yes.

THE COURT: At any trial, ma'am, you would be presumed to be innocent. You would not have to prove that you were innocent. This is because under the laws of the United States it is the United States government that must come forward with proof that establishes beyond a reasonable

doubt that you are, in fact, guilty of the crime charged. If the government failed to meet this burden of proof, the jury would have the duty to find you not guilty. Do you understand?

THE DEFENDANT: Yes.

THE COURT: During the course of a trial, witnesses for the government would have to come here to this courtroom and to testify in your presence; you would have the right to have your lawyer cross-examine these witnesses. Your lawyer could raise legal objections to the evidence the government sought to offer against you. Your attorney could offer evidence on your behalf if you thought there was evidence that might help you in your case. Your lawyer could compel witnesses to come to court and to testify in your defense if you thought that would be helpful to your case. Do you understand?

THE DEFENDANT: Yes.

THE COURT: At a trial, you would have the right to testify on your own behalf if you wish to do so. On the other hand, you could not be forced to be a witness at your trial. This is because under the Constitution, and the laws of the United States of America, no person can be compelled to be a witness against themselves. If you wish to go to trial but chose not to testify, this Court would instruct the jury that it could not hold that against you. Do you understand?

THE DEFENDANT: Yes.

THE COURT: If instead of going to trial, however, you elect to plead guilty to the crime charged, and if I accept your guilty plea, you will be giving up your right to a trial and all the other rights I have just discussed with you. Here, there will be no trial in this case. There will be no appeal on the question of whether you did or you did not commit the crime set forth in Count One and Count Two of the Indictment. Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you do plead guilty, I will have to ask you certain questions about what you did and where you did it, in order to satisfy myself that you are, in fact, guilty of all the charges contained in Count One and Count Two of the Indictment. You will have to answer my questions and to acknowledge your guilt. If you do this, you will be giving up your right not to incriminate yourself. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Ms. Lenich, are you willing to give up your right to a trial and all the other rights I have just discussed with you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is there any agreement that has been reached with you or made with you in order to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Ms. Lenich, do you understand the consequences of pleading guilty to all the charges contained in Counts One and Count Two of the Indictment and term of incarceration?

THE DEFENDANT: Yes.

THE COURT: Let me take you back to the penalty sheet, the Plea Penalty Sheet, that is in evidence as Court Exhibit 2, with respect to the information relative to sentencing. Paragraph A of the Plea Penalty Sheet sets out statutory terms that you face. These are the penalties written directly by Congress for violations of the statute you were charged with today. You face a maximum term of 5 years of imprisonment for each count. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Do you understand those counts can be -- sentences can be imposed consecutively. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You face a minimum term of zero years of imprisonment; do you understand?

THE DEFENDANT: Yes.

THE COURT: You face a maximum term of 3 years of supervised release, following any term of imprisonment. Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you violate a condition of release, you may be sentenced to up to 2 years of imprisonment without credit for prerelease imprisonment or time previously served on post-release supervision. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You face as well a maximum fine in the amount of $250,000. Do you understand?

THE DEFENDANT: Yes.

THE COURT: You face restitution in a mandatory amount to be determined by the Court at the time of sentencing. Do you understand?

THE DEFENDANT: Yes.

THE COURT: You face a mandatory special assessment of $100 per count, which I am required to impose in all cases per person, per count. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: You face criminal forfeiture to be determined at sentencing. The government will seek forfeiture of all right, title and interest in any electronic, mechanical or other device used, sent, carried, manufactured, assembled, possessed, sold or advertise in violation of Title 18, United States Code, Section 2511(1)(a), and/or as substitute assets, pursuant to 18 U.S.C., Section 2513, Section 21 U.S.C Section 853(P) and 28 U.S.C. Section 2461C.

The sentences imposed on Counts One and Counts Two, as a said previously, may run consecutively; do you understand that?

THE DEFENDANT: Yes.

THE COURT: Ms. Lenich, this is a sentence guidelines case, so in sentencing you, the Court will have to consider certain guidelines. These guidelines do not control the Court but they inform the Court.

Has defense counsel discussed the sentencing guidelines with the defendant?

MR. FODEMAN: Yes.

THE COURT: Is that true, ma'am?

THE DEFENDANT: Yes.

THE COURT: When the Court sentences you, the Court will have to consider certain factors about you and about Counts One and Count Two of the indictment, as your counsel earlier pointed out today. That inquiry will lead this Court to consideration of the guideline sentencing range that I read to you earlier from Exhibit 2. You need me to read it aloud again?

THE DEFENDANT: No thank you.

THE COURT: The Court is empowered to impose a sentence which is less than equal to or greater than that provided by the guidelines, subject always to the mandatory minimums and to the maximums set forth in the statute, but in

all cases, including this one, this Court must and this Court will consult the guidelines concerning the range of sentence before the Court. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, before the Court imposes sentence, this Court will receive a full report prepared by the Probation Department, which will recommend a particular sentence to the Court. You and your counsel will have the opportunity to see that report, to review it, and if you think that that report is mistaken, incomplete or simply wrong in any way, you will have the opportunity to bring that to the attention of this Court.

Now, ma'am, do you have any questions you would like to ask this Court, at this time?

THE DEFENDANT: No thank you.

THE COURT: Does defense counsel have any questions for the Court, at this time?

MR. FODEMAN: No, your Honor. Thank you.

THE COURT: Is there anything else defense counsel would like the Court to address, at this time?

MR. FODEMAN: No thank you.

THE COURT: Does the Assistant United States Attorney have any questions for the Court?

MS. CRUZ MELENDEZ: No, your Honor.

THE COURT: Is there anything else the Assistant

United States Attorney would like the Court to address, at this time?

MS. CRUZ MELENDEZ: No, your Honor.

THE COURT: Defense counsel, do you know of any reason why your client should not enter a plea of guilty to Count One of the indictment?

MR. FODEMAN: No, your Honor.

THE COURT: Defense counsel, do you know of any reason why your client should not enter a plea of guilty to Count Two of the indictment?

MR. FODEMAN: No, your Honor.

THE COURT: Defense counsel, are you aware of any viable legal defense that the charges contained in Count One of the Indictment?

MR. FODEMAN: No, your Honor.

THE COURT: Defense counsel, are you aware of any viable legal defense contained to Count Two to the charges contained in Count Two of the indictment?

MR. FODEMAN: No, your Honor.

THE COURT: Ms. Lenich, are you ready to plead?

THE DEFENDANT: Yes.

THE COURT: How do you plead to the charges contained in Count One of the Indictment filed in this case; guilty or not guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: Ms. Lenich, how do you plead to the charges contained in Count Two of the Indictment filed in this case; guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you making this plea of guilty voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anyone threatened you or forced you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made you any promise that caused you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made you any promise about the sentence you will receive from this Court in this case if you plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Please describe briefly and slowly in your own words what you did to commit the crimes charged in Counts One and Count Two of the Indictment and where you did it.

THE DEFENDANT: Between approximately 2015 and 2016, while I was working at the Kings County District Attorney's Office, here in Brooklyn, I intentionally forged court orders that allowed me to wiretap cell phones for two different

people and overhear those conversations. I knew the conduct was illegal, and I'd just like to apologize and say I am so sorry for my actions and for anyone that it affected.

THE COURT: On how many occasions, with respect to -- perhaps we can do this with respect to each of the telephones, if you're prepare today do that. These are the counts. On how many occasions did you falsify the names of judicial officers?

THE DEFENDANT: The numbers in the Indictment, your Honor, seem correct.

THE COURT: Is that with respect to both Count One and Count Two?

THE DEFENDANT: Yes, your Honor.

THE COURT: Were the intercepts involving wired communications and oral communications and electronic communications of others that were transmitted in interstate commerce?

THE DEFENDANT: Yes, your Honor.

THE COURT: As you understand that term to mean?

THE DEFENDANT: Yes.

THE COURT: And are the dates as set forth in the indictment the accurate dates, as far as you're concerned?

THE DEFENDANT: Yes, your Honor.

THE COURT: And where did you engage in that activity and what judicial district of the United States?

THE DEFENDANT: Here, in Brooklyn.

THE COURT: Here, in the Eastern District of New York?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you engage in these activities anywhere other than the Easter District of New York, other than Brooklyn, Queens, Long Island?

THE DEFENDANT: No, your Honor.

THE COURT: They all occurred here, in the Eastern District of New York?

THE DEFENDANT: Manhattan.

THE COURT: But mainly here in the Eastern District of New York; is that fair to say?

THE DEFENDANT: Yes, your Honor.

MR. FODEMAN: Judge, as you know -- maybe you didn't know this. We have waived --

THE COURT: I was just about to ask the government if there was anything else that they wanted me to ask, but you can --

MR. FODEMAN: Just to clarify Ms. Lenich's colloquy, we've waived any discovery, so with respect to the number of orders or the time frame, the precise date, we have no objection. I don't think Ms. Lenich quibbles with the dates, but we certainly can't say with absolute certainty that the dates are precisely right.

THE COURT: And the Indictment does use the language "on or about," so I take it that language is acceptable to the defendant?

MR. FODEMAN: Absolutely.

THE COURT: Is that right, ma'am?

THE DEFENDANT: Yes.

THE COURT: Anything else the government would like the Court to ask, at this time?

MS. CRUZ MELENDEZ: Yes, your Honor, two things.

THE COURT: Slowly and loudly.

MS. CRUZ MELENDEZ: With regard to the actual interception and monitoring of the communications, if the Court could ask whether or not the defendant used a mechanical device, or other device, in order to monitor the communications?

THE COURT: Why don't you read the question back so we have it, madam reporter.

(The reporter reads back.)

MS. CRUZ MELENDEZ: In intercept --

THE COURT: Did you use mechanical device or other device in order to monitor the communications, is the question I put to you, that has been asked me to put to you by the prosecutors.

THE DEFENDANT: I used the computer.

THE COURT: As mechanical device or other device,

yes?

THE DEFENDANT: Yes.

MS. CRUZ MELENDEZ: Your Honor, the next question would be whether the defendant committed the conduct that she's allocuted to without statutory authorization or exemption under the applicable statutes.

(The reporter reads back.)

THE COURT: I adopt the question.

THE DEFENDANT: I had no authorization, your Honor, no statutory authorization.

THE COURT: Anything else?

MS. CRUZ MELENDEZ: Nothing from the government, your Honor.

THE COURT: Anything else from defense counsel?

MR. FODEMAN: No, your Honor.

THE COURT: Anything else the defendant would like to state, at this time?

THE DEFENDANT: No, your Honor.

THE COURT: Based upon the information provided to this Court, I find that the defendant is acting voluntarily, and that she fully understands the charges, her rights, and the consequences of her plea. There is, moreover, a factual basis for the plea; I, therefore, accept the plea of guilty to all the charges contained in both Counts One and Count Two of the Indictment.

I hereby order the Probation Department to provide the presentence investigation report to this Court as soon as possible, in any event, within six months from this date, which would be on/or before October 3rd of 2017.

Now, is there anything further that either counsel wishes to state to the Court today?

MR. FODEMAN: No, your Honor.

MS. CRUZ MELENDEZ: No, your Honor.

THE COURT: Thank you. Court is adjourned. Thank you all.

MR. FODEMAN: Thank you.

(Proceedings adjourned.)

* * *

I certify that the foregoing is a true and correct transcription of the record from proceedings in the above-entitled case.

/s/ Nicole Canales
Nicole Canales

January 29, 2018
Date