17 Civ. 7299 (NGG) (PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE ROSENFELD,

Plaintiff,

-against-

TARA LENICH; CITY OF NEW YORK;
LU-SHAWN M. THOMPSON, as Administrator
of ESTATE OF KENNETH P. THOMPSON;
ERIC GONZALEZ; WILLIAM SCHAEFER;
BRIAN DONAHUE; and JOHN/JANE DOES 1-10,

Defendants,

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS CITY'S, THOMPSON'S,
GONZALEZ'S, SCHAEFFER'S AND DONOHUE'S
MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 12(B)(6)**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Lu-Shawn Thompson, Eric Gonzalez,*
*William Schaeffer and Brian Donohue*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel Ashley Garman*
*Joshua J. Lax*
*Tel: (212) 356-3539/3358*
*Matter No. 2018-008467*

Served June 29, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIRIES .................................................................................. iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF RELEVANT FACTS AND ALLEGATIONS ................................. 2

LEGAL STANDARD ............................................................................................. 5

ARGUMENT

POINT I:  PLAINTIFF'S ELECTRONIC COMMUNICATIONS PRIVACY ACT CLAIM FAILS AS A MATTER OF LAW AS AGAINST THE CITY DEFENDANTS ............................................. 6

A. Plaintiff Cannot Maintain an ECPA Claim Premised on the *USA v. Lenich* and *People v. Henry* Disclosures .................................................. 7

B. The Individual City Defendants are Entitled to Absolute, or, at Least, Qualified Immunity Related to the *USA v. Lenich* and *People v. Henry* Disclosures .................................... 8

C. Plaintiff Has Not Otherwise Plausibly Alleged any ECPA Violation by any of the Individual City Defendants ......................................... 11

D. Plaintiff Cannot Maintain an ECPA Claim Against the City .................................................. 13

POINT II:  PLAINTIFF'S SECTION 1983 CLAIM AGAINST THE CITY FAILS AS A MATTER OF LAW .................................................. 16

POINT III:  THE NEGLIGENCE-BASED CLAIMS FAIL AS A MATTER OF LAW .................................................. 20

A. Plaintiff Has Not Plausibly Alleged a Claim for Negligent Retention and Supervision of Lenich .................................................. 21

**Page**

B. Plaintiff Has Not Plausibly Alleged a
Negligence Claim Against Thompson,
Gonzalez or Schaeffer.................................................................24

C. Plaintiff Has Not Plausibly Alleged a
Negligence Claim Against Donohue ..........................................25

D. At a Minimum, the City Defendants are
Entitled to Immunity Under State Law on
the Negligence-Based Claims......................................................26

POINT IV:  PLAINTIFF'S TORTIOUS INTERFERENCE
WITH EMPLOYMENT CLAIM FAILS AS
A MATTER OF LAW.....................................................................27

CONCLUSION.............................................................................................................28

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Pages**

*Adorno v. Corr. Servs. Corp.*,
    312 F.Supp.2d 505 (S.D.N.Y. 2004) ............................................................................ 15

*Akins v. Glens Falls City Sch. Dist.*,
    53 N.Y.2d 325 (1981) ................................................................................................... 21

*Albert v. Losken*,
    239 F.3d 256 (2d Cir. 2001) ........................................................................................ 27

*Alfaro v. Wal-Mart Stores, Inc.*,
    210 F.3d 111 (2d Cir. 2000) .................................................................................. 21, 25

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ...................................................................................................... 10

*Angevin v. City of N.Y.*,
    204 F.Supp.3d 469 (E.D.N.Y. 2016) ........................................................................... 11

*Anthony v. City of N.Y.*,
    339 F.3d 129 (2d Cir. 2003) .................................................................................. 17, 18

*Appalachian Enters. v. ePayment Solutions Ltd.*,
    No. 01. Civ. 11502 (GBD), 2004 U.S. Dist. LEXIS 24657
    (S.D.N.Y. Dec. 8, 2004) ............................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 5, 12, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 5

*Bliven v. Hunt*,
    579 F.3d 204 (2d Cir. 2009) ........................................................................................ 17

*Blouin v. Spitzer*,
    356 F.3d 348 (2d Cir. 2004) ........................................................................................ 26

*Boettcher v. Best & Co., Inc.*,
    203 App. Div. 574 (N.Y. App. Div. 1st Dep't 1922),
    *aff'd* 237 N.Y. 506) .................................................................................................... 15

*Bradway v. Gonzales*,
    26 F.3d 313 (2d Cir. 1994) ............................................................................................ 9

**<u>Cases</u>**                                                                                                                               **<u>Pages</u>**

*Brady v. Maryland,*
    373 U.S. 83 (1963)..........................................................................................5, 8, 9, 10

*Broder v. Cablevision Systems Corp.,*
    418 F.3d 187 (2d Cir. 2005) .................................................................................5

*Cohen v. Davis,*
    926 F.Supp. 399 (S.D.N.Y. 1996) ......................................................................28

*Conte v. County of Nassau,*
    No. 06-cv-4746 (JFB) (ETB), 2010 U.S. Dist. LEXIS 104815
    (E.D.N.Y. Sept. 30, 2010) ..................................................................................19

*Corely v. Vance,*
    No. 15-cv-1800 (KPF), 2015 U.S. Dist. LEXIS 92837
    (S.D.N.Y. June 22, 2015) .....................................................................................8

*Dayton v. City of Middletown,*
    786 F. Supp. 2d 809 (S.D.N.Y. 2011) ...............................................................17

*Doe v. City of Waterbury,*
    453 F.Supp.2d 537 (D. Conn. 2006).....................................................................19

*Dory v. Ryan,*
    25 F.3d 81 (2d Cir. 1994) ......................................................................................9

*Drimal v. Tai,*
    786 F.3d 219 (2d Cir. 2016) ..........................................................................10, 12

*Ehrens v. Lutheran Church,*
    385 F.3d 232 (2d Cir. 2004) ...............................................................................21

*Fiocco v. Carver,*
    234 N.Y. 219 (N.Y. 1922) ...........................................................................15, 16

*Haddock v. City of N.Y.,*
    75 N.Y.2d 478 (N.Y. 1990) ................................................................................26

*Harris v. Nassau County,*
    No. 13-CV-4728 (NGG)(ST), 2016 U.S. Dist. LEXIS 68136
    (E.D.N.Y. May 23, 2016) ..................................................................................5-6

*Hill v. City of N.Y.,*
    45 F.3d 653 (2d Cir. 1995) ...............................................................................8, 9

**Cases**                                                                                                  **Pages**

*Hirschfeld v. Spanakos*,
    909 F.Supp. 174 (S.D.N.Y. 1995) ...................................................................26

*Hunter v. Bryant*,
    502 U.S. 224 (1991) (per curiam) ...................................................................9

*Iacovangelo v. Corr. Med. Care, Inc.*,
    624 Fed. App'x 10 (2d Cir. 2015) ...................................................................19

*Imbler v. Pachtman*,
    424 U.S. 409 (1976)...........................................................................................8

*JBCHoldings NY, LLC v. Pakter*,
    931 F. Supp. 2d 514 (S.D.N.Y. 2013) ...........................................................12

*Johnson v. MediSys Health Network*,
    No. 10-cv-1596 (ERK)(VVP), 2011 U.S. Dist. LEXIS 156828
    (E.D.N.Y. Apr. 28, 2011) ...............................................................................28

*Judith M. v. Sisters of Charity Hosp.*,
    93 N.Y.2d 932 (N.Y. 1999) ...........................................................................14

*Kosson v. Algaze*,
    203 A.D.2d 112, 610 N.Y.S.2d 227 (N.Y. App. Div. 1st Dep't 1994) ..................27

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) .............................................................................4

*Mahmood v. City of N.Y.*,
    No. 01 Civ. 5899 (SAS), 2003 U.S. Dist. LEXIS 7745 (S.D.N.Y. May 8,
    2003) ............................................................................................................14, 15

*Mon v. City of N.Y.*,
    78 N.Y.2d 309 (N.Y. 1991) ...........................................................................26

*Monell v. Dep't of Social Services*,
    436 U.S. 658 (1978)........................................................................16, 17, 19, 20

*N.X. v. Cabrini Med. Ctr.*,
    97 N.Y.2d 247 (2002) .....................................................................................13

*Nevaeh T. v. City of N.Y.*,
    132 A.D.3d 840 (N.Y. App. Div. 2d Dep't, 2015) ........................................23

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) ..........................................................................11

**Cases**                                                                       **Pages**

*Olivieri v. Waldbaum, Inc.*,
    No. 12-cv-1195 (SLT) (MDG), 2013 U.S. Dist. LEXIS 144075
    (E.D.N.Y. Sept. 30, 2013) ...........................................................................13, 15

*Orlando v. Pioneer Barber Towel Supply Co.*,
    239 N.Y. 342 (N.Y. 1925)..................................................................................15

*Peavy v. WFAA-TV*,
    37 F.Supp.2d 495 (N.D. Tex. 1998) ....................................................................11

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)............................................................................................18

*Peterson v. Tomaselli*,
    469 F.Supp.2d 146 (S.D.N.Y. 2007) ........................................................17, 18, 19

*Prentice v. State of N.Y.*,
    791 N.Y.S.2d 873 (N.Y. Ct. Cl., 2004) ...............................................................14

*Ricciuti v. N.Y.C. Transit Auth.*,
    941 F.2d 119 (2d Cir. 1991) ........................................................................16, 20

*Riviello v. Waldron*,
    47 N.Y.2D 297, 418 N.Y.S.2d 300 (1979) ..........................................................13

*Estate of Rosenbaum v. City of N.Y.*,
    982 F. Supp. 894 (E.D.N.Y. 1997) .....................................................................26

*Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*,
    33 A.D.3d 875, 877 (N.Y. App. Div. 2d Dep't 2006) ..........................................14

*Schwab v. Smalls*,
    435 Fed. App'x 37, 40 (2d Cir. 2011) .................................................................18

*SEC v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010) .................................................................................7

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ...................................................................................5

*Stavitz v. City of N.Y.*,
    471 N.Y.S.2d 272 (1st Dep't 1984).....................................................................14

*Strauss v. Belle Realty Co.*,
    65 N.Y.2d 399 (N.Y. 1985)................................................................................25

**Cases**                                                                    **Pages**

*Swarna v. Al-Awadi,*
    622 F.3d 123 (2d Cir. 2010) ...................................................................14

*United States v. Simels,*
    No. 08-cr-640 (JG), 2009 U.S. Dist. LEXIS 56732 (E.D.N.Y. Dec. 18, 2008) ........................7

*Vippolis v. Village of Haverstraw,*
    768 F.2d 40 (2d Cir. 1985),
    *cert. denied,* 480 U.S. 916 (1987)...................................................16

*Walker v. City of N.Y.,*
    974 F.2d 293 (2d Cir. 1992) .............................................................17

*Wyatt v. City of Barre,*
    No. 2:11-cv-297, 2012 U.S. Dist. LEXIS 57838 (D. Vt. Apr. 25, 2012) ...............................11


**Statutes**

18 U.S.C. §§2510, *et seq.* .......................................................................7

18 U.S.C. §2511(1)...........................................................................3, 6

18 U.S.C. § 2520.......................................................................6, 7, 8, 11

18 U.S.C. § 3551 *et seq.* ........................................................................3

42. U.S.C. § 1983..........................................................................16, 17

N.Y.C.P.L. § 700.30 ............................................................................26


**Federal Rules**

Fed. R. Civ. P. 8(a) ...........................................................................11

Fed. R. Civ. P. 12(b)(6) .........................................................................5

Fed. R. Evid. 201 ..............................................................................4

## PRELIMINARY STATEMENT

For a period of time in 2015 and 2016 defendant Tara Lenich, then an ADA with the Kings County District Attorney's Office ("KCDAO"), forged judicial orders and search warrants in order to wiretap two cellular phones.  One of those phones belonged to Lenich's colleague, plaintiff Stephanie Rosenfeld, the other, to an NYPD detective.  The wiretaps were unrelated to any criminal investigation; Lenich's motivations were purely personal, and her actions admittedly and knowingly criminal.  With the cooperation and assistance of the KCDAO, Lenich was swiftly and successfully prosecuted for her crimes.  She was indicted by a federal grand jury, pleaded guilty shortly thereafter and is currently serving a term of imprisonment.

Plaintiff now seeks money damages against not only her victimizer (Lenich), but also against the City, and Kings County DA Eric Gonzalez, former Kings County DA Kenneth P. Thompson (by his estate), William Schaeffer and Brian Donohue (collectively, the "City Defendants") – in part, incredibly, for their role in bringing Lenich to justice.  In her First Amended Complaint ("FAC"), plaintiff contends that KCDAO officials violated a federal wiretapping statute by, among other things, providing federal law enforcement with evidence of Lenich's crimes (*i.e.*, plaintiff's unlawfully-intercepted communications) in connection with Lenich's federal criminal prosecution for unlawfully intercepting those communications – a theory so legally and logically unsound it illustrates the meritlessness of this entire action as against the City Defendants.

Plaintiff's other claims against the City Defendants are based on common law principles of negligence, negligent supervision and *respondeat superior*.  However, Lenich abused her position at the KCDAO in order to eavesdrop on a colleague – an act unrelated to the exercise of Lenich's prosecutorial duties and one she knew at the time was criminal and thus made efforts to conceal.  The conclusory allegations in the FAC aside, plaintiff has failed to plausibly allege that

the City Defendants should have foreseen these extraordinary events or could have put an earlier stop to Lenich's scheme.  Nor can the City, given these facts, be vicariously liable for Lenich's personally-motivated criminal acts.  Accordingly, the FAC should be dismissed in its entirety as against the City Defendants.

## STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

Defendant Tara Lenich is a former ADA with the KCDAO. Ex. A[1] (FAC), ¶¶25-31. Between May 2015 and November 28, 2016, Lenich served as the Deputy Bureau Chief in charge of Special Investigations at the KCDAO. *Id.*, ¶25. Plaintiff alleges "upon information and belief" that in this position, among other duties, Lenich supervised the KCDAO wire room staff and its operations. *Id*, ¶¶6, 29-30, 32-33. The wire room is where all KCDAO wiretaps, which must be authorized by court order, are to be conducted. *Id.*, ¶¶34-36, 38.

Beginning in 2015 and ending in November, 2016, Lenich used KCDAO resources to unlawfully intercept and record oral and electronic communications from two cellular telephones through fraudulent judicial wiretap orders and search warrants that she created. Ex. B, ¶¶6-14; Ex. C, at 4; Ex. D, at 31:18-32:13. One of those phones was the personal cellphone of plaintiff, Stephanie Rosenfeld, who was also an ADA at the KCDAO at the time and had worked with Lenich in the past. Ex. A, ¶¶20, 23-24, 41-52; Ex. C, at 4. The other phone belonged to a police detective (the "Detective").[2] Ex. C, at 4. The wiretaps were not part of any law enforcement investigation. Ex. A, ¶60. Rather, by Lenich's own admission, her scheme was motivated by a personal dispute she had with the Detective, with whom Lenich claims she had a romantic relationship that ended badly, and with plaintiff. Ex. C, at 4.

---

[1] Unless otherwise indicated, all exhibits referenced in this Memorandum are annexed to the Declaration of Ashley R. Garman in Support, dated June 28, 2018 (the "Garman Declaration").

[2] Plaintiff contends that she was also a victim of Lenich's wiretapping of the Detective's phone because she was a party to some of his unlawfully-intercepted conversations. Ex. A, ¶¶54-56.

To carry out her scheme, between June 2105 and November 2016 Lenich created a total of twenty-four forged judicial "orders"– by physically cutting copies of signatures of various N.Y. State Supreme Court Justices and taping them onto documents she created – each purporting to authorize the interception and recording of oral communications to and from the phones for a 30-day period. Ex. B, ¶¶6-8, 11. The forged "orders" lacked a raised judicial seal. Ex. A, ¶44. According to the FAC, Lenich showed the forged orders to defendant Brian Donohue, the KCDAO employee allegedly responsible for reviewing all wiretap orders and physically setting up the wiretaps, and Donohue accepted the orders notwithstanding the absence of a raised seal. *Id.*, ¶¶6, 43. Lenich and/or Donohue (at Lenich's behest) then sent the forged orders to the two cellphones' respective service providers. Ex. B, ¶¶8, 11; Ex. A, ¶45. Thereafter, Lenich used KCDAO equipment and facilities to intercept, record and listen to the oral communications. Ex. B, ¶¶9, 12; Ex. A, ¶49. To avoid detection of her scheme, Lenich lied to other KCDAO employees, claiming that the wiretapping operation was part of a confidential law enforcement investigation that she was conducting and instructing them not to listen to or otherwise review the intercepted communications. Ex. B, ¶13; Ex. A, ¶59. Lenich also forged and served search warrants authorizing the seizure of text messages transmitted to and from plaintiff's phone. Ex. B, ¶10; Ex. A, ¶¶51-52. Lenich used information contained in plaintiff's unlawfully-intercepted personal communications to harass plaintiff and her family. Ex. A, ¶53.

On November 28, 2016, Lenich was arrested and was criminally charged in connection with the scheme. Ex. A, ¶¶68-70, 74. The arrest and charges were initiated by the KCDAO, *id.*, ¶68, but the U.S. DOJ took over Lenich's criminal prosecution, and on March 23, 2017, an Eastern District federal grand jury returned an indictment charging Lenich with two counts of illegal interception of communications in violation of 18 U.S.C. §§ 2511(1)(a), 2511(4)(a) and

3551 *et seq.* (the "Indictment"). *Id.*, ¶84; Ex. B[3]; Ex. C, at 1.  On April 3, 2017, Lenich pleaded guilty to both counts in the Indictment before the Hon. William F. Kuntz, II, U.S.D.J.  Ex. A, ¶86; Ex. C, at 1; Ex. D, at 30:20-31:4.  At her plea hearing, Lenich admitted that she had known at the time that what she was doing was illegal.  Ex. D, at 31:18-32:3.  On February 2, 2018, the Court sentenced Lenich to twelve months and one day of incarceration.  Ex. C, at 1. Plaintiff felt unable to continue working for the KCDAO following the exposure of Lenich's crimes, and left her job there in May of 2017.  Ex. A, ¶¶87-89.

Plaintiff contends that after Lenich's scheme was uncovered, personnel from the KCDAO disseminated plaintiff's unlawfully-obtained communications, without her permission, on two specific occasions.[4]  First, plaintiff alleges that DA Gonzalez disclosed or directed the disclosure of plaintiff's communications to the DOJ without plaintiff's authorization, Ex. A, ¶ 81 – a disclosure that was made pursuant to a December 6, 2016, federal grand jury subpoena in connection with Lenich's criminal prosecution by DOJ. *See* Ex. F.[5]

Second, plaintiff alleges that in or around January 2018, the KCDAO unlawfully disclosed plaintiff's communications to a Justice of the N.Y. Supreme Court.  Ex. A, ¶84.  In reality, the Hon. Danny K. Chun, J.S.C., who was the presiding judge in an unrelated criminal proceeding (*People v. Henry et ano.*, Ind. No. 112/2016 (Sup. Ct. Kings Co.)), directed the ADAs prosecuting that case to turn over, solely for Justice Chun's *in camera* review, copies of the recordings Lenich had obtained of the Detective's (not plaintiff's) cellphone

---

[3] The Indictment is also annexed as an exhibit to the FAC; however, for ease of reference the City Defendants have attached another copy as a separate exhibit to the Garman Declaration.  The Indictment was unsealed on March 27, 2017. *See* Docket Sheet, *USA v. Lenich*, 17-cr-154 (WFK), ECF No. 3.

[4] Plaintiff also alleges generally and in a conclusory fashion, "upon information and belief," that Schaeffer, DA Gonzalez, Donohue and unidentified "John Doe" KCDAO employees knowingly "received, used, reviewed, and disclosed" copies of plaintiff's unlawfully obtained communications, disclosing them "to one another, as well as others." Ex. A, ¶¶ 75-77.  No specific instances of any disclosures are pleaded other than the two discussed herein.

[5] "[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); Fed. R. Evid. 201(c); Fed. R. Evid. 201(b),(2).

communications, and the KCDAO complied. Ex. E, at 3:17-4:2, 5:15-18.[6] The stated purpose of the court's *in camera* review was for Justice Chun to determine if there was any exculpatory material contained the Detective's communications to which the criminal defendants in that case were entitled under *Brady v. Maryland*, 373 U.S. 83 (1963), and no further dissemination of the communications was contemplated. *Id.,* 14:10-15:24.

## LEGAL STANDARD

A pleading may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations "must be enough to raise a right to relief above the speculative level;" the plaintiff must thus offer "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 545, 555. A court should therefore dismiss a complaint when it appears that a plaintiff has failed to plead a plausible claim of relief. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 67 (2d Cir. 2009).

In considering whether this standard has been met, a district court "[is] not limited solely to the allegations in the complaint." *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). The court may also consider records "rendered integral" to the complaint or incorporated by reference therein, *see id.*, as well as matters of public record of which judicial notice may be taken, including "arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition," *Harris v. Nassau County*, No. 13-CV-4728

---

[6] A hearing to discuss Justice Chun's order was held on February 14, 2018, after plaintiff (by her counsel in the instant matter) and the Detective (by separate counsel) became aware of the order and submitted a letter to Justice Chun objecting to the KCDAO's compliance with it. Ex. E, at 3:1-8. Both plaintiff's and the Detective's counsel were given an opportunity to be heard at the hearing. *See generally*, Ex. E.

(NGG)(ST), 2016 U.S. Dist. LEXIS 68136, **8-9 (E.D.N.Y. May 23, 2016) (Garaufis, J.) (citations omitted)).

## ARGUMENT

**POINT I:**  **PLAINTIFF'S ELECTRONIC COMMUNICATIONS PRIVACY ACT CLAIM FAILS AS A MATTER OF LAW AS AGAINST THE CITY DEFENDANTS**

The Electronic Communications Privacy Act ("ECPA") makes it unlawful, except as otherwise provided therein, to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).  The statute also prohibits the intentional use or disclosure of any communications known to have been intercepted in violation of §2511(1), *see* 18 U.S.C. §§ 2511(1)(c)-(d), and authorizes civil damages for certain violations of its provisions, *see* 18 U.S.C. § 2520.  Specifically, §2520(a) provides, with certain exceptions, that "any person whose wire, oral, or electronic communication is intercepted, disclosed or intentionally used in violation of this chapter may in a civil action recover from the person or entity…which engaged in that violation such relief as may be appropriate."  18 U.S.C. § 2520(a).

With respect to the City Defendants, plaintiff asserts two different theories of relief under §2520.  First, she contends that Thompson, Gonzalez, Schaeffer and Donohue (and the "John/Jane Doe" defendants) violated §§2511(1)(c)-(d) by intentionally "us[ing], review[ing], and/or disclos[ing]" plaintiff's phone calls and text messages, knowing that Lenich had intercepted those communications unlawfully. Ex. A, ¶¶99-100.  This first theory is premised on the post-December 6, 2016 disclosure of the unlawfully-intercepted communications to the DOJ by or at the direction of DA Gonzalez, *id.*, ¶¶79, 81, (the "*USA v. Lenich* disclosure"), the

January 2018 disclosure to Justice Chun, allegedly authorized by Thomson,[7] Gonzalez and

Schaeffer, *id.*, ¶83, (the "*People v. Henry* disclosure"), and the alleged review and disclosure of

the communications by Schaeffer, Gonzalez and Donohue and the "John/Jane Doe" defendants

on unspecified occasions, to unspecified individuals, *id.*, ¶¶75-77. Second, plaintiff asserts that

the City is liable for the foregoing alleged violations and for Lenich's admittedly unlawful

interception of the communications under the doctrine of *respondeat superior*. *Id.*, ¶103.   Both

of these theories of liability under the ECPA fail.

### A. Plaintiff Cannot Maintain an ECPA Claim Premised on the *USA v. Lenich* and *People v. Henry* Disclosures

Neither the *USA v. Lenich* disclosure nor the *People v. Henry* disclosure can serve as a

basis for an ECPA claim against any of the City Defendants or any other KCDAO employee

because all individuals involved in those disclosures[8] are shielded by the ECPA's good faith

defense.  Pursuant to 18 U.S.C. § 2520(d), a good faith reliance on, *inter alia*, a court order or

grand jury subpoena constitutes a complete defense against a civil lawsuit under 18 U.S.C.

§§2510, *et seq.* (or any other law).  *See* 18 U.S.C. § 2520(d)(1); *see also SEC v. Rajaratnam*, 622

F.3d 159, 175 (2d Cir. 2010) (quoting § 2520(d)(1)); *United States v. Simels*, No. 08-cr-640 (JG),

2009 U.S. Dist. LEXIS 56732, *45 (E.D.N.Y.  Dec. 18, 2008).

The applicability of the ECPA's good faith defense here could not be clearer. In

compliance with a federal grand jury subpoena (Ex. F) – issued *for the very purpose of

prosecuting Lenich for violating the ECPA* –the KCDAO is alleged to have provided the DOJ

with the fruits of Lenich's crimes, which included plaintiff's unlawfully-intercepted

---

[7] It is, of course, factually impossible for former DA Thompson to have had anything to do with the *People v. Henry* disclosure (and the *USA v. Lenich* disclosure, for that matter), given his death in October of 2016. Ex. A, ¶8.  As Thompson is also specifically excluded from the allegations of disclosure contained in ¶¶75-77 and 81 of the FAC, the ECPA claim against him necessarily must be dismissed due to the absence of any personal involvement.

[8] The only individual defendant alleged to have been involved in the *USA v. Lenich* disclosure is DA Gonzalez, Ex. A, ¶81, and Donohue is not alleged to have been involved in either of the two disclosures, *id.*, ¶¶81, 83.  And, as set forth in footnote 7, *supra*, it is factually impossible for DA Thompson to have been involved.

communications. Ex. A, ¶81. Similarly, in early 2018, in *People v. Henry*, Justice Chun ordered the KCDAO to turn over to the court for an *in camera* inspection certain communications unlawfully obtained by Lenich during her scheme, which incidentally included some of plaintiff's communications,[9] for the purposes of examining those communications for any *Brady* material. Ex. E, 3:16-4:5, 14:10-15:24. Accordingly, §2520(d)(1) unambiguously provides a complete defense to plaintiff's ECPA claims related to both alleged disclosures. Plaintiff having pleaded no facts suggesting the inapplicability of that defense, her ECPA claims related to the *USA v. Lenich* disclosure and the *People v. Henry* disclosure fail and must be dismissed. *See Corely v. Vance*, No. 15-cv-1800 (KPF), 2015 U.S. Dist. LEXIS 92837, *16 (S.D.N.Y. June 22, 2015) (dismissing ECPA claims where plaintiff failed to plead facts suggesting invalidity of court orders, pursuant to which defendant service providers disclosed plaintiff's electronic communications, or otherwise suggesting inapplicability of statutory defenses).

**B. The Individual City Defendants are Entitled to Absolute, or, at Least, Qualified Immunity Related to the *USA v. Lenich* and *People v. Henry* Disclosures**

In any event, the individual City Defendants are entitled to absolute immunity from suit for any involvement in these disclosures. State prosecutors are entitled to absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Thus, a district attorney is absolutely immune for civil liability for initiating a prosecution and presenting the case at trial, and also for conduct in preparing for those functions, including "evaluating and organizing evidence for presentation at trial or to a grand jury." *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995). Prosecutorial immunity from civil liability is "broadly defined," and covers "'virtually all acts, regardless of

---

[9] The communications turned over to Justice Chun were not from plaintiff's phone but from the Detective's. *See* Ex. E, 3:16-5, 5:20-24. Plaintiff alleges that some of those communications included communications to which she was a party. FAC, ¶55.

motivation, associated with [the prosecutor's] function as an advocate."' *Id.* (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)).[10]

Here, the *USA v. Lenich* disclosure and the *People v. Henry* disclosure were both directly and unquestionably related to criminal prosecutions, the former in connection with Lenich's criminal prosecution by the DOJ, which had been initiated by the KCDAO, and the latter in connection with the *People v. Henry* prosecution, in which the KCDAO was complying with its *Brady* obligations – a quintessential prosecutorial function – and following a direct order by the judge presiding over the *People v. Henry* prosecution. Accordingly, even in there wasn't an applicable defense under the ECPA (which of course there is), the individual City Defendants and any other KCDAO employees allegedly participating in these disclosures would nonetheless be entitled to absolute immunity.

Alternatively, Thompson, Gonzalez, Schaeffer and Donohue are entitled to qualified immunity on the ECPA claims. The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam). "To lose immunity,

---

[10] The fact that Donohue is not a prosecutor is of no moment to the question as to whether or not he is entitled to absolute immunity, as in determining whether absolute immunity applies courts apply a "functional approach" that considers the function being performed rather than the identity or office of the defendant. *Hill*, 45 F.3d at 660 (internal citation omitted). Non-lawyer employees of a district attorney's office "are entitled to the same degree of immunity as [the district attorney] himself for their activities while assisting with the investigation and prosecution" of a case. *Hill*, 45 F.3d at 660.

an official must violate a right, the contours of which are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Drimal v. Tai*, 786 F.3d 219, 225 (2d Cir. 2016) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Second Circuit recognizes qualified immunity as a defense to civil damages claims under the ECPA. *See id.*, 786 F.3d at 222-26. (dismissing the complaint but directing the district court, on a motion to dismiss any amended complaint, to carefully consider qualified immunity on ECPA claims, even though defendant FBI agents executing a wiretap order violated that order and the ECPA by failing to minimize interception of unrelated calls between suspect husband and his wife).

Here, at a very minimum, the disclosure of plaintiff's communications to the DOJ, pursuant to a grand jury subpoena issued in connection with the DOJ's criminal prosecution for unlawfully obtaining those communications, did not violate plaintiff's clearly established statutory rights, particularly when, as set forth above, there exists a statutory defense squarely on point (§2520(d)(1)). Nor did the disclosure of the Detective's communications, pursuant to judicial order in *People v. Henry* for an *in camera* review by Justice Chun, where again, the ECPA explicitly provides an applicable defense.

Indeed, the individual City Defendants' entitlement to qualified immunity with respect to these two alleged disclosures is evident from the transcript of the February 14, 2018 proceedings before Justice Chun. At those proceedings, held in response to objections raised by plaintiff and the Detective, Justice Chun remarked upon the uniqueness of the situation with which the Court was faced, Ex. E, 11:6-21, and opined that, notwithstanding plaintiff's and the Detective's objections, the interests of justice weighed in favor of identification and disclosure to criminal defendants of *Brady* material, even if that material was contained in unlawfully-obtained communications, *see id.*, at 14:10-15:24. Justice Chun also expressed his view that both the

KCDAO and the DOJ had been permitted to obtain and use the unlawfully-obtained communications for the purposes of investigating and prosecuting Lenich for unlawfully obtaining them. *See id.*, at 11:6-21. That a N.Y. Supreme Court Justice came to these conclusions after hearing the very arguments made by plaintiff here makes clear that, at a very minimum, reasonable minds could differ as to whether or not the disclosure of the communications to the DOJ and its compliance with Justice Chun's order violated the ECPA. Resultantly, the individual City Defendants, to the extent that the FAC pleads any of their involvement in these disclosures, would nevertheless be entitled to qualified immunity for any ECPA claims stemming therefrom. *See Angevin v. City of N.Y.*, 204 F.Supp.3d 469, 482 (E.D.N.Y. 2016) (where reasonable minds could differ as to whether there was probable cause to arrest and prosecute plaintiff, defendant officer would be entitled to qualified immunity).

### C. Plaintiff Has Not Otherwise Plausibly Alleged any ECPA Violation by any of the Individual City Defendants

In addition to the two specific disclosures discussed above, plaintiff also alleges "upon information and belief" that at unspecified times Gonzalez, Schaeffer and Donohue (and the "John Doe" defendants) knowingly received, used and reviewed[11] plaintiff's unlawfully-obtained communications and disclosed them "to one another, as well as [unspecified] others." at unspecified times. Ex. A, ¶¶ 75-77. However, these allegations lack sufficient specificity to put the individual City Defendants on notice of the claims against them, and thus violate Fed. R. Civ. P. 8(a). *See Appalachian Enters. v. ePayment Solutions Ltd.*, No. 01. Civ. 11502 (GBD), 2004 U.S. Dist. LEXIS 24657, *21 (S.D.N.Y. Dec. 8, 2004) ("A plaintiff fails to satisfy Rule 8, where

---

[11] Even if any alleged "receipt" or "review" of plaintiff's communications by any of the individual City Defendants had been adequately pleaded (which it has not been), no civil liability could attach to such conduct in any event. Section 2520 provides a remedy only for the unlawful "interception", "disclosure" or "use" of a communication, *see* 18 U.S.C. §2520(a); however, merely listening to a previously-captured communication does not constitute "interception, "disclosure" or "use" of it. *See Wyatt v. City of Barre*, No. 2:11-cv-297, 2012 U.S. Dist. LEXIS 57838, *10-13 (D. Vt. Apr. 25, 2012) (citing, *inter alia*, *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009); *Peavy v. WFAA-TV*, 37 F.Supp.2d 495, 513 (N.D. Tex. 1998)).

the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.") (internal quotation marks, alterations and citations omitted).   Further, the general allegations contained in paragraphs 75-77 – like the bulk of the allegations in the FAC – are asserted "upon information and belief" but without a statement of the facts upon which the belief is founded, as she must in order to satisfy the pleading standard.   *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526-527 (S.D.N.Y. 2013) (citation omitted).

While the pleading standard "does not require detailed factual allegations… it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Drimal*, 786 F.3d at 223 (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)), which is all plaintiff offers with respect to these purported other uses and/or disclosures.   *Drimal* is instructive here.   There, the Circuit construed ECPA claims by the wife of a suspect against sixteen FBI agents who had executed a lawful wiretap order against her husband.   *Drimal*, 786 F.3d at 221-24.   The plaintiff claimed that each of the agents violated the ECPA by listening to privileged communications between herself and her husband, identifying the allegedly unlawfully monitored calls only by date.   *Id.*   The Circuit dismissed the complaint as insufficiently pled, finding that it lacked specificity and gave "no indication of the circumstances that support the conclusory allegation of unlawfulness," and held that to withstand a motion to dismiss, plaintiff would have to plead facts alleging how each of the sixteen defendants failed to comply with his or her duty to minimize intercepted phone calls as required by the ECPA and the wiretap order.   *Id.*, at 224.

Here, similarly, plaintiff's failure to plead specific facts as to each individual City Defendant supporting her contention that *that particular* defendant engaged in conduct that violated the ECPA is fatal to her ECPA claims against them, which should be dismissed.

### D. **Plaintiff Cannot Maintain an ECPA Claim Against the City**

Nor can plaintiff maintain an ECPA claim against the City, which she asserts under the doctrine of *respondeat superior*. Ex. A, ¶103. As set forth in Points I(A)-(C), *supra*, plaintiff has failed to plausibly allege any ECPA violation by any of the individual City Defendants or "John Doe" defendants. Accordingly, no *respondeat* liability for an ECPA violation can stem from those defendants' alleged conduct. Furthermore, Lenich did not act within the scope of her employment when she committed her crimes against plaintiff, and therefore *respondeat* liability cannot attach to her conduct, either.

In New York, "[u]nder the doctrine of *respondeat superior*, an employer may be vicariously liable for the tortious acts of his employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002). Thus, the doctrine provides vicarious liability only for those acts that are either "undertaken at the explicit direction of the employer," or "which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act." *Riviello v. Waldron*, 47 N.Y.2D 297, 418 N.Y.S.2d 300, 302-03 (1979). Where a court construing a *respondeat* claim at the 12(b)(6) stage concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, the court must dismiss the claim. *Olivieri v. Waldbaum, Inc.*, No. 12-cv-1195 (SLT) (MDG), 2013 U.S. Dist. LEXIS 144075, *15 (E.D.N.Y. Sept. 30, 2013).

Here, there are no facts pleaded in the FAC from which it could be reasonably inferred that Lenich was authorized, let alone directed, to fabricate judicial orders and search warrants in order to monitor another ADA's (plaintiff's) personal telephone conversations and text messages, outside the context of any criminal investigation, or that these actions were in any way designed to further KCDAO or City business. Indeed, Lenich's conduct – which she knew at the

time to be illegal, Ex. D, at 31:18-32:3 – plainly went so far beyond the bounds of her authority and proper prosecutorial conduct that they cannot be said to have been in furtherance City's interests. *See Prentice v. State of N.Y.*, 791 N.Y.S.2d 873 (N.Y. Ct. Cl., 2004) (No *respondeat* liability for police officer's fabrication of fingerprint evidence during criminal investigation and perjured testimony at trial) ("Neither the act of fabrication, nor the giving of perjured testimony, can be found to be acts which are commonly done by such employees within the normal scope of employment. These actions represent such a gross departure from acceptable police conduct that they cannot be considered as furthering the State's interest.").

Moreover, and significantly, it is clear that Lenich's motivations were purely personal in nature. The wiretaps were not part of any law enforcement investigation. Ex. A, ¶60. Rather, by Lenich's own admission, her scheme was motivated by a personal dispute with her two victims, Ex. C, at 4, and Lenich used the information she obtained from the wiretaps not to investigate or prosecute a crime but to harass plaintiff, Ex. A, ¶53. No *respondeat* liability can lie for such conduct, as it is well-settled in New York that an employer is not liable for the tortious acts committed by an employee, as here, for personal reasons unrelated to the furtherance of the employer's business. *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (citation omitted); *see also Mahmood v. City of N.Y.*, No. 01 Civ. 5899 (SAS), 2003 U.S. Dist. LEXIS 7745, at *8 (S.D.N.Y. May 8, 2003) (citing *Stavitz v. City of N.Y.*, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)); *Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*, 33A.D.3d 875, 877 (N.Y. App. Div. 2d Dep't 2006) (citing, *inter alia*, *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (N.Y. 1999) ("If…an employee for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable.") (internal quotation marks and citation omitted)).

Consistent with this principle, courts in this Circuit applying New York law have consistently found no *respondeat* liability where an employee engages in intentional tortious or criminal activity for personal reasons, even when such activity is committed within the employment context. *See, e.g., Olivieri*, 2013 U.S. Dist. LEXIS 144075, *14-16 (dismissing *respondeat* claims against defendant supermarket; supermarket employees did not act within the scope of their employment when they harassed co-worker plaintiff repeatedly at work, including by requiring plaintiff to take off his pants in the back room and allow them to photograph his genitals); *Adorno v. Corr. Servs. Corp.*, 312 F.Supp.2d 505, 516-18 (S.D.N.Y. 2004) (employee of halfway house did not act within the scope of his employment when he sexually assaulted two residents when they reported to his private office to discuss infractions, pursuant to the halfway house's regular infraction review process); *Mahmood*, 2003 U.S. Dist. LEXIS 7745, at **8-14 (City not vicariously liable for actions of police officer in allegedly assaulting plaintiff during a traffic dispute; officer was not furthering police business but acting out of personal rage). Accordingly, as Lenich was admittedly acting for purely personal reasons for the duration of her scheme, the City cannot be vicariously liable as a matter of law.

That Lenich used KCDAO facilities and equipment to carry out her scheme does not change this, as it is well-entrenched in New York law that the mere fact that an employee uses her employer's property to inflict injury upon another is not sufficient to render the employer vicariously liable. *Orlando v. Pioneer Barber Towel Supply Co.*, 239 N.Y. 342, 344-45 (N.Y. 1925) (citing *Boettcher v. Best & Co., Inc.*, 203 App. Div. 574 (N.Y. App. Div. 1st Dep't 1922), *aff'd* 237 N.Y. 506). *See also Fiocco v. Carver*, 234 N.Y. 219 (N.Y. 1922) (employer not vicariously liable for personal injuries sustained by child run over by on-duty employee driving employer's truck on a personal errand unrelated to employer's business). As the N.Y. Court of

Appeals explained in *Fiocco*, where the circumstances suggest that the dominant purpose of the employee's actions in using the employer's property was not performance of the employer's business but rather some private purpose, the use will not be considered to have been within the scope of employment. *Id.*, at 222-25. ("We are not dealing with a case wherein....business and private ends have been coincidently served. We are dealing with a departure so manifest as to constitute an abandonment of duty, exempting the master from liability till duty is resumed.").

Here, without question, the dominant purpose of Lenich's conduct was to settle a personal score against a colleague and a former romantic partner, not to investigate or prosecute someone suspected of criminal activity. It is beyond cavil that the former is not the KCDAO or the City's business. Accordingly, plaintiff's *respondeat* theory of liability fails as a matter of law, and the ECPA claim asserted against the City must also be dismissed.

## POINT II: PLAINTIFF'S SECTION 1983 CLAIM AGAINST THE CITY FAILS AS A MATTER OF LAW

Plaintiff's conclusorily-plead claim under 42. U.S.C. § 1983 against the City for purported 4th and 14th Amendment violations also fails as a matter of law, because plaintiff has failed to plausibly allege any municipal policy or custom pursuant to which her constitutional rights were allegedly violated. It is well-settled that a municipality may not be held liable under §1983 on the basis of *respondeat superior*. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694-95 (1978). Rather, in order to prevail on a §1983 claim against a municipality (a "*Monell* claim"), a plaintiff must establish that a violation of his or her constitutional rights resulted from a municipal custom or policy, *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991), and that there was a causal link between the alleged violation and that policy, *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987). In order to survive a motion to dismiss a plaintiff must do more than simply assert, in a conclusory fashion,

that a policy exists.  Rather, as with any claim, a plaintiff must meet the *Iqbal* pleading standard, which in a *Monell* context requires plausible facts giving rise to a reasonable inference of the existence of an unlawful municipal policy.  *Dayton v. City of Middletown*, 786 F. Supp. 2d 809, 822-23 (S.D.N.Y. 2011).

Plaintiff asserts in the FAC two distinct theories of *Monell* liability for Lenich's alleged violations of plaintiff's 4th and 14th Amendment rights: plaintiff contends that Lenich acted as a municipal policy-maker with respect to her decision to unlawfully intercept plaintiff's communications, Ex. A, ¶¶110-11, and that the City, through the KCDAO, tolerated Lenich's scheme and/or was deliberately indifferent to it such that it amounted to a *de facto* municipal policy, *id.,* at ¶112-13.  Neither theory is viable, however.

First, plaintiff has not plausibly alleged that Lenich was a municipal policymaker whose actions in conducting a wiretap of an individual can impose §1983 liability on the City.  "The matter of whether a given official is a municipal policymaker is a question of law."  *Bliven v. Hunt*, 579 F.3d 204, 214 (2d Cir. 2009).   A plaintiff proceeding under a policymaker theory of *Monell* must establish that, as a matter of law, an official had final policymaking authority in the particular area involved.  *Peterson v. Tomaselli*, 469 F.Supp.2d 146, 169-70 (S.D.N.Y. 2007).  "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Anthony v. City of N.Y.,* 339 F.3d 129, 139 (2d Cir. 2003).  Thus, "only actions by officials relatively high up in the municipal hierarchy will produce municipal liability." *Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992).

Here, although plaintiff conclusorily alleges, "upon information and belief," that Lenich had policymaking responsibilities with respect to the implementation of wiretaps at the KCDAO, Ex. A, ¶¶6, 32, she asserts no facts plausibly supporting such a conclusion.  The FAC alleges

17

that Lenich was a KCDAO Deputy Bureau Chief, *id.*, ¶25, with certain supervisory responsibilities; she supervised between two and six ADAs as well as the KCDAO wire room staff, *id.*, ¶¶29-30, she was among those supervisors authorized to approve wiretap applications, *id.*, ¶35, and she had decision-making authority with respect to opening up investigations and criminal prosecutions and with respect to seeking and operating a wiretap, *id.*, ¶¶31-33. As a preliminary matter, however, a City actor does not become a policymaker simply by virtue of being a supervisor with authority to direct others. *See, e.g. Anthony*, 339 F.3d at 139-40 (police sergeant who directed officers to seize plaintiff and have her hospitalized was not a final decision-maker); *Tomaselli*, 469 F.Supp.2d at 169-70 (bureau chief at the Office of the Special Narcotics Prosecutor who supervised 15-20 lawyers not a policymaker).

Furthermore, while the FAC alleges that Lenich had the authority to make discretionary decisions about investigations, prosecutions and wiretaps – following KCDAO policies that were already in place – it does not from there follow that she had final authority to *establish* KCDAO policy with respect to those (or any other) matters. This distinction is critical. It is well-settled that one does not become a "policymaker" simply by exercising discretion in the performance of his or her duties, *Anthony*, 339 F.3d at 139, and this is true even when those duties entail decision-making, *see Schwab v. Smalls*, 435 Fed. App'x 37, 40 (2d Cir. 2011) ("[D]espite a vague assertion that '[defendant superintendent] manifestly had the final discretionary decision making authority' with regard to whether to recommend [plaintiff]'s reappointment for the 2008-09 school year, she has not adequately alleged that any of the individual defendants had 'final authority to establish municipal policy with respect to' the hiring and firing of District employees.") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

In any event, even assuming, *arguendo*, that Lenich could somehow be construed to be a

policymaker by virtue of her supervisory status (which she cannot), Lenich plainly did not act in her capacity as a KCDAO supervisor when she engaged in the specific conduct alleged here: *to wit*, fabricating judicial orders and subpoenas and wiretapping the personal telephones of a colleague and a police detective. *See, e.g. Tomaselli, supra*, at 169-70 (actions taken by bureau chief in prosecuting plaintiff were not taken in his capacity as a supervisor and could therefore not be said to represent the actions of a policymaker responsible for a policy that caused plaintiff's alleged constitutional deprivation). Rather, it is beyond cavil that such conduct – which Lenich concedes was unlawful and which was unrelated to any criminal investigation or prosecution – exceeded the bounds of any supervisory authority (and indeed, the law), and such illegal actions therefore cannot be said to represent official City policy. *See Conte v. County of Nassau*, No. 06-cv-4746 (JFB) (ETB), 2010 U.S. Dist. LEXIS 104815, *96-97 (E.D.N.Y. Sept. 30, 2010) ("[W]here a policymaker 'exceeded the bounds of the authority granted to him,' his actions 'cannot be fairly said to represent official policy.'") (quoting *Doe v. City of Waterbury*, 453 F.Supp.2d 537, 544 (D. Conn. 2006)).  Accordingly, plaintiff's *Monell* theory premised on Lenich's alleged status as a City policymaker fails as a matter of law.

Nor does plaintiff's second *Monell* theory fare any better, as plaintiff has neither plausibly alleged that any widespread custom or usage within the KCDAO caused Lenich's alleged violations of plaintiff's constitutional rights nor that any policymaking official was aware that Lenich was violating plaintiff's constitutional rights and failed to act, as she must in order to establish a *Monell* claim under a "custom or usage" or "deliberate indifference" theory. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 Fed. App'x 10, 13-14 (2d Cir. 2015).  As a preliminary matter, plaintiff does not allege (because she cannot) that there was any widespread practice by Lenich or anyone else at the KCDAO to conduct unlawful, personally-motivated

wiretaps of the sort alleged in the FAC; rather, plaintiff suggests that Lenich's wiretapping of plaintiff's and the Detective's cellphones – the conduct that forms the basis of the FAC – constituted a "pattern and practice" because it lasted over a period of several months and required multiple successive forged orders to carry out. *See* Ex. A, ¶112. However, ongoing scheme or no, it is well-established that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Furthermore, plaintiff has not plausibly alleged that any KCDAO employee – let alone, anyone at the policymaking level – was aware of Lenich's scheme and tolerated or condoned it. While plaintiff alleges, "upon information and belief," that Thompson, Gonzalez, Schaeffer and Donohue all knew about Lenich's scheme prior to her November 28, 206, arrest, Ex. A, ¶72, she once again does not allege facts supporting that belief. Indeed, as set forth in further detail in Point III(A), *infra*, the facts that *are* pleaded in the FAC more readily lead to the conclusion that Lenich, knowing that her acts were criminal and being in a supervisory position herself, made efforts to avoid detection. Further rendering plaintiff's deliberate indifference theory implausible is the fact that the KCDAO itself began prosecuting Lenich, *id.*, ¶¶68-70, and continued to assist with her prosecution by the DOJ (an act for which, it should be emphasized, plaintiff now seeks civil damages). Accordingly, plaintiff's *Monell* claim must be dismissed.

**POINT III: <u>THE NEGLIGENCE-BASED CLAIMS FAIL AS A MATTER OF LAW</u>**

Plaintiff asserts claims against the City, Thompson, Gonzalez, Schaeffer and unidentified supervisory "John Doe" defendants for negligent retention and supervision, and against those same defendants and Donohue for common law negligence. However, plaintiff has failed to plausibly allege either claim as against any defendant.

### A. Plaintiff Has Not Plausibly Alleged a Claim for Negligent Retention and Supervision of Lenich

To state a claim for negligent retention and supervision under New York law, a plaintiff must plausibly allege, in addition to the elements of standard negligence,[12] that: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted). Here, plaintiff has not plausibly alleged that the City, any individually-named supervisory defendant or any other KCDAO supervisor was or should have been on notice of Lenich's propensity to conduct an unlawful wiretapping scheme, and her negligent retention and supervision claim necessarily fails as a result.

The FAC contains no allegations whatsoever that Lenich had any propensity for fabricating judicial orders and illegally wiretapping co-workers, let alone that any KCDAO official was on notice of any such propensity prior to May 2015, when her scheme began. Nor does plaintiff contend that any supervisor was or could have been on notice of any tortious or criminal propensities of Lenich that should have made anyone question her appointment as the Deputy Bureau Chief in charge of Special Investigations to begin with. Rather, plaintiff merely alleges that during the pendency of the wiretapping scheme – which Lenich conducted while she was in that supervisory position – KCDAO supervisors knew or should have known about Lenich's unlawful wiretapping operation because she used KCDAO equipment, facilities and personnel to carry it out and because the "confidential investigation" to which she claimed the

---

[12] To state a claim for ordinary negligence under New York law, a plaintiff must plausibly allege: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)).

wiretaps were related did not in fact exist.  Ex. A, ¶¶63, 119.  Plaintiff also contends "upon information and belief," that during the pendency of Lenich's scheme supervisors should have been monitoring her more closely because she was engaging in erratic behavior, such as barging into rooms, kicking open doors and calling colleagues names, resulting in a number of EEOC complaints.  *Id.*, ¶¶64-65.  These allegations are insufficient, however.

Initially, plaintiff's contention that Lenich's use of KCDAO facilities, equipment and personnel to carry out her wiretapping scheme should have alerted supervisory officials about her crimes is unavailing.  Indeed, rather than plausibly suggesting that any KCDAO official should have been alerted to Lenich's scheme, the allegations in the FAC suggest that Lenich was arguably uniquely in a position to carry out such a scheme undetected.  According to the FAC, Lenich was the KCDAO official in charge of supervising the wire room's activities and personnel and by virtue of her position could, *inter alia*, unilaterally open a KCDAO investigation into an individual set wire room policy and approve wiretap applications.  Ex. A, ¶¶6, 29-35.  Thus, it is simply not plausible that Lenich's conducting of a wiretap out of the KCDAO wire room in connection with a so-called "confidential investigation" was sufficiently unusual so as to have been a red-flag to her colleagues.  Moreover, Lenich admittedly knew that her conduct was illegal at the time, and therefore took lengths to conceal it, including by instructing her colleagues not to listen to, read or otherwise review the intercepted communications.  Ex. D, at 31:18-32:3; Ex. B, ¶13.  Accordingly, given the nature of Lenich's position, that she operated her scheme out of the KCDAO wire room, using (unwitting) KCDAO personnel and KCDAO equipment, cannot on its own plausibly support the inference that supervisors should have known that she was operating an unlawful wiretapping scheme.

Further, while plaintiff contends that Thompson, Gonzalez and Schaeffer "knew Lenich

was not conducting any law enforcement operation against Plaintiff," Ex. A, ¶63, and, ostensibly, should therefore have known that Lenich's purported "confidential investigation" was simply a front, this argument is circular; it presupposes that these defendants knew that Lenich was wiretapping plaintiff's phone in the first place.   However, plaintiff has not plausibly alleged this to be the case.   While she alleges "upon information and belief" that the individually-named City Defendants affirmatively knew about Lenich's scheme prior to November 28, 2016 (when the KCDAO filed criminal charges against her) and did nothing, Ex. A, ¶¶72-73, as set forth in Point I(C), *supra*, the FAC contains no facts whatsoever – let alone facts specific to each individual defendant – upon which that conclusory allegation is based.[13]

Nor can plaintiff's allegations about Lenich's supposed "erratic behavior" during the pendency of her wiretapping scheme establish notice.   As a preliminary matter, these allegations again are asserted "upon information and belief," without any facts supporting the basis for such a belief, and as such are insufficiently pled.   *See* Point I(C), *supra*.   Moreover, even if Lenich had been accused of this type of behavior at the time she was unlawfully wiretapping plaintiff's phone, there is nothing about barging into rooms, kicking in doors or name-calling – conduct that is less than desirable, but certainly not fraudulent, deceptive or felonious – that would suggest that a person engaging in such conduct was also fabricating judicial orders, misappropriating office resources and lying to colleagues in execution of an unlawful wiretapping scheme.   *See Nevaeh T. v. City of N.Y.*, 132 A.D.3d 840, 842 (N.Y. App. Div. 2d Dep't, 2015) (noting that "actual or constructive notice to the [employer] of prior *similar* conduct generally is required") (emphasis added) (quotation marks and citation omitted).   Accordingly, plaintiff's conclusory

---

[13] While it goes without saying that *someone* at the KCDAO had to have learned about Lenich's conduct at *some* point in time prior to her arrest and arraignment, the FAC is devoid of facts from which it could plausibly be concluded that anyone at the KCDAO knew about Lenich's scheme for any appreciable time before that time, let alone that any particular individual knew and did nothing about it.

allegations that the alleged EEOC complaints somehow constituted warning signs that were ignored[14] do not support a plausible claim of negligent retention and supervision of Lenich.

Quite simply, plaintiff has not plausibly alleged that anyone at the KCDAO, let alone any of the individually-named defendants, could possibly have known that a senior ADA would threaten her career, law license and her very freedom by abusing her position to knowingly commit multiple felonies against a colleague.   Accordingly, plaintiff's negligent retention and supervision claim must be dismissed.

### B.   Plaintiff Has Not Plausibly Alleged a Negligence Claim Against Thompson, Gonzalez or Schaeffer

Plaintiff also asserts a claim for ordinary negligence against Thompson, Gonzalez and Schaeffer, as well as several "John Doe" defendants, on the theory that they failed to implement policies and protocols that would have prevented Lenich from unlawful wiretapping plaintiff's phone.  Ex. A, ¶¶122-23.  However, the FAC alleges that there *were* in fact policies in place for the application for, and execution of, wiretap orders, *id.*, ¶¶34-40 – which, it should be stressed, include such safeguards as a review of the application by a supervisor and presentation to a judge for approval, *id.*, ¶¶35-36 – and as set forth in Point III(A), *supra*, no individually-named defendant or any other KCDAO supervisor had any reason to believe that Lenich would abuse her position and entirely bypass those procedures by committing outright forgery of judicial orders.  Thus, there was no reason for any KCDAO official to believe that the safeguards in place – which, to a degree, necessarily presuppose the integrity of those entrusted to implement them – were in any way deficient.  Accordingly, the ordinary negligence claim against Thompson, Gonzalez and Schaeffer must also be dismissed.

---

[14] Further, while plaintiff cites these alleged EEOC complaints as something that should have caused Lenich to be more closely supervised, even according to the FAC Lenich's alleged behavior was not left un-addressed – plaintiff alleges that Lenich was required to undergo sensitivity training. Ex. A, ¶64.

### C. **Plaintiff Has Not Plausibly Alleged a Negligence Claim Against Donohue**

Plaintiff's negligence theory as against Donohue fares no better.  Plaintiff alleges "upon information and belief" that Donohue was the KCDAO employee who physically implemented the wiretap of plaintiff's phone out of the KCDAO wire room upon Lenich presenting him with the forged orders.  Ex. A, ¶¶11, 36, 43, 45.  Plaintiff claims not that Donohue was willfully complicit in Lenich's scheme but, rather, that he was negligent in failing to notice that the orders had forged signatures and lacked a purportedly-required raised judicial seal, thereby breaching an alleged duty to plaintiff to ensure those orders were not forged. *Id.*, ¶¶36-37, 44, 124-125.  As a threshold matter, however, defendants are unaware of any case law supporting the existence of any such duty owed by an employee of a prosecutor's office to a would-be victim of a supervisory ADA's fraudulent conduct.  As "[t]he existence of a duty is… a *sine qua non* of a negligence claim," without which no liability can ensue, *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (citing, *inter alia*, *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402 (N.Y. 1985)), plaintiff's failure to plead the existence of a legally-cognizable duty alone is fatal to her negligence claim against Donohue, *see id.* (noting that the question of the existence and scope of a duty is a question of law to be resolved by the court) (citation omitted).

Even assuming, *arguendo*, that Donohue owed some sort of duty to plaintiff to ensure that the wiretap orders were not forgeries, plaintiff's negligence theory still fails because the FAC does not contain facts that plausibly support a finding that Donohue breached any such duty.  The only purported "fact" alleged by plaintiff which she contends should have Donohue on notice that the orders were fake was the alleged absence of a raised judicial seal on the orders.  Ex. A, ¶44.  Even if true, however, the absence of raised judicial seals on the wiretap orders could not, in and of itself, have put Donohue on notice that there was anything suspect about the orders, because there is no requirement in New York that wiretap orders bear such a seal.  *See*

*generally* N.Y.C.P.L. § 700.30 (stating requirements for eavesdropping orders).

Accordingly, the FAC contains no facts that could support a finding that Donohue breached any duty to plaintiff by failing to detect that the orders presented to him by Lenich – who, according to plaintiff, was a supervisory ADA in charge of overseeing all of the wire room's operations – were fraudulent. Thus, plaintiff's negligence claim against Donohue also fails and must be dismissed.[15]

### D.  At a Minimum, the City Defendants are Entitled to Immunity Under State Law on the Negligence-Based Claims

Alternatively, at a very minimum, the City Defendants are entitled to immunity under New York state law in connection with plaintiff's negligence theories. New York law provides immunity to government officials for actions involving the exercise of discretion or judgment in the performance of their official functions. *Mon v. City of N.Y.*, 78 N.Y.2d 309, 313 (N.Y. 1991) (quoting *Haddock v. City of N.Y.*, 75 N.Y.2d 478, 484-85 (N.Y. 1990)). "New York immunity law 'affords public officials considerably greater protection from individual capacity suits than the federal doctrine of qualified immunity.'" *Estate of Rosenbaum v. City of N.Y.*, 982 F. Supp. 894, 895 (E.D.N.Y. 1997) (quoting *Hirschfeld v. Spanakos*, 909 F.Supp. 174, 180 (S.D.N.Y. 1995)). Immunity will attach to an official's discretionary acts "unless that action is taken in bad faith or without a reasonable basis." *Blouin v. Spitzer*, 356 F.3d 348 (2d Cir. 2004).

Here, all of the alleged actions of the individual City Defendants that purportedly underlie plaintiff's negligence-based claims involve the exercise of discretion by governmental officials in the performance of their duties. There being no allegations that any of these defendants (or any other City employee, for that matter) acted with bad faith or without a reasonable basis, the City Defendants are, at a minimum, entitled to immunity on plaintiff's

---

[15] There being no viable underlying claim of negligence in the FAC, there is nothing to which *respondeat* liability may attach, and the negligence claim must therefore also be dismissed as against the City.

negligence and negligent hiring and retention claims, and those claims should be dismissed.

## POINT IV:  PLAINTIFF'S TORTIOUS INTERFERENCE WITH EMPLOYMENT CLAIM FAILS AS A MATTER OF LAW

Under a claim styled "Tortious Interference with Employment," plaintiff alleges that Lenich's conduct rendered her unable to continue working for the KCDAO and that the City bears *respondeat* liability for that conduct.  Ex. A, ¶¶129-33.  This *respondeat* claim fails for a number of reasons, however.  As a preliminary matter, as set forth in Point I(D), *supra*, Lenich was not acting within the scope of her employment and in furtherance of City/KCDAO business when she unlawfully intercepted plaintiff's private communications and used them to harass plaintiff.  For this reason alone, the City cannot be vicariously liable for these acts.  Furthermore, the City, as plaintiff's employer, cannot be liable to plaintiff on a tortious interference with employment relations ("tortious interference") claim because in New York, such a claim can only lie as against a third party to the employment relationship.  *Albert v. Losken*, 239 F.3d 256, 274 (2d Cir. 2001) ("'The tort of interference with an employment contract cannot lie against the Hospital [because it is] a party to the alleged employment contract.'") (quoting *Kosson v. Algaze*, 203 A.D.2d 112, 113, 610 N.Y.S.2d 227, 228-29 (N.Y. App. Div. 1st Dep't 1994) (alteration in original)).

Indeed, in order for plaintiff to state a predicate tortious interference claim against Lenich (a pre-requisite for any *respondeat* liability to attach to the City for Lenich's actions), plaintiff necessarily must allege that Lenich acted *outside* the scope of her authority when she engaged in the conduct that forms the basis of the claim; otherwise Lenich, as plaintiff's co-employee, will not be considered a "third party" with respect to plaintiff's employment relationship with the City, either.  *See Losken*, 239 F.3d at 274-76 (dismissing tortious interference claim against co-employee defendant because, *inter alia*, plaintiff could not establish that defendant was a third

party for purposes of such a claim, but allowing claim to proceed as against a second co-employee defendant who plaintiff alleged acted purely out of self-interest and undermined the employer's interests); *see also Johnson v. MediSys Health Network*, No. 10-cv-1596 (ERK)(VVP), 2011 U.S. Dist. LEXIS 156828, *32 (E.D.N.Y. Apr. 28, 2011).  If Lenich so acted, however, no *respondeat* liability may attach to the City, and the *respondeat* claim on the tortious interference claim – and all other *respondeat* claims in the FAC premised on Lenich's actions – must be dismissed.[16]

## CONCLUSION

For the foregoing reasons, the City Defendants respectfully request an Order dismissing the FAC in its entirety as against them, with prejudice, and granting such other and further relief as the Court deems just and proper, together with costs, expenses and attorneys' fees.

Dated:       New York, New York
             June 29, 2018

                          ZACHARY W. CARTER
                          Corporation Counsel of the City of New York
                          *Attorney for the City Defendants*
                          100 Church Street
                          New York, NY  10007
                          (212) 356-3539/3538
                          agarman@law.nyc.gov


                    By:
                          Ashley R. Garman
                          *Senior Counsel*
                          Joshua J. Lax
                          *Senior* Counsel

---

[16] In any event, plaintiff has not stated a cognizable tortious interference claim against Lenich.  To state such a claim, plaintiff, as an at-will employee, must plausibly allege among other things that Lenich used wrongful means to persuade the KCDAO to terminate her.  *See Johnson*, 2011 U.S. Dist. LEXIS 156828, *32; *see also Cohen v. Davis*, 926 F.Supp. 399, 403 (S.D.N.Y. 1996) (collecting cases).  However, the KCDAO did not terminate plaintiff; she left of her own accord. Ex. A, ¶¶88-89.