UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE ROSENFELD,

     Plaintiff,

  v.

TARA LENICH; CITY OF NEW YORK;
LU-SHAWN M. THOMPSON, AS
ADMINISTRATOR OF ESTATE OF KENNETH
P. THOMPSON; ERIC GONZALEZ; WILLIAM
SCHAEFER; BRIAN DONAHUE; and
JOHN/JANE DOES 1-10,

     Defendants.

No. 17 Civ. 7299

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**Served on all parties on July 27, 2018**

<u>TABLE OF CONTENT</u>

PAGE NO.

TABLE OF AUTHORITIES ....................................................................................ii-vi

PRELIMINARY STATEMENT ...................................................................................1

FACTS ........................................................................................................................3

ARGUMENT ..............................................................................................................8

I.    THE CITY DEFENDANTS ARE LIABLE UNDER THE WIRETAP ACT....................8

    A.    Plaintiff's Allegations that the Individual Defendants Disclosed Plaintiff's Communications Is Actionable under the Wiretap Act ..........................................9

    B.    At a Minimum, the Allegations in the Complaint Raise Fact Issues as to Whether Lenich Acted Within the Scope of Her Employment at KCDAO, Giving Rise to *Respondeat Superior* Liability Against the City..........................14

        1.    Factor 1: Lenich Committed Her Crimes at KCDAO, on KCDAO Time, Using KCDAO Equipment ...............................................15

        2.    Factor 2: The City Gave Lenich Unsupervised Authority to Conduct Wiretaps ...............................................................................15

        3.    Factor 3: As a Supervisory ADA, Lenich Routinely Conducted Wiretaps ...............................................................................15

        4.    Factor 4: Apart from Her Forgeries, Lenich Did Not Depart from KCDAO Procedures to Conduct the Wiretaps...........................17

        5.    Factor 5: Based on Lenich's History of Abusing Her Authority and Her Access to Highly Sensitive Law Enforcement Tools, Her Crimes Were Reasonably Foreseeable ................................................18

    C.    The Use and Disclosure of Plaintiff's Private Communications to DOJ, as Alleged in the Complaint, Violated the Wiretap Act.............................19

    D.    Individual Defendants Are Not Immune for their Misconduct.............................20

II.    THE CITY IS LIABLE UNDER SECTION 1983 ........................................21

    A.    Lenich Was a Policymaker for the City ...............................................21

    B.    The City Acted with Deliberate Indifference......................................24

III.    THE CITY DEFENDANTS' NEGLIGENCE LED TO LENICH'S EIGHTEEN-MONTH WIRETAP ........................................................25

i

A.    The City Is Liable for Its Negligent Retention and Supervision of Lenich ...........25

B.    Plaintiff Has Plausible Negligence Claims against Individual Defendants. ..........26

C.    City Defendants Are Not Immune Under State Law ...............................................27

IV.    PLAINTIFF SUFFICIENTLY ALLEGED TORTIOUS INTERFERENCE WITH
EMPLOYMENT AGAINST THE CITY ...........................................................................28

CONCLUSION..........................................................................................................................28

TABLE OF AUTHORITIES

**Cases**

*Amnesty Am. v. Town of West Hartford*,
    361 F.3d 113 (2d Cir. 2004)................................................................................... 22, 24

*Anthony v. City of New York*,
    339 F.3d 129 (2d Cir. 2003)........................................................................................ 23

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)........................................................................................ 11

*Aryai v. Forfeiture Support Assocs.*,
    25 F. Supp. 3d 376 (S.D.N.Y. 2012).......................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662,  (2009).................................................................................................. 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................... 10

*Berry v. Funk*,
    146 F.3d 1003 (D.C. Cir. 1998) .................................................................................. 13

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008)........................................................................................ 11

*Chandler v. U.S. Army*,
    125 F.3d 1296 (9th Cir. 1997) .................................................................................... 13

*Conte v. Cty. of Nassau*,
    No. 06 Civ. 4746, 2010 WL 3924677 (E.D.N.Y. Sept. 30, 2010)........................... *passim*

*Daniels ex rel. v. Comm'r of Soc. Sec.*,
    456 F. App'x. 40 (2d Cir. 2012) ........................................................................... 18, 20

*Drimal v. Makol*,
    No. 12 Civ. 00717, 2016 WL 3676089 (D. Conn. July 6, 2016)................................ 12

*Drimal v. Tai*,
    786 F.3d 219 (2d Cir. 2015)........................................................................................ 12

*Gibbs v. City of New York*,
    714 F. Supp. 2d 419 (E.D.N.Y. 2010) ........................................................................ 17

*Gonzalez v. City of New York*,
    133 A.D.3d 65 (1st Dep't 2015) ............................................................................ 25, 26

*H.H. v. City of New York*,
  No. 11 Civ. 4905, 2017 WL 3396434 (E.D.N.Y. Aug. 7, 2017) ..................................... 27

*Haddock v. City of New York*,
  532 N.Y.S.2d 379 (1st Dep't 1988) ................................................................................ 27

*Holmes v. Gary Goldberg & Co., Inc.*,
  40 A.D.3d 1033 (2d Dep't 2007) ............................................................................. 16, 17

*Inglis v. Dundee Cent. Sch. Dist. Bd. of Educ.*,
  180 Misc.2d 156 (Sup. Ct. Yates Cty. 1999) ................................................................ 16

*Int'l Shared Servs, Inc. v. County of Nassau*,
  222 A.D.2d 407 (2d Dep't 1995) ..................................................................................... 14

*Jackson v. NYS Dep't of Labor*,
  No. 09 Civ. 6608, 2012 WL 843631 (S.D.N.Y. Mar. 12, 2012) ..................................... 11

*Jeffes v. Barnes*,
  208 F.3d 49 (2d Cir. 2000) .............................................................................................. 22

*Jones v. Weigand*,
  134 A.D. 644 (2d Dep't 1909) ......................................................................................... 14

*Liffiton v. Keuker*,
  850 F.2d 73 (2d Cir. 1988) .............................................................................................. 21

*Makoske v. Lombardy*,
  47 A.D.2d 284 (3d Dep't 1975) ....................................................................................... 19

*Margolis v. Volkswagen of Am., Inc.*,
  77 A.D.3d 1317 (4th Dep't 2010) .................................................................................... 19

*McGrath v. Nassau Health Care Corp.*,
  217 F. Supp. 2d 319 (E.D.N.Y. 2002) ............................................................................ 16

*Mon v. City of New York*,
  78 N.Y.2d 309 (1991) ...................................................................................................... 27

*Moray v. City of Yonkers*,
  924 F. Supp. 8 (S.D.N.Y. 1996) ...................................................................................... 21

*Morillo v. City of New York*,
  No. 95 Civ. 2176, 1997 WL 72155 (S.D.N.Y. Feb. 20, 1997) ........................................ 14

Noto v. St. Vincent's Hosp.,
  160 A.D.2d 656 (1st Dep't 1990) .................................................................................... 15

iv

*Pembaur v. City of Cincinati*,
    475 U.S. 469 (1986)................................................................................ 22

*Peterson v. Tomaselli*,
    469 F. Supp. 2d 146 (S.D.N.Y. 2007)....................................................... 23

*Riviello v. Waldron*,
    47 N.Y.2d 297 (1979) ...................................................................... 14, 28

*Rookard v. Health & Hospitals Corp.*,
    710 F.2d 41 (2d Cir. 1983)........................................................................ 22

*Schiller v. City of New York*,
    No. 04 Civ. 7922, 2008 WL 200021 (S.D.N.Y. Jan. 23, 2008)....................... 23

*Schorr v. Guardian Life Ins. Co. of Am.*,
    44 A.D.3d 319 (1st Dep't 2007) ............................................................... 28

*Sims v. Bergamo*,
    3 N.Y.2d 531 (1957) ............................................................................... 16

*Sokolow v. Palestine Liberation Org.*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014)......................................................... 17

*Spetalieri v. Kavanaugh*,
    36 F. Supp. 2d 92 (N.D.N.Y. 1998)......................................................... 13

*Stalter v. Cty. of Orange*,
    No. 15 Civ. 5274, 2016 WL 8711397 (S.D.N.Y. Aug. 5, 2016) ............... 22, 23

*Stewartson v. Gristedes Supermarket, Inc.*,
    271 A.D.2d 324 (1st Dep't 2000) ......................................................... 18, 19

*Zeranti v. United States*,
    167 F. Supp. 3d 465 (W.D.N.Y. 2016)..................................................... 15

**Statutes**

18 U.S.C. § 2511(1)(a)................................................................................. 8, 9

18 U.S.C. § 2520(d)................................................................................ 19, 20

18 U.S.C. § 2701(a) ........................................................................................ 8

CPL § 700.30 ................................................................................................ 24

**Rules**

Fed. R. Civ. P 8(a) ........................................................................................ 10

Fed. R. Civ. P. 12(b)(6).................................................................................................. 21

## PRELIMINARY STATEMENT

For eighteen months, Tara Lenich used her position as Deputy Bureau Chief in Charge of Special Investigations at the Kings County District Attorney's Office ("KCDAO") to conduct an illegal wiretapping operation targeting her coworker, Plaintiff Stephanie Rosenfeld, and a New York Police Department ("NYPD") detective. Defendant Lenich pled guilty to this conduct and is serving a federal sentence. Her liability in this case is undisputed.

To commit her crimes, Lenich used KCDAO equipment and her unfettered authority within the office. She claimed to be pursuing an official, secret investigation. She stored the fruits of her illegal wiretaps in an official KCDAO database. Because KCDAO policy apparently authorized Lenich to conduct an unsupervised 18-month wiretap investigation that targeted two of her colleagues, her scheme went undetected, and Lenich was allowed complete access to Ms. Rosenfeld's private phone calls and text messages with loved ones and friends.

Lenich was not the only one who shamelessly invaded Ms. Rosenfeld's privacy. As the City has now admitted (Dkt. No. 52), Ms. Rosenfeld's communications have been stored in a database on a KCDAO server, to which multiple employees beyond Lenich had, and continue to have, access. The content of her calls and messages were further disclosed to multiple colleague prosecutors, detectives, and employees around the office, becoming fodder for workplace gossip and the Kings County legal community. Characterizations of her private communications also ended up in the tabloid press. And KCDAO distributed Ms. Rosenfeld's calls and text messages to both the Department of Justice ("DOJ") and a court in an entirely unrelated proceeding.

The City Defendants[1] now seek to dismiss this case against them, claiming that Plaintiff failed to "plausibly" allege any claim. The City Defendants assert this defense despite knowing

---

[1]     The term "City Defendants" refers to: Defendants City of New York; Lu-Shawn M. Thompson, as Administrator of the Estate of Kenneth P. Thompson; Eric Gonzales; William Schaefer; and Brian Donahue.

1

full-well that Plaintiff's allegations give rise to the obvious inferences that Defendants fault

Plaintiff for not specifically asserting. Moreover, more specific factual allegations are uniquely

within Defendants' knowledge and control, and Plaintiff cannot possibly allege (and need not

allege) these details without discovery. These factual specifics include, among others:

- The identity of those within KCDAO to whom Defendants Schaefer, Gonzales and Donohue disclosed Ms. Rosenfeld's communications (Defs.' Br.[2] at 6-7);

- When those disclosures occurred (Defs.' Br. at 6-7);

- What precisely was disclosed (Defs.' Br. at 6-7);

- Which other KCDAO employees had access to Ms. Rosenfeld's communications, and what they disclosed to others about those communications (Defs.' Br. at 6-7);

- Who within KCDAO knew that Lenich was setting up these illegal wiretaps (Defs.' Br. at 20);

- What motivated Lenich to conduct these wiretaps (Defs.' Br. at 14);

- The full extent of Lenich's policy-making authority within KCDAO (Defs.' Br. at 18);

- Which KCDAO employees had access to the wiretaps from their inception (Defs.' Br. at 22); and

- When and how KCDAO, or any of its employees, disclosed Ms. Rosenfeld's communications to DOJ (Defs.' Br. at 8-11).

Discovery is necessary to answer these specific factual questions, but Plaintiff's allegations in

the Complaint[3] are more than sufficient and plausibly demonstrate the City Defendants' liability.

---

[2]     All references to "Defs.' Br." are to the Memorandum of Law in Support of City Defendants' Motion to Dismiss.

[3]     References to the "Complaint" refer to the First Amended Complaint, Dkt. No. 11.

Dismissal of the Wiretap Act claims against the City Defendants is not warranted. Not only has Plaintiff alleged that the Individual Defendants[4] disclosed the content of her communications both to each other and to others within KCDAO, Plaintiff also alleges that they disclosed her communications to DOJ without any subpoena or court order—a clear violation of the Act. There is no defense or immunity as a matter of law for these disclosures. The City Defendants' sole defense—"plausibility," a last bastion defense—does not withstand scrutiny. *See infra*, Parts I(A), (C).

The City Defendants' other basis for dismissing Plaintiff's Wiretap Act claims does not fare any better. The City is liable under the Wiretap Act for Lenich's violations because Lenich committed her crimes within the scope of her employment. Dismissal of this claim would be improper at this stage given the inherently factual nature of the scope of employment inquiry and Lenich's undisputed use of her authority, position, and resources at KCDAO to carry out her wiretap scheme. The factual questions on "scope" are numerous, and discovery is required to flesh them out. *See infra* Part I(B).

The City is separately liable under *Monell* for Lenich's constitutional violation because either: (1) she is a final policymaker with respect to wiretaps, or (2) her supervisors, as a matter of official policy, acquiesced to Lenich's unconstitutional conduct. *See* Part II, *infra*.

Lastly, the City Defendants raised no viable defense to Plaintiff's state law claims. *See infra* Parts III & IV. The Court should therefore reject this Motion in its entirety.

## FACTS

In January 2006, Plaintiff Stephanie Rosenfeld fulfilled her lifelong dream of becoming a prosecutor when she joined KCDAO as an Assistant District Attorney ("ADA"). *See* First

---

[4] The term "Individual Defendants" refers to Defendants Thompson, Gonzales, Schaefer, and Donahue.

3

Amended Complaint ("FAC"), Dkt. No. 11, ¶ 20-21. Over the course of her eleven-year career in

the office, she served as lead trial attorney on numerous criminal trials and supervised several

prosecutors in other trials. *See id.* ¶ 22. She worked with Defendant Tara Lenich in a general

practice bureau of KCDAO for approximately five years. *See id.* ¶ 23.

***Lenich's Authority Over Wiretaps at KCDAO***

From May 2015 until her arrest in November 2016, Lenich was the Deputy Bureau Chief

in Charge of Special Investigations at KCDAO. *See id.* ¶¶ 6, 25. She supervised several other

prosecutors and was generally in charge of special investigations and prosecutions the office

conducted. *See id.* ¶¶ 25-29. Lenich reported to Defendant William Schaefer, an Executive

Bureau Chief, but had the authority to report and make requests directly to the District Attorney

("DA") without going through anyone else in the chain of command. *See id.* ¶¶ 10, 26-27.

Defendant Kenneth Thompson was the DA in 2015 until his passing in October 2016, when

Defendant Eric Gonzales took over as Acting DA and later as DA. *See id.* ¶¶ 8, 9.

Lenich had virtually exclusive control and authority over KCDAO wiretaps. KCDAO

gave her the authority to determine whether to seek a wiretap, how the wiretap was set up, and

how it was operated. *See id.* ¶ 33. She was responsible for supervising the KCDAO wire room,

which consisted of non-attorney staff and detectives. She was responsible for supervising all the

wiretaps KCDAO conducted. *See id.* ¶ 6. She was also in charge of enforcing and establishing

policies and practices governing the wiretaps KCDAO conducted. *See id.*

Once a wiretap was authorized, Defendant Brian Donahue, Assistant Deputy Chief

Investigator, who answered to Lenich, was in charge of setting up the wiretap. *See id.* ¶ 36.

Donahue was also responsible for confirming that the wiretaps issued out of KCDAO were

properly authorized—including ensuring that the wiretap was issued by the appropriate court, contained the necessary signatures, and bore a raised seal. *See id.* ¶¶ 36-37.

**Lenich's Illegal Wiretap Scheme**

In May 2015, Lenich began her illegal wiretap scheme. *See id.* ¶ 51. For six months, she forged multiple court orders and grand jury subpoenas to wiretap Ms. Rosenfeld's personal cell phone. Lenich used the wiretap to illegally intercept Ms. Rosenfeld's phone and text message communications. *See id.* ¶ 41. Because wiretap orders generally expire after a month, Lenich forged at least seven court orders to keep her scheme of reviewing Ms. Rosenfeld's phone going. *See id.* ¶ 46. She also forged court orders and grand jury subpoenas directed at cell phone service providers to conduct a fifteen-month illegal wiretap on the personal cell phone of an NYPD detective with whom Ms. Rosenfeld worked and communicated. *See id.* ¶ 55. Lenich illegally intercepted Ms. Rosenfeld's communications through this wiretap as well. *See id.* ¶ 54. In total, Lenich illegally intercepted Ms. Rosenfeld's communications for eighteen months. *See id.* ¶ 51.

At the time Lenich conducted the wiretaps, she was assigned to investigate high-profile gun trafficking involving Delta Airlines employees. She was working on that investigation with the detective she wiretapped.[5] Lenich later stated that her work on that case was a motivation for her crimes. *See* Ex. 1 (Lenich Sentencing Transcript) at 26-27.[6]

Lenich used KCDAO equipment to commit her illegal wiretaps. The forged orders and subpoenas were created and stored on computers and databases in KCDAO's office. FAC ¶ 58; Dkt. No. 52. She submitted each of the forged orders and subpoenas to Donahue, who set up the

---

[5]     *See* Christina Carrega and Graham Rayman, *Accused Gunrunners May Use Brooklyn Prosecutor's Wiretap Scandal As Grounds For Case Dismissal*, N.Y. Daily News, Dec. 1, 2016, http://www.nydailynews.com/new-york/nyc-crime/brooklyn-wiretap-scandal-gunrunners-seek-dismissal-article-1.2894826.

[6]     Exhibit 1 is attached to the Declaration of Jessica Clarke, filed along with this memorandum of law.

unauthorized taps in KCDAO's wire room on KCDAO equipment. *Id.* ¶ 36. Despite the orders' obvious indicia of forgery, like the absence of a raised seal, Donahue initiated the taps and allowed them to continue with each forged court order and subpoena. He never checked to see if they were properly issued. *See id.* ¶¶ 36-37,43-44.

Lenich stored Ms. Rosenfeld's illegally intercepted communications on KCDAO computers and databases. *See id.* ¶¶ 58, 70. Other KCDAO employees had access to these computers and databases, and thus to Ms. Rosenfeld's communications. *See id.* ¶ 40. As the City recently admitted, these intercepted communications were stored on a KDCAO server to which several employees—including Defendant Donahue—continue to have access. Dkt. No. 52.

Defendants Schaefer, Thompson and Gonzalez—who were Lenich's supervisors, were responsible for knowing what investigations she was conducting, and had the authority to review her wiretaps—turned a blind eye to Lenich's misconduct for over a year and a half. FAC ¶ 61. Lenich falsely told KCDAO employees, including her bosses, that her unauthorized wiretaps were part of an official confidential law enforcement investigation. *See id.* ¶ 59. Defendants Schaefer, Thompson and Gonzales either knew or should have known that this was a lie; their official and actual conduct collectively failed to protect Ms. Rosenfeld (as well as scores of other victims who were party to the eighteen months of calls) from Lenich's crimes. *See id.* ¶¶ 60-63.

Notably, Lenich's supervisors knew that she could not be trusted. While these wiretaps were being conducted, Lenich was acting erratically. *See id.* ¶ 64. She kicked open doors, barged into rooms, and called colleagues names. *See id.* She was also the subject of several EEOC complaints brought by other KCDAO employees. *See id.* Despite these glaring red flags that Lenich was out of control and acting aggressively and inappropriately toward her colleagues, KCDAO kept her in a supervisory role and preserved her authority over the most sensitive

operations of the office. She was given a slap on the wrist and ordered to go to sensitivity training. *See id*. She retained full control over the wireroom, the ability to conduct confidential and high-profile investigations, and conduct wiretaps, all with no supervision. *See id.* ¶¶ 64-66.

Lenich's scheme finally came to end in November 2016, when KCDAO filed a criminal complaint against her. *See id.* ¶ 68. To this day, it is unclear how the ongoing crime was uncovered and who within KCDAO leaked it to the press. In March 2017, she was indicted by a federal grand jury on two counts of illegal interception of communications. *See id.* ¶¶ 84-85. She pleaded guilty to both counts and was sentenced to one year and a day in prison. *See id.* ¶ 86.

### KCDAO's Use and Disclosure of Plaintiff's Private Communications

Lenich's supervisors, as well as other KCDAO employees who had access to the illegally intercepted communications, used, reviewed, and disclosed the content of these communications without Ms. Rosenfeld's consent. *See id.* ¶¶ 75-77. They disclosed Ms. Rosenfeld's communications both to one another and to others within the KCDAO office. *Id.* Defendants also disclosed them to DOJ and to a Justice of the New York Supreme Court without Ms. Rosenfeld's authorization. *See id.* ¶¶ 81, 83. Characterizations of the contents of Ms. Rosenfeld's communications ended up in news articles and were the subject of gossip and rumors in her office and in the Kings County legal community. *See id.* ¶¶ 74, 95.

### Lenich's Scheme & KCDAO's Disclosure Destroys Ms. Rosenfeld's Career

The wiretaps intercepted and recorded Ms. Rosenfeld's highly personal communications with friends and family. Neither Ms. Rosenfeld, nor those she communicated with, consented to having their communications intercepted or recorded. *See id.* ¶ 48.

This astonishing invasion of privacy destroyed Ms. Rosenfeld's life and career. It opened Ms. Rosenfeld up to a prolonged media circus. *See id.* ¶ 92-95. She was accosted by reporters

multiple times in front of her home and even approached by a reporter while out with her children. *See id.*

Defendants' disclosure of her communications to various employees within KCDAO caused Ms. Rosenfeld to be treated differently by not only her supervisors but also defense attorneys and judges. *See id.* ¶ 88. The relentless gossip, extensive news coverage, and unjustified stain on her reputation made work at KCDAO unbearable for Ms. Rosenfeld. She left in May 2017, and because of this incident, has yet to find a new job. *See id.* ¶¶ 89, 90.

## ARGUMENT

## I.  THE CITY DEFENDANTS ARE LIABLE UNDER THE WIRETAP ACT

The Electronic Communications Privacy Act ("Wiretap Act") prohibits anyone from "intentionally intercept[ing] . . . any wire, oral or electronic communication." 18 U.S.C. § 2511(1)(a). There is no dispute that Lenich's interception of Ms. Rosenfeld's communications violated the Wiretap Act.[7] The Act also makes it unlawful to "intentionally disclose[], or endeavor[] to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through interception" illegally. 18 U.S.C. 2511(1)(c).

The City Defendants misconstrue Plaintiff's Wiretap Act claim. Plaintiff's claim is based, first and foremost, on the Individual Defendants' knowing disclosure of Ms. Rosenfeld's communications to one another and to other KCDAO employees, as alleged in the Complaint. *See* FAC ¶ 77. Not only are the Individual Defendants liable for this conduct, but there is no dispute that the City is vicariously liable for these violations. These violations are starkly distinct

---

[7]  Plaintiff also asserted a violation under an analogous provision of the Wiretap Act called the Stored Wire and Electronic Communications and Transactional Records Access Act, 18 U.S.C. § 2701. FAC ¶ 102. This statute prohibits intentional access without authorization to a facility that provides electronic communication service. 18 U.S.C. § 2701(a).

from the secondary disclosure violation under the Wiretap Act: the KCDAO Defendants'

disclosure to federal law enforcement authorities. Defendants attempt to mislead this Court by

downplaying the main disclosure violations asserted.

The City is also liable based on Lenich's illegal conduct alone. Because Lenich was

acting within the scope of her employment as the Deputy Bureau Chief in Charge of Special

Investigations while conducting these illegal wiretaps, the City is responsible for her actions.

Lastly, the City Defendants are liable, and not immune, for their unauthorized disclosure of Ms.

Rosenfeld's communications to DOJ. Defendants do not dispute making this disclosure and

instead simply claim they did so in response to a subpoena, a fact issue that cannot be resolved

on a motion to dismiss.

### A.    Plaintiff's Allegations that the Individual Defendants Disclosed Plaintiff's Communications Is Actionable under the Wiretap Act

Plaintiff's allegation that the Individual Defendants disclosed Ms. Rosenfeld's

communications to each other and to others within KCDAO, even though they knew the

communications had been unlawfully intercepted, is sufficient to state a Wiretap Claim against

all City Defendants. The City Defendants do not contest that the Individual Defendants were

acting within the scope of their employment when they disclosed Plaintiff's communications and

thus that the City itself is liable for their conduct under the doctrine of *respondeat superior*.

The Individual Defendants disclosed Plaintiff's communications to each other, and to

others within KCDAO, knowing that they had been unlawfully intercepted. *See* FAC ¶¶ 75-77.

That misconduct violates the Wiretap Act. 18 U.S.C. 2511(1)(c).[8] The City's only defense—that

the allegations in the Complaint are not "plausible"—is without merit.

---

[8]     This provision makes it unlawful to "intentionally disclose[], or endeavor[] to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained" illegally.

The Complaint sufficiently and plausibly alleges that the Individual Defendants violated the Wiretap Act. The standard under Fed. R. Civ. P 8(a) merely requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Here, the Complaint plainly alleges that the Individual Defendants had access to Plaintiff's unlawfully intercepted communications (FAC ¶ 40), that the Individual Defendants knew Plaintiff's communications had been unlawfully intercepted (FAC ¶ 76), and that they disclosed Plaintiff's communications amongst each other and to others within KCDAO (FAC ¶ 77). Plaintiff also alleges that characterizations about the content of her communications ended up in newspaper articles (FAC ¶¶ 74, 95) and became a part of office and legal community gossip (FAC ¶ 95). These rumors arose because those who had access to Plaintiff's communications—the Individual Defendants and other KCDAO employees (John Does)— illegally disclosed information about their contents. These allegations more than adequately "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

It is striking that, in seeking to dismiss Plaintiff's Complaint, the Individual Defendants do not deny disclosing Plaintiff's communications. Nor do they deny that they knew they had been unlawfully intercepted. Nor do they deny that individuals throughout KCDAO have seen or been told of the contents of Plaintiff's private communications. Instead, they disingenuously claim that they lack notice of the allegations against them. But the Complaint says precisely how the Individual Defendants violated the Wiretap Act: They disclosed the contents of Ms.

10

Rosenfeld's private and personal communications even though they knew that the communications were obtained unlawfully.

Plaintiff is not required to plead details of the Individual Defendants' misconduct that she has no way of knowing. *See e.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (plaintiff not required to plead specific details of disparate treatment in a mortgage lending race discrimination case where the names and records of those who were not members of the protected class were particularly within the defendant's knowledge and control). Plaintiff cannot know—and cannot be expected to plead—the specifics of the Individual Defendants' disclosures—*e.g.*, when they occurred, to whom they were made, and what precisely was disclosed. That information is immaterial at this pleading stage, and the Individual Defendants know those specifics anyway. Plaintiff alleges that the Individual Defendants investigated Lenich's misconduct (FAC ¶ ¶ 68-73), that KCDAO employees talked about the content of her communications (FAC ¶ 77, 95), and that characterizations of the content of her communications wound up in the press (FAC ¶ 74). From these allegations alone, it is not only plausible that the Individual Defendants disclosed Plaintiff's communications in violation of the Wiretap Act, it is a near certainty.

The fact that many of Plaintiff's allegations were pled "on information and belief" has no bearing on the sufficiency of Plaintiff's allegations. "Pleadings on information and belief generally suffice for Federal Rule 8 purposes when, as here, the subject is not within the knowledge or control of the plaintiff." *Jackson v. NYS Dep't of Labor*, No. 09 Civ. 6608, 2012 WL 843631, at *4 n.3 (S.D.N.Y. Mar. 12, 2012); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief'

where the facts are peculiarly within the possession and control of the defendant.") (internal quotation marks and citations omitted).

Moreover, Plaintiff's lack of information is directly attributable to the *City Defendants*. Plaintiff repeatedly asked the City Defendants for the precise information they now claim she failed to plead, and the City Defendants refused to provide it. *See* FAC ¶¶ 79-80. The details of when and how the Individual Defendants disclosed Ms. Rosenfeld's communications are particularly and peculiarly within the City Defendants' knowledge and control. Only these Defendants know when they disclosed these communications, how they were disclosed, and the exact content of their disclosure. They cannot now place the burden on Plaintiff for not including specific and detailed allegations about the timing of their unlawful disclosures when they hold the information and have repeatedly refused to disclose it.

Defendants' reliance on *Drimal v. Tai*, 786 F.3d 219 (2d Cir. 2015), is misplaced. That case involved *an authorized wiretap* in which the FBI legally intercepted the cell phone calls of the plaintiff's husband as part of a wide-ranging federal securities fraud investigation. *Id.* at 222. The wiretap intercepted phone calls between plaintiff and her husband that would otherwise be privileged. *Id.* at 224. The FBI agents monitoring the calls were instructed, and required under the statute, to minimize their review of those communications. *Id.* at 222. The complaint in that action baldly asserted that the officers violated the Wiretap Act without addressing how the officers allegedly failed to comply with the minimization requirement. *Id.* at 224. The Court directed the dismissal of the complaint but with leave to replead. *Id.* at 223.[9]

---

[9]     Notably, on remand, the plaintiff amended her complaint, alleging that the defendants failed to comply with minimization requirements, and the district court found that she now stated a plausible claim. *Drimal v. Makol*, No. 12 Civ. 00717, 2016 WL 3676089, at *5 (D. Conn. July 6, 2016). The case ultimately settled six months after the district court upheld the amended complaint. *Drimal*, No. 12 Civ. 00717, Dkt. No. 53.

Those facts bear no resemblance to the facts alleged here. The Complaint does not simply assert in bald, conclusory fashion that these Defendants violated the Act. Instead, it states that they conducted an investigation against Lenich that led to criminal charges being filed against her, and that in doing so, they disclosed these communications to each other and to others in the office, all while knowing that they were part of an unauthorized wiretap.[10]

These allegations state a more than plausible claim under the Wiretap Act. Multiple courts have concluded that law enforcement officials cannot disclose the contents of an illegal wiretap even for law enforcement purposes. *See Spetalieri v. Kavanaugh*, 36 F. Supp. 2d 92, 116-19 (N.D.N.Y. 1998) (concluding that officer-defendants were not entitled to disclose contents of illegally intercepted communications within the police department even for purported investigation purposes); *Chandler v. U.S. Army*, 125 F.3d 1296, 1301 (9th Cir. 1997) ("[I]f law enforcement officers gain knowledge of the contents of an intercepted communication, aware of the unlawful interception, they may not use and disclose it."); *Berry v. Funk*, 146 F.3d 1003, 1012-13 (D.C. Cir. 1998) (rejecting the government-defendants' argument that a law enforcement officer could use or disclose illegally intercepted communications as long he was not involved in its interception).

And, significantly, Defendants do not deny that these allegations state a claim under the Wiretap Act. They simply seek dismissal under the "plausibility" standard, which this Court should reject.

---

[10]     Indeed, unlike *Drimal*, there is no indication that Lenich or any of the KCDAO employees minimized or attempted to minimize their review of Ms. Rosenfeld's communications. Of course, even if they had minimized their review, it would not have mattered because the wiretaps were unauthorized in the first place.

**B.     At a Minimum, the Allegations in the Complaint Raise Fact Issues as to Whether Lenich Acted Within the Scope of Her Employment at KCDAO, Giving Rise to *Respondeat Superior* Liability Against the City**

The City is also liable under *respondeat superior* for Lenich's illegal wiretaps because she was acting within the scope of her employment. *See Riviello v. Waldron*, 47 N.Y.2d 297, 301 (1979).[11] Under New York law, an employer is liable for an employee's tortious acts if they were "done while the servant was doing [her] master's work, *no matter how irregularly, or with what disregard of instructions.*" *Id.* at 302 (quoting *Jones v. Weigand*, 134 A.D. 644, 645 (2d Dep't 1909)) (emphasis added).

In making this determination, courts weigh the following five factors: (1) the connection between the time, place and occasion for the act; (2) the history of the relationship between employer and employee in actual practice; (3) whether the act is one commonly done by the employee; (4) the extent to which the act departs from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated. *Id.* at 303.

As an initial matter, this "scope" inquiry is a fact-intensive one that is not amenable to resolution on a motion to dismiss. *Id.* ("[B]ecause the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury."). Courts, therefore, routinely deny motions to dismiss on this issue.[12] Nonetheless, the allegations in the Complaint demonstrate that each of these factors weighs in Plaintiff's favor.

---

[11]     New York state law applies to the scope of employment inquiry—*see, e.g.*, *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 388 (S.D.N.Y. 2012)—an issue the parties do not dispute.

[12]     *See, e.g.*, *Zeranti v. United States*, 167 F. Supp. 3d 465, 471 (W.D.N.Y. 2016) (denying motion to dismiss when the court could not resolve "factual disputes" regarding the defendant's scope of employment); *Int'l Shared Servs, Inc. v. County of Nassau*, 222 A.D.2d 407, 408 (2d Dep't 1995); *see also Morillo v. City of New York*, No. 95 Civ. 2176, 1997 WL 72155, at *7 (S.D.N.Y. Feb. 20, 1997) ("Because the issue of whether a particular act is within the scope of employment depends so heavily on factual considerations, it is ordinarily one for the jury to decide.").

### 1. Factor 1: Lenich Committed Her Crimes at KCDAO, on KCDAO Time, Using KCDAO Equipment

Lenich conducted her wiretapping scheme at KCDAO during work hours. In considering this factor, courts look at whether the employer's premises or equipment were used and whether the act took place during business hours. *See, e.g.*, *Noto v. St. Vincent's Hosp.*, 160 A.D.2d 656 (1st Dep't 1990); *Zeranti*, 167 F. Supp. 3d at 471. Both happened here. Lenich wiretapped Rosenfeld's phone using KCDAO equipment, on KCDAO property, and during KCDAO's operating hours. FAC ¶¶ 38-58. She used her authority over KCDAO's wireroom and her access to KCDAO's wiretap equipment to facilitate her misconduct. This factor weighs heavily in Plaintiff's favor and, at a minimum, raises factual issues not subject to dismissal.

### 2. Factor 2: The City Gave Lenich Unsupervised Authority to Conduct Wiretaps

It is undisputed that KCDAO gave Lenich authority to conduct wiretaps without supervision. Although she did not hold the top position in the office, she—on her own—could seek wiretaps and unlimited renewals, as well as conduct purported confidential law enforcement investigations without anyone else's prior authorization or review. This broad authority, and the access to wiretapping tools and equipment at work, provided Lenich with the means to conduct her wrongdoing.

### 3. Factor 3: As a Supervisory ADA, Lenich Routinely Conducted Wiretaps

Lenich's action here—conducting a wiretap—is one she did routinely as a supervising attorney at KCDAO. The fact that she was able to conduct an eighteen-month wiretap without anyone from KCDAO stopping her or even questioning her further demonstrates how common this act was for her.

The criminal nature of her actions does not render them outside the scope of her employment. Courts have found that intentional torts and illegal actions can be committed within the scope of employment. *See, e.g., McGrath v. Nassau Health Care Corp.,* 217 F. Supp. 2d 319, 334 (E.D.N.Y. 2002) (finding that assault and sexual harassment could have been committed in the scope of employment); *Sims v. Bergamo*, 3 N.Y.2d 531, 534-35, (1957) ("[W]e cannot say that as a matter of law there was no evidence presented from which it could be reasonably inferred that the bartender's assault—though undertaken through a lack of discretion or infirmity of temperament—was committed in the scope of his employment and in furtherance of his employer's interests."); *Inglis v. Dundee Cent. Sch. Dist. Bd. of Educ.*, 180 Misc.2d 156, 158-59 (Sup. Ct. Yates Cty. 1999) (concluding that teacher hitting a student was within the scope of employment).

For example, in *Holmes v. Gary Goldberg & Co., Inc.*, 40 A.D.3d 1033, 1034 (2d Dep't 2007), the plaintiffs were defrauded when their sister, a financial advisor who was employed by the defendant, stole money from their brokerage account. The appellate court reversed the trial court's order granting the employer-defendant's motion to dismiss. The court found that the defendant could be held liable for the advisor's criminal theft. Like in *Holmes*, the criminal nature of Lenich's conduct does not place it beyond the scope of her employment.

Defendants' arguments on this factor amount to a tautology. Essentially, they claim that because Lenich's actions were aberrant and criminal they cannot be within the scope of employment, as a matter of law. But plainly, "scope of employment" is meaningless if analyzed as Defendants would have the Court review the issue. The question which needs factual resolution is not whether the actions are aberrant—they must be to make a claim—but whether the aberrant conduct is within the scope based on the factors identified by the caselaw.

This factor also weighs in favor of the City's liability and, at a minimum, raises a factual issue precluding dismissal at this stage of this case.

### 4.    Factor 4: Apart from Her Forgeries, Lenich Did Not Depart from KCDAO Procedures to Conduct the Wiretaps

Lenich adhered to KCDAO's normal wiretap procedures when she conducted her scheme. She set up a plant on Ms. Rosenfeld's phone using KCDAO's wiretapping equipment and stored the communications on KCDAO's database, just as she would with any lawful wiretap. She submitted the forged judicial orders to Defendant Donahue and conducted the tap under the guise of a "confidential law enforcement investigation." Her conduct was *so* routine that the City Defendants now claim they had no reason to uncover it for *eighteen months*. Defendants simply deferred to Lenich's official authority to conduct these wiretaps.

The mere fact that Lenich's forgeries may have violated KCDAO's stated policies does not change this analysis. *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 517 (S.D.N.Y. 2014) ("[A] defendant may be found liable even where his employee's conduct is intentional or at odds with his employer's stated policy.").

In weighing this factor, courts will also consider the motivations of the tortfeasor— whether for the benefit of the employer or for purely personal reasons. *Holmes*, 40 A.D.3d at 1034. Contrary to the City Defendants' arguments (Defs.' Br. at 14), Lenich's motives cannot be determined now as a matter of law before she has been deposed in this case. *See Gibbs v. City of New York*, 714 F. Supp. 2d 419, 422 (E.D.N.Y. 2010) ("Absent direct proof of an expressed intent to serve his own interest and not his master's, it falls to the Court or to the jury to divine the state of the servant's mind at the relevant time.").

The City Defendants' sole "evidence" of Lenich's motivation comes from a statement Lenich made during sentencing. *See Daniels ex rel. v. Comm'r of Soc. Sec.*, 456 F. App'x. 40, 41

17

(2d Cir. 2012) (limiting what materials a court can consider outside of the complaint on a motion to dismiss).

In any event, Lenich's sentencing statement, in fact, suggests that her wiretap scheme was carried out for the benefit of KCDAO. Lenich explained that she was working on "the biggest case of [her] career"—referring to the Delta gun-running investigation—with the NYPD detective whom she wiretapped and that she was "trying to protect" her work on that case. *See* Ex. 1 (Lenich Sentencing Transcript) at 26-27. Her statements demonstrate that she was motivated by a desire to advance KCDAO's interests by protecting this highly significant prosecution. In light of these statements, there is no basis to conclude, as a matter of law, that her motivations were purely personal.

### 5. Factor 5: Based on Lenich's History of Abusing Her Authority and Her Access to Highly Sensitive Law Enforcement Tools, Her Crimes Were Reasonably Foreseeable

Lastly, KCDAO could reasonably have anticipated Lenich's crimes given her virtually limitless authority to conduct wiretaps at KDCAO.

Courts interpret foreseeability quite broadly. In *Stewartson v. Gristedes Supermarket, Inc.*, 271 A.D.2d 324, 324-25 (1st Dep't 2000), for example, a grocery store manager became upset with a female customer who was impatient about waiting for the manager to fill a phone order. *Id.* at 324. After the female customer stormed out of the store in a rage, the plaintiff, who had been in line behind the female customer, moved her cart and began to load his groceries onto the conveyor belt. *Id.* Unprovoked, the manager began punching the plaintiff and throwing large juice cans at him. *Id.* The First Department found that this assault was not conducted outside the scope of the manager's employment and upheld a jury verdict against the store. *Id.* at 325. The

court recognized that it was foreseeable that a manager, who regularly interacts with the store's customers, might lose his temper with customers. *See id.*

Like in *Stewartson*, it was foreseeable here that Lenich, who was given unfettered access to wiretap equipment at KCDAO, might use that equipment in a manner that was not sanctioned. It was also foreseeable that she might misuse her extensive authority to do what she believed was necessary to protect the high-profile Delta investigation. Indeed, even where an employee departs from her designated activity, she still acts within the scope of employment when her conduct was reasonably foreseeable. *See Margolis v. Volkswagen of Am., Inc.*, 77 A.D.3d 1317, 1319 (4th Dep't 2010); *Makoske v. Lombardy*, 47 A.D.2d 284, 288 (3d Dep't 1975), *aff'd*, 39 N.Y.2d 773 (1976).

Because each of these scope of employment factors weighs heavily in Plaintiff's favor and, at least at this stage, raises a factual issue to be developed in discovery, the City is subject to liability under the Wiretap Act.

### C. The Use and Disclosure of Plaintiff's Private Communications to DOJ, as Alleged in the Complaint, Violated the Wiretap Act

The Complaint also alleges that the City Defendants disclosed Ms. Rosenfeld's communications to DOJ and to a Justice of the New York Supreme Court. Defendants assert a good faith defense pursuant to 18 U.S.C. § 2520(d) with respect to both disclosures. This provision provides a "complete defense against any civil . . . action brought under [the Wiretap Act]" *only if* the disclosure occurred pursuant to a court order, grand jury subpoena, or other narrow exceptions. 18 U.S.C. § 2520(d). While this defense applies to the City Defendants'

disclosure to the Supreme Court Justice alone,[13] the Defendants have not and cannot demonstrate on a motion to dismiss that the disclosure to DOJ is subject to the good faith defense.

Defendants' reliance on a grand jury subpoena from DOJ does not conclusively establish this defense.[14] The timing of the subpoena—which is dated December 6, 2016—is *highly suspicious*—it was issued the *same day* that Plaintiff's counsel directed Defendants not to disclose the communications to DOJ. FAC ¶ 79. It suggests that the subpoena was issued only as a result of Plaintiff's counsel's instruction that KCDAO not disclose those communications and possibly only to provide cover to KCDAO for disclosures to DOJ that had already occurred.

Furthermore, the subpoena alone does not establish whether documents were proffered and produced before the date and time it was served on KCDAO. It does not establish whether KCDAO's prosecutors had discussions about the content of Plaintiff's communications in phone or in-person meetings with DOJ officials before the subpoena was ever issued. It does not show what was turned over and when. These facts can only be uncovered through discovery, not through the City Defendants' self-serving, factually disputed and unsupported claim that they only produced these communications in response to a grand jury subpoena.

**D.      Individual Defendants Are Not Immune for their Misconduct**

The Individual Defendants are not entitled to absolute or qualified immunity for their Wiretap Act violations. Absolute immunity in this context is limited to "those activities that are

---

[13]      While the mere disclosure to the court pursuant to an order does not violate the Wiretap Act, the Complaint references this incident because any disclosure of the content of those communications to other prosecutors or employees in KCDAO *prior to* or *not in accordance* with a court order violates the law. *See* 18 U.S.C. § 2520(d) (providing the limited circumstances in which the good faith defense can be raised).

[14]      The Court should disregard this subpoena in support of the City Defendants' motion to dismiss. It is well-settled that the Court can only consider "the contents of the pleadings themselves, documents attached to the pleadings as exhibits or incorporated by reference, and items of which judicial notice may be taken." *Daniels*, 456 F. App'x. at 41. The grand jury subpoena, which is outside the scope the pleadings and is the subject of many factual issues described above, should not be considered.

intimately associated with the judicial phase of the criminal process." *Liffiton v. Keuker*, 850 F.2d 73, 76 (2d Cir. 1988) (internal quotation marks omitted). It does not extend to the "perform[ance of] administrative or investigative acts." *Id.*

The Individual Defendants disclosed the contents of the illegally obtained wiretaps long before the "judicial phase" of the criminal case against Lenich. Defendants do not even contend that their disclosure to each other and other KCDAO employees is subject to absolute immunity. Nor could they. The disclosures did not further the judicial phase of any criminal process; rather, they led to office gossip that inevitably ruined Ms. Rosenfeld's reputation at KCDAO and her livelihood. Defendants cannot establish that they are entitled to immunity as a matter of law.

Qualified immunity is available only if "the defendant's actions were objectively reasonable under the legal rules that were clearly applicable at the time of his actions." *Id.* at 76. The Wiretap Act clearly and undisputedly prohibits the disclosure of communications obtained through an illegal wiretap. The question of objective reasonableness is inherently fact specific and requires discovery. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). For that reason, "[a] defense of qualified immunity cannot ordinarily support dismissal under Fed. R. Civ. P. 12(b)(6)." *Liffiton*, 850 F.2d at 76.

## II.     THE CITY IS LIABLE UNDER SECTION 1983

The City is independently liable under Section 1983 because Lenich was an official with final decision-making authority over wiretaps at KCDAO, sufficient to hold the City liable for her actions. It is also liable because Lenich's supervisors knew, or should have known, of her eighteen-month wiretap scheme and therefore acquiesced to it.

### A.     Lenich Was a Policymaker for the City

"[A] single action by a decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered,' is sufficient to implicate the municipality in

21

the constitutional deprivation for the purposes of § 1983." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *Pembaur v. City of Cincinati*, 475 U.S. 469, 481 (1986)) (internal citation omitted). "Where an official has final authority over significant matters involving the exercise of discretion, the choices [s]he makes represent government policy." *Rookard v. Health & Hospitals Corp.*, 710 F.2d 41, 45 (2d Cir. 1983). There is no requirement that the official possess broad, policymaking authority in all areas. *Stalter v. Cty. of Orange*, No. 15 Civ. 5274, 2016 WL 8711397, at *10 (S.D.N.Y. Aug. 5, 2016). "[R]ather, the inquiry for the court is whether the official had final policymaking authority in the particular area involved." *Id.* (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)) (internal quotation marks omitted).

Here, Lenich was the final policymaker for KCDAO "on the particular issue involved in the action," *Jeffes*, 208 F.3d at 57 (internal quotation marks and alterations omitted)—namely, she was a final policymaker on whether to seek a wiretap, how a wiretap was set up, and how a wiretap was conducted. FAC. ¶ 33. Lenich was the Deputy Bureau Chief in Charge of Special Investigations for KCDAO. *See id.* ¶ 25. She supervised other ADAs, as well as staff in the KCDAO wire room. *See id.* ¶ 30. She could start and conduct investigations on her own, seek wiretaps without approval, and set policy with respect to wiretaps. *See id.* ¶¶ 32-33, 63. The clear and inescapable inference of the facts alleged in Plaintiff's Complaint is that the official policy of KCDAO was that no one else in a supervisory position had responsibility for approving, reviewing or overseeing ongoing wiretaps at KCDAO.

The mere fact that Lenich was not *the DA* at the time of the wiretaps does not render her a non-policymaker as a matter of law. *Conte v. Cty. of Nassau*, No. 06 Civ. 4746, 2010 WL 3924677, at *30 (E.D.N.Y. Sept. 30, 2010) (rejecting that the ADA-defendants were not

policymakers as a matter of law simply because they were not the DA). Instead, the question of whether Lenich is a policymaker is a "fact specific inquiry" that "does not lend itself to resolution on a motion to dismiss." *Schiller v. City of New York*, No. 04 Civ. 7922, 2008 WL 200021, at *5 n.7 (S.D.N.Y. Jan. 23, 2008), *aff'd,* No. 04 Civ. 7922, 2009 WL 497580 (S.D.N.Y. Feb. 27, 2009); *see also Conte*, 2010 WL 3924677, at *30. There is no requirement that Plaintiff, at this stage of litigation, prove the truth of her claims.[15] *Id.* The allegations asserted in the Complaint alone are sufficient to overcome a motion to dismiss with respect to whether Lenich is a policymaker. *See Stalter*, 2016 WL 8711397, at *11.

Defendants' claim that Lenich cannot be a policymaker because she "exceeded the bound of the authority granted to [her]" when she engaged in the illegal wiretap is without merit.[16] Defs.' Br. at 19. Plaintiff does not claim that Lenich had authority to conduct an *illegal* wiretap operation. Rather, Plaintiff alleges that Lenich had the authority to seek wiretaps without the authorization or approval of any other KCDAO employee or supervisor. She had the authority to conduct confidential investigations on her own. She set KCDAO policy with respect to the operation of wiretaps. And, she had control over wire room staff, where KCDAO wiretaps are conducted. It was this authority—which Lenich wielded at KCDAO *without any oversight*—that allowed her to unlawfully intercept Plaintiff's communications. Indeed, the extent of Lenich's authority is demonstrated by the City Defendants' alleged failure to glean that Lenich was conducting an illegal wiretapping operation out of KCDAO for *eighteen months*.

---

[15]     The cases on which the City Defendants rely to claim that Plaintiff has not demonstrated that Lenich is a policymaker—*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003), *Conte*, 2010 WL 3924677, and *Peterson v. Tomaselli*, 469 F. Supp. 2d 146 (S.D.N.Y. 2007)—were all decided on summary judgment.

[16]     Defendants erroneously rely on *Tomaselli* and *Conte* to support this argument. *Conte* did not involve allegations that any final policymaker exceeded the bounds of their authority. 2010 WL 3924677. In *Tomaselli*, the court found that the alleged policymaker did not take actions in his capacity as a supervisor, but instead in his capacity as a line prosecutor. 469 F. Supp. 2d 146. Here, Lenich's actions were part of her supervisory authority to seek and oversee wiretaps out of KCDAO.

### B.     The City Acted with Deliberate Indifference

The City is also subject to *Monell* liability because the District Attorneys (Thompson and then Gonzales) and Defendant Schaefer (collectively, "Supervisory Defendants"), who were responsible for supervising her and were unquestionably policymakers, failed to supervise Lenich. To survive under this theory on a motion to dismiss, Plaintiff must allege "that the need for more or better supervision . . . was obvious, but that [the defendant] made no meaningful attempt to forestall or prevent the unconstitutional conduct." *Amnesty Am.*, 361 F.3d at 127 (internal quotation marks omitted). Where a policymaker knows or witnesses a subordinate engaged in unconstitutional conduct but fails to take any corrective action to rectify the situation, there is sufficient evidence to establish deliberate indifference. *Id.*

As the Complaint alleges, the Supervisory Defendants knew or, at a minimum, should have known about Lenich's illegal wiretap. This allegation was plausibly alleged. Lenich submitted forged and facially invalid court orders to Defendant Donahue,[17] who kept those forged orders stored within the KCDAO office. FAC ¶¶ 43-45, 63. She used KCDAO equipment and facilities to conduct her operations. FAC ¶¶ 58, 63. The Supervisory Defendants were responsible for knowing what investigations she was conducting at any given time. FAC ¶ 61. Nonetheless, she conducted an illegal investigation for a year and a half, which none of her supervisors either noticed or did anything to stop. FAC ¶ 63. These allegations demonstrate the Supervisory Defendants' deliberate indifference.

---

[17]     The mere fact that CPL § 700.30, which governs warrant requirements for a wiretap, does not expressly reference a raised seal does not govern whether, in practice, judges in Kings County issue warrants with raised seals. The fact that the warrant lacked a raised seal, unlike warrants Donahue typically sees, should have alerted him to Lenich's scheme. This issue, however, is yet another fact dispute that City Defendants have injected into this motion to dismiss that cannot serve as the basis for dismissal as a matter of law.

III.    **THE CITY DEFENDANTS' NEGLIGENCE LED TO LENICH'S EIGHTEEN-MONTH WIRETAP**

Ms. Rosenfeld has asserted negligence claims against the City for its negligent retention and supervision of Lenich, and against the Individual Defendants for their failure to stop Lenich from her illegal wiretap scheme despite being in a position to do so.

A.    **The City Is Liable for Its Negligent Retention and Supervision of Lenich**

A claim for negligent retention or supervision is satisfied where: (1) "the City became aware or should have become aware of problems with [Lenich] that indicated [s]he was unfit"; (2) "the City failed to take further action such as investigation, discharge or reassignment"; and (3) Ms. Rosenfeld's "damages were caused by the City's negligent retention, or supervision" of Lenich. *See Gonzalez v. City of New York*, 133 A.D.3d 65, 68 (1st Dep't 2015). It does not depend on whether Lenich was acting within the scope of her employment or whether the City "participated in, authorized, or ratified" Lenich's tortious conduct. *Id.*

Lenich conducted an eighteen-month illegal wiretap scheme at KCDAO and stored illegally intercepted communications on a KCDAO database. For eighteen months, the City did absolutely nothing, and Ms. Rosenfeld was harmed extensively as a result. The City's supervision of Lenich utterly failed. The Court simply cannot conclude, *as a matter of law*, that the City should not have uncovered Lenich's prolonged misconduct, all of which was done under its nose and with its equipment. The City's negligence in this regard is clear.

The City also knew that Lenich was engaging in destructive and unlawful conduct aimed at her KCDAO colleagues, including verbally abusing and discriminating against colleagues and subordinates, even prior to the wiretaps. Nonetheless, the City kept her in a supervisory position, in which she could conduct investigations and wiretaps on her own. The City "played a part in both creating the danger" by providing Lenich authority and access to conduct wiretaps and

25

"render[ed] the public more vulnerable to the danger" by allowing an unhinged employee access to such sensitive law enforcement tools without any supervision. *Gonzalez*, 133 A.D.3d at 70 (City could be liable for negligent supervision and retention of off-duty police officer, who shot and killed his girlfriend).

### B.     Plaintiff Has Plausible Negligence Claims against Individual Defendants.

Plaintiff has stated viable claims against both the Supervisory Defendants and Donahue for negligence.[18] Defendants' sole argument with respect to the Supervisory Defendants fails. They contend that they cannot be liable because "there was no reason for any KCDAO official to believe that the safeguards in place . . . were in any way deficient." Defs.' Br. at 24. This defense is purely factual in nature—precisely which safeguards were in place, for example, the City Defendants do not say—and does not demonstrate that they are entitled to dismissal as a matter of law. Instead, as alleged in the Complaint, the Supervisory Defendants provided absolutely no oversight of Lenich, and despite numerous red flags and their direct or indirect knowledge of her crimes, left her unsupervised to continue to illegally tap Ms. Rosenfeld's phone.

With respect to Defendant Donahue, Plaintiff has sufficiently alleged, that Donahue had a legal duty to Ms. Rosenfeld that he breached. "In determining duty, a court must determine whether the injured party was a foreseeable plaintiff—whether she was within the zone of danger created by defendant's actions." *Gonzalez*, 133 A.D.3d at 67. Duty is also a "question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law." *Id.*

Defendant Donahue's role was to inspect judicial orders to ensure that they complied with the law. The purpose of his job was to ensure that someone who was not the proper subject

---

[18]     Contrary to Defendants' contention (Defs.' Br. at 26 n.15), because the Individual Defendants were negligent, the City is liable under *respondeat superior*.

of an authorized wiretap was not illegally spied on. Ms. Rosenfeld was squarely within the zone of danger Donahue created. He approved countless orders from Lenich, even though they contained forged signatures and no raised seals. Without his negligence, Ms. Rosenfeld would have been protected from Lenich's intrusion.

### C.        City Defendants Are Not Immune Under State Law

There is no immunity that protects the City Defendants from these negligence claims. Governmental immunity from tort liability applies only for "official actions involving the exercise of discretion . . . so long as the governmental entity actually exercised such discretion by considering all relevant information in making its judgment and by complying with its own established regulations and procedures." *H.H. v. City of New York*, No. 11 Civ. 4905, 2017 WL 3396434, at *11 (E.D.N.Y. Aug. 7, 2017) (internal quotation marks omitted). "Obviously, governmental immunity does not attach to every action of an official having discretionary duties but only to those involving an exercise of that discretion." *Mon v. City of New York*, 78 N.Y.2d 309, 313 (1991).

The City Defendants did not exercise any discretion here. They simply allowed Lenich to remain in the same position and have the same authority despite the fact that she was conducting an illegal wiretap scheme for eighteen months. *See Haddock v. City of New York*, 532 N.Y.S.2d 379, 381 (1st Dep't 1988).

Furthermore, governmental immunity is an affirmative defense, which the City Defendants bear the burden of establishing. *See H.H.*, 2017 WL 3396434, at *12. They cannot, and have not, carried their burden here at the motion to dismiss stage of this action.

## IV.   PLAINTIFF SUFFICIENTLY ALLEGED TORTIOUS INTERFERENCE WITH EMPLOYMENT AGAINST THE CITY

Lenich tortiously interfered with Ms. Rosenfeld's employment with KCDAO, and the City is liable for her misconduct under *respondeat superior*. To state a claim for tortious interference with employment, Plaintiff must allege: (1) the existence of a business relationship between the plaintiff and a third-party, (2) the defendant's interference with the relationship, (3) that defendant used dishonest, unfair, improper, or illegal means that amounted to a crime or independent tort, and (4) that such acts resulted in an injury to the plaintiff's relationship with the third party. *Schorr v. Guardian Life Ins. Co. of Am.*, 44 A.D.3d 319, 323 (1st Dep't 2007).

Plaintiff alleges each of these necessary elements. First, Ms. Rosenfeld was, until recently, an ADA with KCDAO. FAC ¶ 3. Second, Lenich interfered with Ms. Rosenfeld's employment when she wiretapped her phone, which caused Ms. Rosenfeld great embarrassment and prohibited her from performing her job as a prosecutor. *See id*. Third, Lenich admitted that the means by which she interfered with Ms. Rosenfeld's employment amounted to a crime. *See id*. ¶ 2. And fourth, Lenich's actions resulted in public humiliation that forced Ms. Rosenfeld to resign, causing pecuniary and emotional damage. *See id*. ¶ 3.

Defendants contend that this claim requires proof that Lenich acted outside the scope of her employment. The elements of this claim, however, make no reference to requiring such proof. *See Schorr*, 44 A.D.3d at 323. Because each element is satisfied for Lenich and because she was acting within the scope of her employment when she committed this tort (*see* Part I(B)), the City is liable under *respondeat superior*. *See Riviello*, 47 N.Y.2d at 301.

## CONCLUSION

For the foregoing reasons, the City Defendants' motion to dismiss should be denied in its entirety.

Dated: July 27, 2018
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　EMERY CELLI BRINCKERHOFF
　　　　　　　　　　　　　　　　　　　　　& ABADY LLP


　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Richard D. Emery
　　　　　　　　　　　　　　　　　　　　　Samuel Shapiro
　　　　　　　　　　　　　　　　　　　　　Jessica Clarke
　　　　　　　　　　　　　　　　　　　　　600 Fifth Avenue, 10th Floor
　　　　　　　　　　　　　　　　　　　　　New York, New York 10020
　　　　　　　　　　　　　　　　　　　　　(212) 763-5000

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*