```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                         :
4    STEPHANIE ROSENFELD,                :
                                         :  17-CV-7299 (NGG)
5                    Plaintiff,          :
                                         :  225 Cadman Plaza
6              v.                        :  Brooklyn, New York
                                         :
7    TARA LENICH, et al.,                :
                                         :
8                    Defendants.         :  August 15, 2018
                                         :
9    ------------------------------------X

10       TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
               BEFORE THE HONORABLE PEGGY KUO
11             UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:        SAMUEL SHAPIRO, ESQ.
                               JESSICA CLARKE, ESQ.
14                             Emery, Celli, Brinkerhoff & Abady
                               600 Fifth Avenue
15                             New York, New York 10020

16   For City Defendants:      JOSHUA J. LAX, ESQ.
                               BARRY MYRVOLD, ESQ.
17                             New York City Law Department
                               100 Church Street
18                             New York, New York 10007

19   For Defendant/Lenich:     ERIC CREIZMAN, ESQ.
                               Pierce Bainbridge Beck Price &
20                               Hecht LLP
                               747 Third Avenue
21                             New York, New York 10017

22   Court Transcriber:        SHARI RIEMER, CET-805
                               TypeWrite Word Processing Service
23                             211 N. Milton Road
                               Saratoga Springs, New York 12866

24

25


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
```

2

1   (Proceedings began at 2:45 p.m.)

2          THE CLERK:  The Honorable Magistrate Judge Peggy Kuo

3   presiding.  Civil Cause for Status Conference, Docket No. 17-

4   CV-7299.  Rosenfeld v. Lenich.

5          Counsel, please state your name for the record

6   starting with the plaintiffs.

7          MR. SHAPIRO:  Good afternoon, Your Honor.  Sam

8   Shapiro, Emery, Celli, Brinkerhoff & Abady for plaintiff,

9   Stephanie Rosenfeld.

10         MS. CLARKE:  Good afternoon, Your Honor.  Jessica

11  Clarke with Emery, Celli, Brinkerhoff & Abady also for the

12  plaintiff.

13         MR. LAX:  Good afternoon, Your Honor.  On behalf of

14  the City defendants, City of New York, the Estate of Thompson,

15  Gonzalez, William, Schaefer and Brian Donahue, I'm Joshua J.

16  Lax.  I'm also joined with Barry Myrvold who is a supervisor

17  on this case from my office and the Court graciously -- the

18  court's deputy graciously allowed my intern who's observing

19  today to set up a table as well.  His name is David -- how do

20  you pronounce your last name?

21         MR. KAUFMAN:  Kaufman.

22         MR. LAX:  Kaufman, sorry.  Thank you.

23         MR. CREIZMAN:  Good afternoon, Your Honor.  Eric

24  Creizman of Pierce, Bainbridge, Beck, Price & Heck on behalf

25  of Tara Lenich.

1          THE COURT:  Good afternoon everyone.  So I wanted to

2  have the conference today so we can get things moving along.

3  I know that Mr. Lax's colleague is not available but when she

4  comes back I will not be available.  So I wanted to make sure

5  that everybody had some good direction in the next couple of

6  weeks.

7          So the first thing I'd like to find out, Mr

8  Creizman, is with regard to your client's --

9          MR. CREIZMAN:  Yes.

10          THE COURT:  -- consent to the 160.50.  So that --

11  you have not gotten a notarization; right?

12          MR. CREIZMAN:  I think I received a notarization.  I

13  resent the form in the mail and I asked her to have it

14  notarized because there's probably someone I think in -- I'm

15  sorry, in the prison, Danbury, that could do that but I don't

16  have a notary that will come with me tomorrow.  So I mean I'm

17  happy to prepare a declaration if that would work.  There's no

18  issue of her agreeing to it.  So --

19          THE COURT:  So let me find out from Mr. Lax.  What

20  will it take to make this happen?

21          MR. LAX:  Yes.  So I checked with the client in

22  response to Mr. Creizman's letter last week and it sounds like

23  we would be fine with a declaration as long as there was some

24  sort of endorsement from the Court so ordering the unsealing

25  and then that should complete that issue.

4

1          THE COURT:  Okay.  So why don't you prepare the

2   declaration today and I can so order it.  Tomorrow morning is

3   the last opportunity before I'm not available.  So if you get

4   it done today --

5          MR. CREIZMAN:  I can get the -- I'm sorry, Your

6   Honor.

7          THE COURT:  The declaration.

8          MR. CREIZMAN:  I can get the declaration done today.

9   I can't have her signature today just so that you --

10          THE COURT:  Oh, I thought you had something already

11   in writing.

12          MR. CREIZMAN:  NO, no, no, no.  I apologize.  I was

13   just thinking that as a way around the problem that I'm having

14   with the notarization.

15          THE COURT:  So I can -- I can get it so ordered

16   through chambers as soon as that comes in.

17          MR. CREIZMAN:  Great.  Thank you.

18          THE COURT:  So even that I'm not physically here

19   I'll be able to order it electronically.

20          MR. CREIZMAN:  Here in spirit.

21          THE COURT:  Always here in spirit.  So that's dealt

22   with and that's great.

23          Now let's turn to this issue of the discovery

24   disputes.  So plaintiff is asking for two things.  One is the

25   names of people in the DA's Office and the NYPD who have

5

1  reviewed the contents of the communications, had access to the

2  database, participated in the DOJ investigation, participated

3  in the DA investigation or were told about the contents.  Is

4  that right, Mr. Shapiro?

5          MR. SHAPIRO:  That's right, Your Honor.  I think

6  that an exhaustive list.  It's all set forth in the proposed

7  order we filed.

8          THE COURT:  Yes, that's where I got that.  Then the

9  other thing is that you're asking for a one sided disclosure

10 so that you can review the information and the defendant's --

11 and defendant's counsel cannot.  Right?

12         MR. SHAPIRO:  That's only with respect to the

13 contents of the communications themselves, correct.

14         THE COURT:  Yes, obviously.

15         MR. SHAPIRO:  Yes.  That's correct, Your Honor.

16 Then the only other thing I would add is I think there's

17 agreement on this generally on what I'll call in shorthand the

18 metadata, and I do think there's agreement on that but we're

19 also seeking that as well.

20         THE COURT:  Okay.  So I read the papers to mean that

21 there's no dispute.  So you should just go forward and

22 disclose the metadata; right?

23         MR. SHAPIRO:  Yes.  I think -- my understanding is

24 the only thing was the scope of the protective order was at

25 issue on that.

6

1              THE COURT:  Okay.  So --

2              MR. SHAPIRO:  Because it was full -- what happened

3     was the metadata was included in the larger proposed order

4     submitted by plaintiff that dealt with multiple issues beyond

5     the metadata.  So I think what happened -- my understanding of

6     the history of this is that Ms. Garman had proposed an order

7     previously and I can look through my stack of orders that

8     covered this and then it got folded into some other issue.  So

9     I think that was the only issue.  Do I have that correct?

10             THE COURT:  Well, hold on.  Is there a dispute as to

11    what's going to be covered or it's just a matter of your

12    getting it done?

13             MR. LAX:  I think it's a matter of getting it done

14    but we were told -- I think that's what it is at this point if

15    the order -- those portions of the order that covered this are

16    put into effect.

17             THE COURT:  Is that right, Mr. Shapiro?

18             MR. SHAPIRO:  I believe.  So the order, the proposed

19    order that we submitted which is at Docket 56-2, I believe the

20    paragraphs he's referring to are Paragraphs 15 and 16 which

21    concerns a protection for this metadata and these Paragraphs

22    15 and 16 include edits that we received from Mr. Lax's

23    office.

24             THE COURT:  Okay.

25             MR. SHAPIRO:  So I don't think there should be any

7

1    dispute about these.

2              There is one thing though that I do want to flag for

3    the Court that we would like to propose to just amend in

4    Paragraph 15.

5              THE COURT:  All right.  So I'm looking at Docket

6    Entry 56, Exhibit 2.

7              MR. SHAPIRO:  I think it may have been Exhibit B but

8    it is -- on the docket it's 56-2, correct.

9              THE COURT:  And what are you proposing?

10             MR. SHAPIRO:  So in Paragraph 15 it says the

11   information in Paragraph 1 and 2 of this order is to be

12   produced on an attorney's eyes only basis and then it goes

13   ahead and lists a couple of additional people at KCDA who are

14   permitted to review this.  We'd like to propose that in

15   addition to attorney's eyes only our client be permitted to

16   review this information.

17             MR. LAX:  I don't think we have an objection to

18   that.

19             MR. CREIZMAN:  No objection.

20             THE COURT:  Good.  Thank you.  Is that it?

21             MR. SHAPIRO:  That was it, Your Honor.

22             THE COURT:  Okay.  Great.  I think that's an

23   important addition so go ahead and make that change.  Did you

24   need to have that so ordered by the Court or is it fine that

25   the parties agree?

1          MR. SHAPIRO:  Well, Your Honor, maybe we should

2    discuss the other issues that are in this order and then --

3    because it is one complete order for the Court to sign.  We

4    have an agreement I think on basically what are four out of 16

5    paragraphs.

6          THE COURT:  So go ahead and -- so that's what we're

7    talking about today?

8          MR. SHAPIRO:  Yes.

9          THE COURT:  Continue the order.  So Paragraphs 3

10   through 12, the identity of what are called potential

11   defendants.  So let me just try to understand, Mr. Shapiro.

12   When is -- you've alleged that disclosure of information -- of

13   the illegally intercepted communications has caused your

14   client harm; right?

15         MR. SHAPIRO:  That's correct, Your Honor.

16         THE COURT:  So when was the last disclosure?

17         MR. SHAPIRO:  We do not know the details of when

18   these disclosures occurred.  My client --

19         THE COURT:  No, I don't need to know the details.  I

20   just need to know when it ended.  Is it still happening?

21         MR. SHAPIRO:  I don't know.

22         THE COURT:  But if your client is alleging harm when

23   is the last harm that she received as a result of the

24   disclosure?  In other words, in your complaint you said people

25   were talking about it, people were making her uncomfortable at

9

1   work, she has -- people were looking at her funny or reporters
2   were dogging her on the street, right.  So those are all very
3   specific acts.  Obviously the allegations of what happened at
4   work would have stopped when she stopped working there.
5   Right?  So now she's not working there.  So I'm just trying to
6   figure out when -- so if somebody was disclosing information
7   or you -- you assume that the disclosure would have happened
8   before some of those bad acts.  So anything that happened
9   after wouldn't be attributable to anybody in this case because
10  it's not alleged to have caused any harm to your client.
11          So I'm just trying to figure out -- I'm trying to
12  put a parameter around the date if that's possible.  You say
13  you don't know the details, obviously you don't know the
14  details but you do know from your client's perspective what
15  has happened to her.
16          MR. SHAPIRO:  Right.
17          THE COURT:  So can you tell us when the last harm is
18  that -- active harm is that happened to her and/or the last
19  act that caused her harm.
20          MR. SHAPIRO:  So the harm is continuing to this day.
21          THE COURT:  Well, I know because she can't find a
22  job, right, and there's stuff on the internet but those are
23  not new things.  So if somebody put something on the internet
24  last year and it's causing her harm now you can't say that
25  between the time that was put on the internet until now

10

1   somebody is responsible for it.  Right?

2           MR. SHAPIRO:  I agree with that, Your Honor.

3           THE COURT:  So I'm just trying to figure out -- I'm

4   trying to put parameters around the people you're trying to

5   identify.  So, in other words, if I were to read these

6   communications now I'm not sure that you could then say well,

7   I'm a potential defendant because I may have done something

8   because by virtue of my exposure to that communication.  Do

9   you see what I'm saying?  I don't mean I as a judge but as an

10  individual.

11          So I'm just trying to figure out at what point -- is

12  there an end point to what you're alleging here.  And so the

13  way that I'm trying to figure it out is when the last -- not

14  the continuing harm where she can't find a job but the last

15  act is that caused a problem for your client.

16          MR. SHAPIRO:  I guess it's a little difficult for me

17  to answer that question, Your Honor, and that's because I

18  think to the extent within the office, the KCDA office, those

19  could continue to inflict harm on my client in ways that I

20  can't necessarily articulate right now.

21          THE COURT:  Yes, but then it becomes completely

22  speculative.  That's the problem, right, because if something

23  is sitting in a vault and I -- that's why I was so tough on

24  the City last time to find out like what has happened, where

25  everything is, and so -- I guess I'm concerned that in your

1  list of prospective defendants you're going to be looking for

2  names of every person who touched it up until yesterday, the

3  guy who updated the database system or something like that.

4  That's just not clear to me that that's where the harm is that

5  your client is alleging.

6         Just because somebody had access to the

7  communication doesn't mean they were in a position to cause

8  her harm and the harms that you've talked about are very

9  specific.  I get that.  You'll have a chance to prove those.

10 But to say that anybody -- that the universe is wide open in

11 terms of who could have caused harm when you can't articulate

12 that harm just seems really speculative.  So I'm trying to put

13 some parameters around this.

14        MR. SHAPIRO:  To clarify our position, a disclosure

15 of Ms. Rosenfeld's unlawfully intercepted communications we

16 believe violates the Wiretap Act.  Statutory damages are

17 available under the Wiretap Act for a violation.  So we

18 believe that any disclosures that have happened occurred even

19 if they've occurred recently and we understand from the

20 representations that they're all at fault so that shouldn't be

21 happening but to the extent there have been disclosures that

22 have occurred recently we think we're entitled to that.

23        THE COURT:  So you've been invoking the Wiretap Act.

24 Tell me what it says.

25        MR. SHAPIRO:  So, Your Honor, it's 18 U.S.C. 2520

12

1  provides for a private right of action under the Wiretap Act.

2                    [Pause in proceedings.]

3            THE COURT:  Okay.  So you're saying here it has to

4  be intercepted, which is not what we're talking about,

5  disclosed.  So you say that anybody who touched it including

6  investigators will have disclosed it just by virtue of -- I

7  mean what disclosure?  Are you alleging disclosure?

8            MR. SHAPIRO:  We are alleging that there was

9  disclosure, yes, Your Honor.

10            THE COURT:  And then intentional -- or intentionally

11  used.  So there are three things.  Intercepted, which is not

12  at issue, disclosed or intentionally used.  So then the

13  question there because I'm reading your papers and it's

14  causing me concern that you're saying intentionally used would

15  include intentionally looking at them for purposes of

16  investigating the crime that was committed against your

17  client.

18            MR. SHAPIRO:  Well, what we're focused on right now

19  is the disclosure.  I mean --

20            THE COURT:  Disclosure.

21            MR. SHAPIRO:  How they were used I don't want to say

22  that that's not part of our claim because it is, but what

23  we're looking for here in this order is to whom the

24  communications were disclosed even if it was within the office

25  because we believe and there's cases to support it which I can

1   give to Your Honor that disclosure even within a law

2   enforcement agency of communications that the agency knows

3   were unlawfully intercepted by [inaudible].

4           THE COURT:  For purposes of law enforcement.

5           MR. SHAPIRO:  Yes, even for purposes of law

6   enforcement, correct.

7           THE COURT:  But not for purposes of safeguarding for

8   the purpose -- for keeping this in the vault; right?

9           MR. SHAPIRO:  But it doesn't -- from everything

10  we've heard from the City it's not clear to me why to put

11  communications in a vault or to put them in a secured database

12  anyone would need to look at those communications.

13          THE COURT:  Right.  But just looking at it is not a

14  violation.

15          MR. SHAPIRO:  No, but if it -- I agree with that,

16  Your Honor, but if --

17          THE COURT:  It's not disclosing.

18          MR. SHAPIRO:  But if someone has disclosed it to

19  someone else, even -- be that an IT person for some purpose

20  that may be a violation.

21          THE COURT:  Like securing it.

22          MR. SHAPIRO:  That may be a violation depending on

23  the circumstance of the disclosure and we don't know and

24  that's what we're trying to figure out, who has looked at this

25  and that's -- it's discovery to figure out exactly who might

14

1  be a potential defendant.

2      THE COURT:  I know it's discovery but it just seems

3  that your theory sort of encompasses the world and I'm just

4  concerned about -- because if the statute that you're invoking

5  talks about disclosing there has to be a disclosure.  So

6  reading it is not -- is not a violation.

7      MR. SHAPIRO:  We certainly hope it doesn't encompass

8  the world, Your Honor.  They claim that they can't even look

9  at it now or do anything.  So we hope there aren't many people

10  on this list.  We really sincerely hope that.  There shouldn't

11  be.

12      THE COURT:  Okay.

13      MR. SHAPIRO:  But that's --

14      THE COURT:  I'm just trying to find where that is

15  because you're saying anyone who had access to the database

16  and so I just don't know -- and also participated in the DOJ

17  investigation or the DA investigation or were told about the

18  contents.  So --

19      MR. SHAPIRO:  So the concern there -- I mean we're

20  not suggesting that anyone who is answered -- who is

21  identified in response to this order is necessarily a

22  defendant.  We're not suggesting that.  They may be a

23  defendant depending on the circumstances of how the

24  communications were disclosed to them and we're trying to get

25  the broadest universe possible of potential defendants to

1   narrow it down to who the actual defendant should be.  That

2   was our goal in fashioning this order.  And if Your Honor

3   thinks we've cast the net a little too broad we'd be happy to

4   consider narrowing it.  I think though the concern about

5   particularly with the DOJ as Your Honor mentioned is to the

6   extent there were conversations, communications with the DOJ

7   prior to a subpoena being issued that's something we'd want to

8   know about, were the contents of the communications were

9   disclosed in a conversation.  We believe that would violate

10  the Wiretap Act.

11          THE COURT:  Really?

12          MR. SHAPIRO:  Yes, Your Honor.

13          THE COURT:  If they're investigating not to bring a

14  law enforcement action against your client but to find out

15  about the crime that was committed against her it's a

16  violation to review it?  How would anybody ever get to -- how

17  would anybody vindicate your client's rights if they can't

18  review this?

19          MR. SHAPIRO:  I don't know why -- what the contents

20  of my client's communications have to do with the case against

21  her and Lenich.  They didn't need to -- as far as I know they

22  weren't used against her.  I know she pled but the contents of

23  the communications themselves don't -- weren't necessary in

24  prosecuting Ms. Lenich.

25          THE COURT:  The Wiretap Act seems to protect against

1   the person being prosecuted with illegally obtained material,

2   not in a -- in the flip side where she's the victim and people

3   are trying to figure out what happened to her so that they can

4   prosecute the person who did her wrong.

5           And also when we get to the one sided disclosure in

6   a case where she herself is putting the whole issue -- all of

7   this at issue in the context of a civil lawsuit to say that

8   it's one sided again just -- and that the other side can't

9   look at it is kind of treating the communication as if it were

10  plutonium doesn't make sense to me.  So that's why I'm

11  grappling with this because --

12          MR. SHAPIRO:  I guess --

13          THE COURT:  -- I just don't see how we can have a

14  system of actual due process and justice when it's so one

15  sided and you just can't touch or look at a certain thing.  So

16  I'm just asking you these questions because I'm not

17  understanding --

18          MR. SHAPIRO:  Understood, Your Honor.  In our --

19          THE COURT:  -- how you're characterizing it.

20          MR. SHAPIRO:  The purpose of the Wiretap Act is

21  unquestionably to protect the confidentiality of

22  communications.  In our view as we wrote in our letter it

23  would frustrate that purpose if any time someone filed a civil

24  action in order to vindicate their rights under the Wiretap

25  Act.  They lost the confidentiality and the communications

1  that the Wiretap Act was supposed to protect in the first

2  place.

3          THE COURT:  Well, so let me just put this back to

4  you because analogized a privilege, right.  So you've got

5  attorney-client privilege that's absolute and you said if you

6  inadvertently disclosed you get to claw it back; right?

7          MR. SHAPIRO:  Correct.

8          THE COURT:  If you have a dispute with your client

9  or your client has a dispute with you all bets are off and all

10 of those wonderfully protected documents are up for grabs.

11 The privilege disappears because you've made it the subject of

12 the lawsuit.  So there -- once you make it the subject of a

13 lawsuit a lot of things which otherwise are held sacrosanct

14 disappear.  So I'm jumping ahead of myself because we're not

15 there yet.

16          Let me hear from the other side as to how they think

17 this should be circumscribed.  Mr. Lax.

18          MR. LAX:  Let me just say at the outset, Your Honor,

19 the view taken by plaintiff of the law and sort of the

20 prosecutorial usage of the wrongdoer under the Wiretap Act is

21 actually contained in one of the cases that they cite

22 frequently.  It's a Ninth Circuit case called Chandler.  I

23 forget the defendant.  But it involves an Army captain whose

24 wife recorded him and he brought suit because he was punished

25 by the Army.

1          There's a case discussed by the Ninth Circuit called

2    United States v. Chris.  It's an old case.  It's from 1957 but

3    it's from here in the Southern District.  It was affirmed on

4    appeal and that is actually cited in the legislative history

5    and it's discussed in a footnote in Chandler that the Wiretap

6    Act was not created with the idea that the person who violates

7    the privacy by violating the Wiretap Act that the material,

8    the fruits of the crime cannot be used to prosecute them.

9          The Second Circuit in a more recent case is actually

10   cited in our papers actually says that the Wiretap Act is not

11   construed to forbid all that it does not permit and that is

12   also -- that's in line with this idea that something that is

13   the fruits of a crime can be utilized by the folks who are

14   charged in our society with actually bringing the person who

15   does the violation and victimizes the plaintiff as was done in

16   this case to justice.

17         So for a lot of reasons the idea that just mere

18   touching or contact with this mere exposure to it, usage in

19   preparing the criminal court complaint, all of that is somehow

20   itself a violation.  That is our position just on the law.

21         But getting more specific to the issue with the

22   order itself and how it's drafted.  One of our main concerns

23   with this is that it is -- whereas if we were proceeding by

24   interrogatory they would propound an interrogatory on us we

25   would conduct the search for responsive information or raise

19

1   proper objections.  And then if there were some dispute we

2   would then discuss about what we had learned and what we had

3   done all in the context of what plaintiff say they needed and

4   what the court would ultimately allow.

5           This circumvents that point and it does it in aa

6   couple of different ways.  One is it takes the 30 day to

7   produce discovery down to 15 sort of arbitrarily with no

8   reason other than perhaps just to put a burden on defendants.

9   We do have the active issue that we resolved how we're going

10  to go about it but we're still waiting for the actual

11  unsealing of the files that perhaps would yield some of this

12  information.

13          It is over broad as the Court noted because in

14  Paragraph 4 it's asking for any system administrator who would

15  access the software, not even just the plant that's within the

16  software.  It is the software period between June 2015 and the

17  present which I guess would be whatever date this order.  So

18  that's over three years of people just accessing the software

19  with no reference to any specificity within that.

20          Paragraph 6 calls for the City to identify who

21  accessed the plant on Jarred Lanew's [Ph.] phone even though

22  Jarred Lanew while he may be a victim in all of this is not

23  actually a party here and therefore he is not seeking, so far

24  as I know, any [inaudible] possible defendants.

25          So it's those sorts of issues that we would hammer

1    out between each other perhaps if the Court didn't have an

2    order and just proceeded within the confines of the way a

3    party requests information or documents from another party.

4            I do know the Court directed Ms. Garman to look into

5    this issue and I know that she had looked into how we would go

6    about doing it.  Our concern is really of how this is drafted

7    and in particular there's sort of -- and you get it I think

8    from plaintiff's counsel this idea that there's somehow

9    they're sort of assuming that there must have been some

10   conversation at some point by someone somewhere that disclosed

11   something that had an adverse effect and it's not in the

12   complaint that that happened and that's part of the discussion

13   of the briefing about the motion to dismiss right now.

14           But there's sort of this sort of imagined scenario

15   that doesn't really have a basis and a way to be pinned down

16   easily and if we have an order put on us if they're

17   dissatisfied from what comes back they can just come running

18   to the Court and it then creates more work for the Court, for

19   the parties, we're here on conferences.  It just would be

20   better for them to have propounded on us -- or [inaudible] I

21   should say propound on us an interrogatory that has this

22   information so we amongst the parties could have narrowed it

23   down and we're not dealing with a constant rolling Rule 37

24   motion to try and get sanctions or something against the

25   defense counsel or the City because there's not compliance

1   with the order but the order is not based on any like

2   intelligible -- or parts of the order are not based on any

3   intelligible fact that came out through the proper course of

4   discovery.

5           So for those reasons we think -- the Court should

6   not order those paragraphs.  Obviously we have more to say if

7   there's -- if the Court has more specific questions than that.

8           THE COURT:  So I do have a question as to why this

9   is in this context.  If there are disputes as to what's being

10  produced why not just have considered these proposed

11  paragraphs as interrogatories and then you can have a

12  discussion back and forth about what should be covered, what

13  shouldn't be covered and then you can -- to the extent you

14  still disagree you can bring that to the Court with specifics

15  on those points because at the moment everything is sort of

16  mushed together and done in this really fast way where the

17  Court doesn't even have time to really delve into each

18  specific issue.

19          MR. SHAPIRO:  Well, the reason we didn't do it as

20  interrogatories, Your Honor, is because they would have

21  objected as Mr. Lax even insinuated.

22          THE COURT:  Well, it's their right to object.

23          MR. SHAPIRO:  They would have objected --

24          THE COURT:  I mean I'm not going to sign an order

25  that --

1          MR. SHAPIRO:  They would have objected --

2          THE COURT:  I'm not going to sign an order that --

3          MR. SHAPIRO:  Understood.  They would have objected

4    to us even propounding interrogatories.  Their view is

5    discovery is very limited right now and there's no --

6          THE COURT:  Well, then -- yes, but that could be

7    part of the limited discovery.  So if you had asked I might

8    have said sure, go ahead and ask those questions because they

9    do seem like some of the questions you're asking should be

10   answered.

11         MR. SHAPIRO:  We would be happy to propound

12   interrogatories if we had leave from Your Honor to do so.

13         THE COURT:  Yes, I'll grant you leave to do that.

14   Why don't you do that.

15         MR. SHAPIRO:  We will do that.

16         THE COURT:  Because that way both sides will have a

17   chance to look in greater detail at each of these requests and

18   then figure out what you can disclose and what you can't

19   disclose and what the bases are and that way I'll have a

20   better understanding because right now it's all kind of mushed

21   together and I think each one is slightly different.  And I'm

22   hearing that the City would give you some of this information

23   but they have problems with some other parts of it.

24         MR. SHAPIRO:  Okay.  My only concern, Your Honor,

25   and I just want to say it for the record is we will do this as

23

1   soon as we can.  They will respond in 30 days.  We are --

2   THE COURT:  You can expedite it, right?  So why

3   don't we -- if you want to consider these interrogatories.

4   Can we do that and just consider them served now?

5   MR. SHAPIRO:  Yes, we'd be happy to do that, yes.

6   THE COURT:  And then you'll have time to respond to

7   them.  So we can consider them served today.

8   [Pause in proceedings.]

9   MR. LAX:  Yes, that's fine.

10   THE COURT:  So because it says the City shall

11   identify.  So then the interrogatories says please identify.

12   MR. LAX:  Yes.  So then that would mean that we'll

13   be responding within 30 days of today what's in Paragraphs 3

14   to 13.

15   MR. SHAPIRO:  I think it's 3 through 12.

16   THE COURT:  3 through 12.  So 3 to 12, their

17   interrogatories.  Let me just take a look at the calendar.

18   [Pause in proceedings.]

19   THE COURT:  So it would be September 15th --

20   September 14th.

21   MR. SHAPIRO:  Can I just also respond to one -- a

22   comment that Mr. Lax made about Paragraph 4 just to try to

23   clarify --

24   THE COURT:  Okay.

25   MR. SHAPIRO:  -- what we're seeking.  The defendants

1  wrote in their letter of July 6, 2018 that there are five

2  KCDAO system administrators who have the ability to access the

3  ADACS system.  What we are simply seeking in Paragraph 4 is to

4  know whether it's been those same five people throughout the

5  relevant period of time or whether there have been additional

6  people on this list who had what I understand to be basically

7  unfettered access to the system.

8         It may be that it's just those five people and has

9  been since 2015 in which case we don't -- that's -- we don't

10 need to know more but if there are other people beyond those

11 five on that list since 2015 that's the names we're seeking.

12        THE COURT:  So I guess, Mr. Lax, you should look in

13 responding to prior disclosures that you've made just to make

14 sure they match up.

15        MR. LAX:  That's not a problem, Your Honor.  The

16 only thing I just would note, it may ultimately be handled so

17 fast it doesn't matter but we may reach a wall so to speak on

18 some of these with regard to the 160.50 issue.  So my -- I

19 want to just flag that but my initial inclination is that if

20 that is a problem I'll speak to plaintiff's counsel and Ms.

21 Lenich's counsel and figure out what to do in that event.

22        THE COURT:  Yes.  And so just to be clear, your

23 deadline to respond to the interrogatories is September 14th

24 because that's 30 days from today.

25        MR. LAX:  Yes.

1          THE COURT:  And if you can respond more quickly

2    because you already have the information I would say feel free

3    to respond partially more quickly than 30 days so that if

4    there's going to be back and forth about it you have some time

5    to do that.  But if you've got the information already go

6    ahead and disclose it or you know that you're going to have a

7    problem with the concept of answering it bring that to Mr.

8    Shapiro's attention and if you need 30 days to finish up the

9    rest of it of course take that time.

10          MR. LAX:  Thank you, Your Honor.

11          THE COURT:  I think if you can get it done faster --

12    the faster you can do it I think the more time everybody has

13    to think through the issue and do their legal briefings, et

14    cetera because I think today is your deadline on the motion to

15    dismiss.  Right?

16          MR. LAX:  Yes.  We'll be docketing everything today.

17          THE COURT:  Okay.  Good.  So that means you'll have

18    free time to do -- to focus on discovery going forward.

19          So I'd like you to do that and that will give me

20    some -- and opportunity to look in greater detail at what --

21    where your disagreements may still lie.

22          I hesitate, Mr. Shapiro, to say that you should

23    bring things to my attention as soon as you find them.  I

24    think from your perspective you'll have time to look at what

25    Mr. Lax is bringing up but if you can please just wait until

26

1  everything has been given to you before filing something with

2  the Court so that we'll schedule a day when we can talk about

3  everything.  Okay?

4          MR. SHAPIRO:  Thank you, Your Honor.

5          THE COURT:  So then, Mr. Lax, in the letter you

6  talked about Paragraphs 1 and --

7          MR. LAX:  We agreed to -- that's what we started

8  with I think, Your Honor.

9          THE COURT:  Okay.  So that's done.  Great.

10         So then the other thing is with regard to this

11  concept of the one sided view.  I have to say my general

12  observation is that both sides need to be able to review

13  everything and we can look at -- eventually -- I mean maybe

14  early on it might not be necessary but the idea that there

15  should be a disclosure for the plaintiff to look at first

16  before the other side looks at it strikes me as being not the

17  way things should be done.

18         MR. SHAPIRO:  I would just say, Your Honor, I

19  understand Your Honor's view.  With respect to the analogy you

20  raised earlier, the attorney-client privilege, I think a

21  distinction in that scenario is that communications can be

22  discoverable by all sides when they're necessary and relevant

23  to the dispute.  That's not the case here.  The content of

24  these -- this case is not about the content of these

25  communications.  It's not about what Stephanie Rosenfeld said

1  to her mother in 2015 on the phone.  It's about how her --

2          THE COURT:  Well, then --

3          MR. SHAPIRO:  -- communications got intercepted and

4  what happened with those interceptions.

5          THE COURT:  So then -- okay.  If that's the case

6  then no one should be looking at the contents of the

7  communication.  If it's not at issue then we're fine.  But I'm

8  just saying that one -- having one side look and not the other

9  strikes me as unfair.  So if you think the contents are not

10  relevant I think everybody should be happy to move forward

11  without reading the content.

12          MR. SHAPIRO:  As the --

13          THE COURT:  And then eventually you're saying that

14  it's her stuff and she's entitled to it then you can figure

15  out when she gets it but I don't think it's fair in a

16  litigation for one side to get the documents and the other

17  side to be precluded from reading it.  That's all I'm saying.

18          So if you don't want the communications and it's not

19  going to be an issue, great.  Let's move forward on that

20  basis.

21          MR. SHAPIRO:  Our position, Your Honor, is that as

22  the victim of this wiretap operation she's entitled to know

23  what was intercepted and --

24          THE COURT:  Well, I don't know that that's the case

25  in the context of this -- in the context of this litigation,

1  right, it may be that she's entitled to get it but if she gets

2  it the other side gets to read it too because if your client

3  gets to use that content in the litigation against the

4  defendants they're entitled to defend against them.  So that's

5  the part that I have a problem with.

6          MR. SHAPIRO:  I agree with that, Your Honor, and to

7  the extent that we intended to use any communications we would

8  obviously disclose those to the other side.  I don't know what

9  was said.  I don't know the content of these communications.

10 So to the extent they would be relevant at all the only thing

11 I think they would be relevant to is damages.  I think the

12 vast majority of them are going to not be relevant at all.

13 Whether there's --

14         THE COURT:  So then let's not talk about it and

15 disclose the contents until we get to the damages phase.

16         MR. SHAPIRO:  Well, my concern, Your Honor, is that

17 this -- the fact that these communications are still out there

18 that she does not know the --

19         THE COURT:  They're not still out there.  They're

20 being -- they're secured in a vault which is why I took great

21 pains to figure out how they're being secured.  Now, if you

22 have a problem with how they're being secured we can talk

23 about that but I think this is actually a good development if

24 you're saying that we don't need to go to the contents in the

25 liability phase.  We can move forward in a much more

1  expeditious way and then if we get to a damages phase

2  everybody can open up what's in the vault and see what's in

3  the communications.

4         MR. SHAPIRO:  I certainly don't have the authority

5  to say we're not seeking them because I know they're very

6  important.

7         THE COURT:  Okay.  I know you're seeking them.  I

8  know you're seeking them but all I'm saying is in the interest

9  of fairness, which is what I as a judicial officer am supposed

10  to look at, I don't -- it doesn't strike me as fair to have

11  one side have access to communications and the other side be

12  precluded from getting it.  In fact, the whole point of

13  discovery is that both sides share information.  So to have --

14  to order discovery that is so clearly one sided seems wrong to

15  me.  So that is my guiding principle unless there's some

16  really good reason to deviate from that.

17         But if what you're saying is the content is not

18  important ultimately except for damages then I think we should

19  move forward with the case where nobody is looking at the

20  content until damages becomes at issue.

21         MR. SHAPIRO:  I understand Your Honor's view.  We

22  will get to that but I understand Your Honor's view.

23         THE COURT:  Yes --

24         MR. SHAPIRO:  And I would just say for the record

25  that I want to be clear that the communications are very

1  important to my client as a person.

2         THE COURT:  I understand that.

3         MR. SHAPIRO:  As an individual who was --

4         THE COURT:  But that's not what this lawsuit is

5  about.

6         MR. SHAPIRO:  -- victimized by that.  I understand

7  but she is a victim here and these are communications that

8  they have.

9         THE COURT:  But she's also the plaintiff.

10        MR. SHAPIRO:  I understand.

11        THE COURT:  If she's the victim she's a victim and

12 in a criminal prosecution victims have certain rights.  She's

13 a plaintiff here.  She has certain rights as well but the

14 defendants also have rights.  So I have to weigh in the

15 context of this case where there's a plaintiff and defendants

16 what everyone's interests are.

17        So if she wants the communications just because she

18 wants the communications maybe that's a different action or

19 however once she has them the defendant might be entitled to

20 get them as part of their discovery.  Do you see what I'm

21 saying?

22        So our system of justice is set up so that there's

23 no ambushing at the trial which is why we have discovery.  So

24 one side gets it, the other side gets it.  I didn't make the

25 rules.  So that's -- as far as the discussion about the one

1  sided disclosure that's where I am.  So I think you have to

2  think hard about what you want.  Right now nobody has it.

3  Once you get it the other side is going to get it.  If you

4  don't want it the other side doesn't get it either at this

5  point.

6          MR. SHAPIRO:  Thank you.

7          THE COURT:  Mr. Lax, did you want add anything?

8          MR. LAX:  No, Your Honor.  What struck me as odd is

9  myself, Ms. Garman, Mr. Myrvold, members of the KCDA, like we

10 don't need to weed into any of this personal business of Ms.

11 Rosenfeld.

12         THE COURT:  That's why --

13         MR. LAX:  So if they don't need it then we don't

14 need to listen to it.

15         THE COURT:  Yes, this is what I'm saying.  That's

16 why I said it's a good development.  If we don't have to get

17 into the content I think the case can get to trial a lot

18 faster or get to summary judgment or whatever else you need to

19 talk about to move the case forward because if there are

20 indeed thousands of communications people are going to get

21 mired in looking at it but it may take you in directions that

22 you don't have to if it's really just the fact that they exist

23 and the fact that they were obtained illegally.

24         MR. SHAPIRO:  Your Honor, should we submit a revised

25 proposed order?

1            THE COURT:  Yes.  So why don't you take those -- if

2    there are things that you can agree on even within those

3    paragraphs go ahead and put them in but if you can't agree on

4    those and they're all being turned into interrogatories then

5    take those out.  Submit something that is what everybody can

6    agree on.  I will so order it and then we're good.

7            MR. SHAPIRO:  Is it okay if we do that by Friday,

8    Your Honor, or would you prefer sooner?

9            THE COURT:  Well, if you can get it those sooner --

10   the sooner you can do it the better but I won't preclude the

11   possibility of my interrupting my vacation to pay attention to

12   this.

13           MR. SHAPIRO:  We will try to avoid that, Your Honor.

14           THE COURT:  Thank you.  Anything else?

15           MR. SHAPIRO:  That's it from us, Your Honor.

16           THE COURT:  Mr. Lax?

17           MR. LAX:  Nothing from the City defendants.  Thank

18   you.

19           THE COURT:  Mr. Creizman?

20           MR. CREIZMAN:  No, Your Honor.  Thank you.

21           THE COURT:  Thank you very much.  Thanks for being

22   able to make this on short notice.

23           MR. SHAPIRO:  Thank you.

24   (Proceedings concluded at 3:25 p.m.)

25                            *  *  *  *  *

33

1        I certify that the foregoing is a court transcript from

2    an electronic sound recording of the proceedings in the above-

3    entitled matter.

4

5    _____

6                    Shari Riemer, CET-805

7    Dated:   August 29, 2018