UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEPHANIE ROSENFELD,

                    Plaintiff,

                -against-

TARA LENICH; CITY OF NEW YORK;
LU-SHAWN M. THOMPSON, AS
ADMINISTRATOR OF ESTATE OF
KENNETH P. THOMPSON; ERIC
GONZALEZ; WILLIAM SCHAEFER; BRIAN
DONAHUE; and JOHN/JANE DOES 1-10,

                    Defendant.
------------------------------------------------------------------X

MEMORANDUM & ORDER

17-CV-7299 (NGG) (PK)

NICHOLAS G. GARAUFIS, United States District Judge.

On August 16, 2018, Magistrate Judge Peggy Kuo denied Plaintiff's request to grant the Plaintiff but deny the Defendants access to the contents of the intercepted communications that are the subject of this action (the "August 16 Order"). (Aug. 16, 2018 Min. Entry.) Before the court are Plaintiff's Objections to Judge Kuo's August 16 Order.[1] (Objections to the August 16 Order ("Obj.") (Dkt. 75).) For the reasons below, the court affirms the August 16 Order.

I.     BACKGROUND

On April 3, 2017, Defendant Tara Lenich, a former Assistant District Attorney with the Kings County District Attorney's Office ("KCDA"), pleaded guilty to two counts of illegal interception of communications occurring over two cellphones—one belonging to Plaintiff and the other to NYPD Detective Jarrett Lemieux—in violation of 18 U.S.C. §§ 2511(1)(a), 2511(4)(a), and 3551, et seq. (Am. Compl. ("FAC") (Dkt. 11) ¶ 84.) On December 14, 2017,

---

[1] Judge Kuo also denied Plaintiff's motion for reconsideration of the August 16 Order. (See Mot. for Reconsideration (Dkt. 77); Sept. 7, 2018 Order).

1

Plaintiff brought an action under the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. §§ 2510 et seq and 2701 et seq., 42 U.S.C. § 1983, and certain state tort laws against Lenich and the City of New York, Lu-Shawn M. Thompson (as administrator of the estate of Kenneth P. Thompson), Eric Gonzalez, William Schaefer, Brian Donohue, and John/Jane Does 1-10 ("City Defendants"). (See Compl. (Dkt. 1); FAC ¶¶ 98-133.) Plaintiff alleges that between approximately June 2015 and December 2016, Lenich used KCDA resources to unlawfully intercept, record, and review electronic communicatios sent to and from Plaintiff's and Detective Lemieux's private cell phone through fraudulent wiretap orders and search warrants that she created. (FAC ¶ 41-58.) Plaintiff seeks monetary relief. (Id. at 23.)

On April 27, 2018, City Defendants requested a pre-motion conference for the purpose of seeking leave to file a motion to dismiss. (See Letter Requesting Pre-Motion Conference (Dkt. 36).) The court granted this request, and on May 24, 2018, the parties appeared before the court for a pre-motion conference. (May 25, 2018 Min. Entry.) During the conference, Plaintiff indicated her intention to seek production of the intercepted communications, in part to determine the identities of other individuals with whom Plaintiff communicated, who might have their own claims for violations of the Wiretap Act. (See Tr. of Pre-Motion Conference (Dkt. 76-2) at 7, 9-11.) The court ordered the parties to contact Judge Kuo to discuss the proper scope of initial discovery. (May 25, 2018 Min. Entry.)

On June 7, 2018, the parties appeared before Judge Kuo for an initial conference. (June 8, 2018 Min. Entry.) Plaintiff explained that she was seeking discovery into the identities of all individuals who had reviewed and who still had access to her wiretapped communications. (Tr. of June 7, 2018 Initial Conference ("Initial Conference Tr.") (Dkt. 49) at 15:13.) Plaintiff also sought an order disclosing, for attorneys' eyes only, "the contents of the communications

2

themselves." (Id. at 15:14-16:23.) Judge Kuo expressed concerns that turning over these communications would "create a claim for the counter parties to those telephone conversations" and sought to understand how the communication were currently being stored. (Id. at 16:3-7, 16:24-17:1.) City Defendants explained that the communications were "under seal, not to be accessed by anyone" absent a court order. (Id. at 21:7, 21-22.) Judge Kuo then ordered City Defendants to file a Motion for Protective Order "detailing the scope of the wiretapped communications in their possession and [] under seal, identifying anyone who has or had access to these communications, the burdensomeness of production of the communications or information related to them (e.g., phone numbers, volume, names, etc.), and any legal arguments for non-production or delayed production of the communications or information related to them." (June 8, 2018 Min. Entry.)

To facilitate compliance with this order, City Defendants next sought an order authorizing the KCDA and counsel for City Defendants to access "all files, recordings, and documents related to the interception of communications" at issue in the case. (Proposed Order (Dkt. 42-1).) In response, Plaintiff argued that "only the attorneys who have appeared in this case [should have] access to Plaintiff's unlawfully intercepted communications" and requested that the court order anyone receiving or viewing her communications to keep them confidential. (Letter in Opp'n to City Defendants' Proposed Order (Dkt. 43) at 2.) On June 14, 2018, Judge Kuo directed City Defendants to file a revised proposed order, "listing the names of the individuals who will have access to the communications at issue" (the "Authorized Individuals"). (June 14, 2018 Order.) City Defendants did so. (Letter with Revised Proposed Order (Dkt. 45).) Plaintiff then requested that the proposed order specify that the Authorized Individuals could not view the <u>contents</u> of any communications intercepted from Plaintiff's cell phone. (Letter in

3

Response to Revised Proposed Order (Dkt. 46) at 1-2.) Plaintiff reasoned that City Defendants could determine the number of communications, whom they were between, and how they were being stored—and thus comply with Judge Kuo's June 7 order—without viewing their contents. (Id. at 2.) Counsel for all parties then requested a status conference to address the proposed order. (Joint Letter re: Status Conference (Dkt. 47).)

A status conference was scheduled for June 26, 2018. (June 21, 2018 Order.) In advance of the conference, Plaintiff submitted a letter "clarify[ing]" that she "object[ed] to any review of the contents of her intercepted communications without either her individualized consent or a Court finding that such review is necessary to comply with the Court's June 7, 2018 Order." (Letter in Advance of June 26, 2018 Status Conference (Dkt. 48) at 1.) Plaintiff also "renew[ed] her request" to have "the full contents of her intercepted communications" turned over to her, noting that "[o]f course, any contents on which she seeks to rely specifically to assert a claim for damages will be disclosed to Defendants when and if [Plaintiff] seeks damages based on the contents of specific communications." (Id. at 1-2.)

During the status conference on June 26, 2018, Judge Kuo informed the parties that discovery would proceed "in stages," beginning with the "metadata issue." (Tr. of June 26, 2018 Status Conference (Dkt. 54) at 23:17-24:5.) To that end, she directed City Defendants to determine how and where the communications were being stored, who has access to them, and what would be needed to retrieve information about those communications without reading the contents, if possible. (June 27, 2018 Min. Entry.) Judge Kuo denied Plaintiff's "request for an order to turn over all wiretapped communications to Plaintiff only . . . at this time." (Id.)

On July 6, 2018, City Defendants filed a letter providing the court with information regarding the KCDA's maintenance of the intercepted communications. (Letter re: the Court's

June 27, 2018 Order (Dkt. 52).) In light of this letter, Judge Kuo ordered the parties to confer and jointly propose a plan for disclosure of the wiretapped communications. (July 10, 2018 Order.) On August 9, 2018, the parties submitted a proposed order regarding the disclosure of wiretapped communications along with a letter outlining the remaining disputes between the parties. (Letter re: Joint Status Letter re: Disclosure of Communications (Dkt. 56) at 1.) One such remaining dispute was whether Plaintiff should be granted one-sided access to the contents of her communications. (Id. at 3.)

The parties appeared before Judge Kuo on August 15, 2018 for a status conference. (See Aug. 16, 2018 Min. Entry.) Judge Kuo explained that she had taken "great pains" to determine that the wiretap communications were "not still out there," but were instead sealed and being held in a secure manner. (Tr. of August 15, 2018 Status Conference ("Aug. 15 Tr.") (Dkt. 74) at 28:19-25.) Plaintiff's counsel represented to Judge Kuo that the contents of the communications were not necessarily relevant to the instant litigation:

> With respect to the analogy you raised earlier, the attorney-client privilege, I think a distinction in that scenario is that communications can be discoverable by all sides when they're necessary and relevant to the dispute. That's not the case here. The content of these—this case is not about the content of these communications. It's not about what Stephanie Rosenfeld said to her mother in 2015 on the phone. It's about how her [] communications got intercepted and what happened with those interceptions.

(Aug. 15 Tr. at 26:19-27:4.) He added: "to the extent that they would be relevant at all the only thing I think they would be relevant to is damages." (Id. at 28:10-11.) Judge Kuo concluded that "if what you're saying is the content is not important ultimately except for damages then I think we should move forward with the case where nobody is looking at the content until damages becomes at issue." (Id. at 29:17-20.) Judge Kuo accordingly denied Plaintiff's request to grant her exclusive access to the contents of the intercepted communications:

5

> Plaintiff stated that the contents of the communications may only be relevant to damages. The Court encouraged Plaintiff to determine whether that is, in fact, her position. If so, then it may be possible to litigate liability without accessing the contents of the communications until an assessment of damages is necessary. The Court reiterates that the contents of the communications may not be reviewed by any of the parties at this time.

(Aug. 16, 2018 Min. Entry.) Plaintiff now asks this court to set aside Judge Kuo's order and enter a new order directing "City Defendants to return Plaintiff's communications to her, without review by any Defendant or their counsel." (Obj. at 3.)

## II. LEGAL STANDARD

"A discovery ruling by a magistrate judge is a non-dispositive matter, and as such the Court will only set aside an order 'that is clearly erroneous or is contrary to law.'" Shipkevich v. Staten Island Univ. Hosp., No. 08-CV-1008 (FB), 2012 WL 4442621, at *1 (E.D.N.Y. Sept. 25, 2012) (quoting 28 U.S.C. § 636(b)(1)(A), and Fed. R. Civ. P. 72(a)); see also Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) (finding that discovery rulings are generally non-dispositive). "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." Thai Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (alterations adopted) (internal citations and quotation marks omitted). "This standard is 'highly deferential,' 'imposes a heavy burden on the objecting party,' and 'only permits reversal where the magistrate judge abused his discretion.'" Milan v. Sprint Corp., No. 16-CV-4451 (DRH), 2018 WL 1665690, at *2 (E.D.N.Y. Apr. 6, 2018) (quoting Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002)).

## III. DISCUSSION

Plaintiff objects to Judge Kuo's order on three grounds. First, Judge Kuo "appeared to erroneously adopt [City Defendants'] position that Plaintiff's private communications ceased to be confidential because she brought this action." (Obj. at 2.) Second, contrary to Judge Kuo's concerns, Defendants will not be disadvantaged by a one-sided disclosure because Plaintiff would produce any relevant communications on which she intended to rely back to the Defendants. (Id. at 2-3.) Third, Judge Kuo's order "prevents Plaintiff from receiving what is rightfully hers." (Id. at 3.) Thus, Plaintiff argues, Judge Kuo's order is clear error. (Id. at 2.)

Defendant Lenich responds that Plaintiff provides "no authority to support her position that the intercepted communications are 'rightfully hers.'" (Lenich Response in Opp'n to Obj. ("Lenich Opp'n") (Dkt. 76) at 1.) Lenich suggests that as a victim of the criminal wiretap scheme, Plaintiff has other avenues besides civil discovery to seek the content of the wiretaps, and that her status as a victim "does not entitle Plaintiff to special treatment under the Federal Rules of Civil Procedure." (Id. at 2.) City Defendants cite the Second Circuit's holding in S.E.C. v. Rajaratnam, 622 F.3d 159 (2d Cir. 2010), for the proposition that one-sided disclosure is prohibited because "[p]lacing the parties on a level playing field . . . is the very purpose for which civil discovery exists."[2] (City Def. Opp'n at 3.)

In Rajaratnam, the Second Circuit held that district courts must apply a balancing test to determine whether disclosure of the fruits of a wiretap from one party to another in a civil litigation is warranted. Rajaratnam, 622 F.3d at 181. The Second Circuit explained that under

---

[2] City Defendants also argue that Plaintiff's objections were procedurally improper because Plaintiff failed to serve a notice of motion, a memorandum of law, and any necessary affidavits, as required by Local Rule 7.1(a). (City Def. Response in Opp'n to Obj. ("City Def. Opp'n") (Dkt. 80) at 1.) The court disagrees. As Plaintiff rightly observes, Federal Rule of Civil Procedure 72(a) does not require an objecting party to make a formal motion, and Local Civil Rule 7.1(a) only applies to the filing of motions.

such circumstances, the party seeking disclosure "clearly has an interest in access to the[] wiretap conversations insofar as they create an informational imbalance prejudicing its preparation for the civil trial." Id. at 184. This is true even if the disclosing party does not intend to use such materials at trial, since "it would be nearly impossible to stop the attorneys from, at the very least subconsciously, using information from these materials in preparation for the civil trial." Id. However, the court cautioned, "a district court must balance the privacy interests at stake against the right of access at issue in the case." Id. at 172. In order to avoid any unnecessary infringement of privacy interests, the disclosure of wiretapped conversations from one party to another must be limited to "relevant conversations." Id. at 187. Moreover, where a wiretap is found to have been illegal, the balance tips towards nondisclosure. Id. at 185 ("If the wiretaps are found to have been unlawful, the privacy rights at issue would already have been grievously infringed, and further dissemination of conversations that had been illegally intercepted would only compound the injury.").

Unlike in Rajaratnam, Judge Kuo was not asked to weigh the importance of "placing the parties on a level playing field" against privacy interests. (Id. at 182.) Instead, she was asked to order the disclosure of sealed communications—which, in Plaintiff's words, are "not per se relevant to this case" (Obj. at 2 n.1)—exclusively to one party, thereby creating an informational imbalance and implicating the privacy rights of third parties. In light of the various concerns raised by Plaintiff's request as well as Plaintiff's own contention that such communications would be relevant, if at all, only to damages, Judge Kuo determined that the case should move forward without disclosure of the contents of the communications until at least the damages phase.[3] (Aug. 15 Tr. at 29:17-20.) The court finds no clear error in Judge Kuo's order. The

---

[3] To the extent that the Plaintiff sought these communications for reasons other than their relevance to the instant action—i.e., "just because she wants [them]" (Aug. 15 Tr. at 30:17-18)—the court noted that Plaintiff has "certain

8

court notes, however, that the implications of Rajaratnam for a situation in which the target of a wiretap seeks one-sided disclosure of sealed and illegally obtained, but potentially relevant, communications are unclear, and should be given due consideration after full briefing if Judge Kuo has occasion to revisit this question in the future.

With respect to Plaintiff's contention that Judge Kuo's order prevents her from accessing what is "rightfully hers" (Obj. at 3), Plaintiff points to no case law, and the court is not aware of any, suggesting that Judge Kuo erred in this respect by refusing access to the contents of the wiretap.

Accordingly, the court finds that Judge Kuo's August 16, 2018 Order was not "clearly erroneous" or "contrary to law" and declines to set it aside. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

## IV. CONCLUSION

For the foregoing reasons, the court AFFIRMS Magistrate Judge Peggy Kuo's August 16, 2018 Order denying Plaintiff's request to grant the Plaintiff one-sided access to the fruit of the wiretapping scheme at issue in this case.

SO ORDERED.

Dated: Brooklyn, New York
      February _1_, 2019

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

---

rights" as a victim of a crime and that she could potentially pursue the fruits of the wiretap in "a different action." (Aug. 15 Tr. at 30:11-18.)