UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE ROSENFELD,

    Plaintiff,

-v.-

TARA LENICH; THE CITY OF NEW YORK; LU-SHAWN M. THOMPSON, as administrator of the Estate of Kenneth P. Thompson; ERIC GONZALEZ; WILLIAM SCHAEFER; and BRIAN DONOHUE,

    Defendants.

17-CV-7299 (NGG) (PK)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TARA LENICH'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

March 1, 2019

PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
747 Third Avenue, Suite 2000
New York, New York 10017
Telephone: (212) 972-0200
Email: ecreizman@piercebainbridge.com
       jsorkowitz@piercebainbridge.com
       jnewton@piercebainbridge.com

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 3

       A.      Lenich's Unlawful Interception Of Communications ............................................ 3

       B.      Rosenfeld Initiates This Complaint ........................................................................ 4

ARGUMENT ................................................................................................................................ 5

       A.      Applicable Legal Standard ..................................................................................... 5

       B.      Plaintiff's claims for damages against Lenich should be precluded to the extent they are premised on the intervening acts of third parties ..................................................................................................................... 6

       C.      Plaintiff's claim against Lenich for tortious interference with employment fails ................................................................................................... 10

CONCLUSION ........................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank of Am. Corp. v. City of Miami, Fla.*,
 137 S. Ct. 1296 (2017)..................................................................................................7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)......................................................................................................6

*Bernshtein v. City of N.Y.*,
 496 F. App'x 140 (2d Cir. 2012) ..................................................................................6

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
 442 F.3d 410 (6th Cir. 2006), *rev'd & remanded on other grounds*, 551 U.S.
 291 (2007)......................................................................................................................9

*Bryant v. Gen. Cas. Co. of Wis.*,
 2019 WL 367292 (N.D.N.Y. Jan. 30, 2019)..................................................................5

*Chanicka v. JetBlue Airways Corp.*,
 243 F. Supp. 3d 356 (E.D.N.Y. 2017) .......................................................................10

*Cont'l Indus. Grp., Inc. v. Altunkilic*,
 2017 WL 2895933 (S.D.N.Y. July 7, 2017), *report and recommendation
 adopted*, 2018 WL 1508566 (S.D.N.Y. Mar. 27, 2018) ............................................11

*Dongguk Univ. v. Yale Univ.*,
 734 F.3d 113 (2d Cir. 2013).....................................................................................7, 8

*Hayden v. Paterson*,
 594 F.3d 150 (2d Cir. 2010)..........................................................................................5

*Judd Burstein, P.C. v. Long*,
 2018 WL 6067226 (S.D.N.Y. Nov. 20, 2018).............................................................6

*Lan Sang v. Ming Hai*,
 951 F. Supp. 2d 504 (S.D.N.Y. 2013)..................................................................11, 12

*Law Offices of Ira H. Leibowitz v. Landmark Ventures, Inc.*,
 131 A.D.3d 583 (2d Dep't 2015) ..............................................................................11

*Martin v. City of N.Y.*,
 793 F. Supp. 2d 583 (E.D.N.Y. 2011) .........................................................................9

*Megally v. LaPorta*,
 253 A.D.2d 35 (2d Dep't 1998)...................................................................................9

*Morrison v. City of N.Y.*,
    2019 WL 175121 (E.D.N.Y. Jan. 10, 2019) ...................................................................7, 9

*Patel v. Contemporary Classics of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001) ..................................................................................................3

*In re Paulsboro Derailment Cases*,
    2015 WL 3545247 (D.N.J. June 8, 2015) ...........................................................................8, 9

*Rockaway Blvd. Wrecking & Lumber Co. v. Raylite Elec. Corp.*,
    26 A.D.2d 9 (1st Dep't 1966) ................................................................................................7

*Rolon v. Henneman*,
    517 F.3d 140 (2d Cir. 2008) ..................................................................................................6

*Roman Catholic Diocese of Rockville Ctr. v. Gen. Reinsurance Corp.*,
    2016 WL 5793996 (S.D.N.Y. Sept. 23, 2016) ......................................................................6

*Townes v. City of New York*,
    176 F.3d 138 (2d Cir. 1999) ..................................................................................................7

*United States v. Lenich*,
    No. 17 Cr. 154 (E.D.N.Y.) ....................................................................................................3

*Yunus v. Robinson*,
    2019 WL 168544 (S.D.N.Y. Jan. 11, 2019), *appeal docketed*, No. 19-382 (2d
    Cir. Feb. 8, 2019) ..................................................................................................................6

**Statutes**

18 U.S.C. § 2510 ...........................................................................................................................4

18 U.S.C. § 2511 ...........................................................................................................................3

42 U.S.C. § 1983 ...........................................................................................................................4

**Other Authorities**

Andrew Keshner, "Ex-Brooklyn prosecutor hit with lawsuit for 'humiliating' co-
    worker with secret wiretap," N.Y. Post, Dec. 15, 2017,
    https://www.nydailynews.com/new-york/nyc-crime/ex-brooklyn-prosecutor-
    hit-suit-humiliating-co-worker-article-1.3700410) (last accessed Feb. 27,
    2019). ....................................................................................................................................4

Fed. R. Civ. P. 12 ................................................................................................................ *passim*

Fed. R. Civ. . 8 ..............................................................................................................................6

Tara Lenich respectfully submits this Memorandum of Law in support of her motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), precluding Plaintiff Stephanie Rosenfeld's claims for damages against Lenich insofar as those purported damages were not proximately caused by Lenich and granting judgment on the pleadings with respect to Plaintiff claim for tortious interference with her employment.

### PRELIMINARY STATEMENT

Stephanie Rosenfeld seeks damages from Lenich arising from rumor, innuendo, media attention, and office gossip for which there is there is no legally cognizable theory to hold Lenich responsible. The Amended Complaint reflects that Lenich was not responsible for disseminating the story of a "love triangle" to the media. And common sense supports that Lenich acted to ensure that the intercepted communications she obtained would never be known about, disclosed to, or discussed by any anybody, much less her colleagues or the press. Indeed, disclosure of the existence, content, or subjects of the intercepted communications before Lenich's arrest would have increased the likelihood of discovery by law enforcement, and disclosure after her arrest, when she was immediately represented by counsel, would have served as an aggravating factor at sentencing.

Lenich, of course, can only be held civilly liable for the reasonably foreseeable consequences of her conduct, which would reasonably include psychic damage to Rosenfeld based on discovering that her private communications were intercepted and listened to (although the nature and scope of any such damages have yet to be established). But "reasonably foreseeable" consequences here do not and cannot include widespread, salacious media attention or office gossip and conjecture about why Lenich obtained the wiretaps in the first place – an act for which Lenich surely has paid a substantial price including imprisonment, loss of her license to practice law, public humiliation, and reprobation by her former colleagues and the general

1

public.  The intercession of one or more individuals who made statements to the press and to others, an intervening and superseding cause, created the media frenzy and Rosenfeld's self-consciousness at work alleged in the Complaint.  Not Lenich, who scrupulously tried to avoid such attention and certainly did not seek it.

In these circumstances, the damages Rosenfeld claims as a result of media disclosure and publication, as well as office rumors, innuendo, and gossip are not recoverable against Lenich, and Rosenfeld's claims for damages as against Lenich should be so limited.

In addition, the Court should grant judgment on the pleadings as to Rosenfeld's claims for tortious interference with her employment at the Kings County District Attorney's Office.  As an initial matter, the gravamen of Rosenfeld's claim that she felt that she had to resign from her job as a prosecutor is that she felt that her colleagues, opposing counsel, judges, and court staff were judging her and speculating about whether she had an affair with Detective Lemieux.  Since that speculation was not proximately caused by Lenich, the tortious interference claim must fail.  Furthermore, because Rosenfeld voluntarily resigned from her position,  New York law does not provide her with a cause of action for tortious interference.

Accordingly, for all these reasons and the reasons set forth below, Rosenfeld's alleged damages rooted in disclosures to, or by the media, and in conjecture by others, should be precluded as against Lenich.  Furthermore, Lenich should be granted judgment on the pleadings regarding Rosenfeld's claim for tortious interference with her employment.

**STATEMENT OF FACTS**

The allegations in the Complaint are set forth below only insofar as necessary to consider Lenich's narrowly-tailored motion for partial judgment on the pleadings.[1]

### A.   LENICH'S UNLAWFUL INTERCEPTION OF COMMUNICATIONS

Lenich was formerly an Assistant District Attorney ("ADA") at the Kings County District Attorney's Office ("KCDAO"). As alleged in the Complaint, from 2012 through November 2016, Lenich was assigned to the Special Investigations bureau of the KCDAO and, from May 2015 through November 2016, Lenich was its Deputy Bureau Chief. Amended Complaint (DE 11) ("AC") ¶¶ 23, 25. On November 28, 2016, the KCDAO filed a criminal complaint charging Lenich with two counts of unlawful eavesdropping, and two counts of unlawful possession of a forged instrument. AC ¶ 68. Subsequently, on March 17, 2017, Lenich was indicted by a federal grand jury in the Eastern District of New York and charged with two counts of violating the Federal Wiretap Act, 18 U.S.C. § 2511 *et seq.*, by intercepting the cellular telephone calls of two individuals (who were later disclosed to be Rosenfeld and Lemieux) for various periods during 2015 through November of 2016. The Indictment specifically alleges that Lenich tried "[t]o avoid having her illegal eavesdropping scheme discovered" by instructing KCDAO personnel "not to listen to, read or otherwise review" the intercepted communications, which she inaccurately described as being related to a "confidential law enforcement investigation." *See* Indictment, *United States v. Lenich*, No. 17 Cr. 154 (E.D.N.Y.) (DE 1) ¶ 13. The Indictment

---

[1] On a motion for judgment on the pleadings, all factual allegations in the Complaint must be taken as true. *See, e.g.*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (standard for Rule 12(c) motion is the same as that for motion to dismiss under Rule 12(b)(6), requiring acceptance of well-pleaded allegations as true). For her response to the allegations against her, Lenich respectfully refers the Court to her Answer (DE 24).

nowhere alleges that Lenich intended to, or did, publicize or disseminate any of the intercepted material or disclosed the subjects of her eavesdropping.

B.  **ROSENFELD INITIATES THIS COMPLAINT**

On December 14, 2017 – before Lenich was sentenced – Rosenfeld launched this litigation by publicly filing a Complaint naming Lenich as a defendant and republishing substantial portions of Plaintiff's victim impact statement submitted to Judge Kuntz in anticipation of Lenich's sentencing.  *See* Complaint (DE 1) ¶ 56.  Plaintiff's initial lawsuit sought, among other things, damages purportedly caused by "media coverage" of the wiretapping episode – media coverage which, of course, the publicly-filed complaint garnered in its own right.[2]  On February 1, 2018, Rosenfeld filed the operative amended complaint, adding claims against the City of New York and various of Lenich's former colleagues at the KCDAO.  The Complaint asserts three claims against Ms. Lenich – one claim under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*, another under 42 U.S.C. § 1983, and a third for asserted tortious interference with employment under New York law.

Although Lenich's interception of Plaintiff's communications is not in dispute, the legally cognizable harm caused by, and attributable to Lenich most assuredly is.  That is because most of the damages claimed by Rosenfeld – including harassment by the press, and the perceived gossip and judgment about her engaged in by friends, family, and colleagues – were not directly caused by the interception of Rosenfeld's communications.  Instead, as described in Plaintiff's complaint, the lion's share of claimed harm was caused by the leaking (by persons

---

[2] *See, e.g.*, Andrew Keshner, "Ex-Brooklyn prosecutor hit with lawsuit for 'humiliating' co-worker with secret wiretap," N.Y. Post, Dec. 15, 2017, https://www.nydailynews.com/new-york/nyc-crime/ex-brooklyn-prosecutor-hit-suit-humiliating-co-worker-article-1.3700410) (last accessed Feb. 27, 2019).

4

other than Lenich) to the press of Rosenfeld's identity and the purported reasons Lenich obtained the wiretaps, as well as the rumors, speculation, and opinions of colleagues and other practitioners in the Kings County courts. As a matter of simple logic, it was the leaking of her identity and speculation about the backstory to the press, and not the interception itself, which proximately led to "days of coverage and speculation about Plaintiff's private life" (AC ¶ 1), to her uncomfortable work environment, and to her purported inability to find new employment.

Critically, the Complaint contains no concrete, factual allegation that Lenich discussed the wiretaps of Rosenfeld and Lemieux or her reasons for obtaining those wiretaps to the press or to anyone else, including her colleagues at the KCDOA. Nor can it, because such an allegation would not be credible. Indeed, as the Complaint itself reflects, Lenich went to great lengths to ensure that the existence and content of the recordings would never be disclosed to anyone.

Simply put, without the link provided by the actions of third parties – identifying whose telephone communications were intercepted and speculating about the reasons Lenich obtained the wiretaps – Rosenfeld's purported damages caused by rumor, innuendo, media attention, and office gossip about a supposed affair with a police detective would not have occurred.

## ARGUMENT

A. **APPLICABLE LEGAL STANDARD**

A motion for judgment on the pleadings is reviewed under "the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal citation and quotation marks omitted).

Motions under Rule 12(b)(6), and thus Rule 12(c), provide a vehicle to test the legal adequacy of a plaintiff's pleading, and courts not only dismiss claims for relief, but also preclude claims for certain types and categories of damages at the pleading stage. *See, e.g.*, *Bryant v. Gen. Cas. Co. of Wis.*, 2019 WL 367292, at *4 (N.D.N.Y. Jan. 30, 2019) (dismissing claim for

5

consequential damages in a contract dispute on a Rule 12(b)(6) motion); *Yunus v. Robinson*, 2019 WL 168544, at *1 (S.D.N.Y. Jan. 11, 2019), *appeal docketed*, No. 19-382 (2d Cir. Feb. 8, 2019) (permitting substantive claims to proceed past Rule 12(b)(6) motion but dismissing claims insofar as they sought money damages); *Judd Burstein, P.C. v. Long*, 2018 WL 6067226, at *1 (S.D.N.Y. Nov. 20, 2018) (dismissing counterclaim on the pleadings "insofar as Long seeks damages in the form of legal fees for successor attorneys" because "Long did not adequately plead any facts showing that the parties contemplated such fees as damages" (internal citation and quotation marks omitted)); *Roman Catholic Diocese of Rockville Ctr. v. Gen. Reinsurance Corp.*, 2016 WL 5793996, at *6 (S.D.N.Y. Sept. 23, 2016) (dismissing claims for punitive damages at pleading stage).

Under the familiar pleading standard of Rule 8(a), a plaintiff will survive a motion to dismiss only by alleging "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008). As explained below, the Complaint fails to satisfy this standard as against Lenich with respect to certain kinds of damages claimed and with respect to the claim against Lenich for tortious interference with Rosenfeld's employment.

### B. PLAINTIFF'S CLAIMS FOR DAMAGES AGAINST LENICH SHOULD BE PRECLUDED TO THE EXTENT THEY ARE PREMISED ON THE INTERVENING ACTS OF THIRD PARTIES

Each of Plaintiff's claims against Lenich should be precluded to the extent they seek damages caused by third parties' leaking or publication of Plaintiff's identity – neither of which was proximately caused by Lenich. "[I]n all [section] 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Bernshtein v. City of N.Y.*, 496 F. App'x 140, 143 (2d Cir. 2012) (internal citation and quotation marks omitted); *see*

6

*also Morrison v. City of N.Y.*, 2019 WL 175121, at *10 (E.D.N.Y. Jan. 10, 2019) (quoting *Bernshtein*). Similarly, with Plaintiff's statutory cause of action under the ECPA, "[i]t is a well-established principle of [the common] law that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause" and, accordingly, courts "assume Congress is familiar with the common-law rule and does not mean to displace it *sub silentio* in federal causes of action." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1305 (2017) (internal quotation marks and citation omitted). And likewise, Plaintiff can recover for injuries under New York tort law only insofar as a particular defendant has *proximately* caused those injuries. *See, e.g.*, *Rockaway Blvd. Wrecking & Lumber Co. v. Raylite Elec. Corp.*, 26 A.D.2d 9, 12 (1st Dep't 1966) (describing and approving the "basic principle of the law that a tort-feasor is responsible only for the direct and proximate result of his acts.")

In short, to obtain damages, a plaintiff must show "an unbroken sequence of events, tying its injuries to [the Defendant's] conduct." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 130 (2d Cir. 2013). Where, as here, there is an "intervening exercise of independent judgment" causing a Plaintiff's injuries, this is an intervening cause that breaks the "chain of causation." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted). On the other hand, to the extent there is not an "unbroken sequence of events tying" Lenich's conduct to Plaintiff's claimed injuries, as is the case here, then Lenich cannot be held responsible to compensate Plaintiff for those damages.

Here, as set forth above, a substantial proportion of Plaintiff's claimed damages are said to have resulted from conjecture and innuendo about Plaintiff that was the proximate result of the leaking and publicizing of Plaintiff's identity and a rumored affair by third parties, not the interception of Plaintiff's communications. Under these circumstances, Lenich cannot be said to

7

have *proximately* caused the rumor, innuendo, media attention, or office gossip Plaintiff alleges caused her suffering independent of the invasion of her privacy stemming from the interception of her communications.

The opinion in *Dongguk University* is instructive. There, Dongguk University in Korea sued Yale University, claiming that Yale had negligently confirmed that a professorial candidate obtained a degree from Yale, which caused Dongguk to hire that candidate. 734 F.3d at 117. Dongguk University sought damages from Yale for the alleged damage to Dongguk's reputation resulting from its offer of employment to the candidate. The Second Circuit affirmed the dismissal of Dongguk's claim, reasoning that Dongguk's reputational injury was not caused by Yale's conduct, but rather "was caused, if at all, by the news reports" relating to the professor's misconduct, including his misrepresentation that he had a degree from Yale. *Id.* at 131. According to the Second Circuit, "Dongguk failed to raise any material question of fact that [Yale's erroneous confirmation of the degree] was the proximate cause of Dongguk's reputational injury." *Id.* So too here, where it was not Ms. Lenich's conduct, but rather the intervening actions of third parties (which Plaintiff herself claims constitute independent wrongdoing), that caused the reputational and other harms Plaintiff alleges she suffered.

A district court in the District of New Jersey employed a similar analysis where a municipality and its public school system sought damages from a railroad company for reputational damage to the community based on "adverse publicity" regarding "the release of hazardous substances into the community" as a result of a derailment. *In re Paulsboro Derailment Cases*, 2015 WL 3545247, at *1 (D.N.J. June 8, 2015). The court granted the defendant's Rule 12(b)(6) motion to dismiss the count seeking damages predicated on reputational harm, reasoning that "if the media had not publicized the event, Plaintiffs would not

8

have suffered the degree of harm alleged. This presents a situation of an intervening cause, . . . and the Court is obligated to draw the line in the interest of public policy." *Id.* at \*5. Here, as in *Paulsboro*, as a matter of law, Lenich should not be held responsible for injuries that, on the face of Plaintiff's complaint, were caused by third parties and not Lenich herself.

Likewise, in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, the Sixth Circuit affirmed the preclusion of reputational damages sought by a high school in an action against a state interscholastic athletic association arising from a penalty levied by the association on the school. 442 F.3d 410 (6th Cir. 2006), *rev'd & remanded on other grounds*, 551 U.S. 291 (2007). The Sixth Circuit observed that the lower court had "sensibly concluded that even if Brentwood's reputational harms were foreseeable, they could be traced much more directly to the media and other third-party actors than to the [association] . . . ." 442 F.3d at 444. The same reasoning obtains here where Plaintiff's reputational injuries can be "traced much more directly to the media" than to Lenich who, the record reflects, attempted at all times to prevent third parties from discovering that her communications had been intercepted.

In sum, where, as here, a plaintiff's claimed injuries are caused by media coverage or disclosure of a defendant's conduct – and not by the conduct itself – that defendant cannot be said to have *proximately* caused those injuries. *See also., e.g.*, *Morrison*, 2019 WL 175121, at \*10 (dismissing § 1983 claims for damages against particular police officers because subsequent action by police officers broke the causal chain between an allegedly unconstitutional arrest and the plaintiff's injury); *Martin v. City of N.Y.*, 793 F. Supp. 2d 583, 587 (E.D.N.Y. 2011) (finding that other inmates' intentional wrongdoing broke causal chain between allegedly wrongful arrest and injuries plaintiff suffered in prison); *Megally v. LaPorta*, 253 A.D.2d 35, 43-44 (2d Dep't 1998) (defendant pathologist whose misdiagnosis led surgeon to perform a medically

9

unnecessary mastectomy "cannot be held to be responsible [to the surgeon] for the course of conduct of the patient and her husband in deciding to air their allegedly justifiable grievances in a variety of public forums").

Applying that common-sense rule here, the Complaint fails to plead any plausible claim for damages against Lenich premised on rumor or innuendo resulting from the action of third parties and not Lenich herself. Accordingly, to the extent Plaintiff seeks damages from Lenich predicated on rumor, innuendo, media attention, or office gossip, those damages should be precluded as against Lenich.

### C. PLAINTIFF'S CLAIM AGAINST LENICH FOR TORTIOUS INTERFERENCE WITH EMPLOYMENT FAILS.

Plaintiff's tortious interference claim fails because (1) she does not adequately plead proximate cause; (2) she does not adequately plead that her relationship with the KCDAO was interfered with or that it was Lenich who interfered with it; and (3) she does not, and cannot, allege that Lenich's conduct was directed toward the KCDAO itself.[3]

First, as with her other claims, Plaintiff does not adequately plead that Lenich disclosed any information from the wiretap to anyone at the KCDAO. Plaintiff's claim for tortious interference with her employment at the KCDAO is premised on publicity and speculation by colleagues and others in the Kings County courts. Specifically, Plaintiff alleges she "was forced" to resign because "employees were talking about her behind her back," her "supervisors looked at her differently; defense attorneys and even judges treated her differently." AC ¶ 88.

---

[3] The Court should also grant judgment on the pleadings on Plaintiff's tortious interference claim for the independent reason that she does not allege that she "had an employment contract . . . that provided for a fixed or definite term of employment." *Chanicka v. JetBlue Airways Corp.*, 243 F. Supp. 3d 356, 360 (E.D.N.Y. 2017). Accordingly, she is "presumed to be an at-will employee," and cannot maintain a claim for tortious interference with any employment contract under New York law. *Id.*

10

As explained above, however, the Complaint is devoid of any concrete (or credible) factual allegation that Lenich disclosed Rosenfeld's name or purported exploits to others internally within KCDAO, or externally to the press, vitiating the proximate cause element of this claim.

Second, Plaintiff does not adequately plead that her relationship with the KCDAO was interfered with or that Lenich's actions caused the alleged injury. "To state a claim for tortious interference with business relations, a plaintiff must adequately allege [elements including] that: . . . the defendant interfered with those business relations; . . . [and] the defendant's acts injured the relationship." *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 527-28 (S.D.N.Y. 2013). *See also Law Offices of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 131 A.D.3d 583, 585 (2d Dep't 2015) (making clear that tort actions are only permitted in limited circumstances where "interference with prospective business relations" was actually "accomplished").

Here, the Complaint makes clear that it was Plaintiff who voluntarily chose to resign from the KCDAO (AC ¶¶ 87-89, 133), and there is no allegation in the Complaint or inference that can be drawn from any of the Complaint's allegations that Plaintiff's employment – which continued for more than six months after Lenich was arrested – was ever placed in jeopardy. Plaintiff cannot externalize the cost of her decision to leave her employment at KCDAO and thus, even if the rumor, innuendo, media attention, and office gossip that purportedly caused this situation could be laid at Lenich's feet, Plaintiff's claim for tortious interference should still be subject to judgment on the pleadings.

Third, "conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Lan Sang*, 951 F. Supp. 2d at 528; *see also Cont'l Indus. Grp., Inc. v. Altunkilic*, 2017 WL 2895933, at *6 (S.D.N.Y. July 7, 2017), *report and recommendation*

11

*adopted*, 2018 WL 1508566 (S.D.N.Y. Mar. 27, 2018) (citing *Lan Sang*).  Because "Plaintiff has not alleged . . . that Defendant['s] conduct was in any way directed toward [her employer] or any other third party with whom Plaintiff had an existing or prospective business relationship," her tortious interference claim must fail.  *Lan Sang*, 951 F. Supp. 2d at 528.  In *Lan Sang*, the court dismissed a plaintiff's tortious interference claim against her former attorneys, who allegedly published defamatory statements about her on the firm's blog and at a press conference, because such statements were not directed toward any of the plaintiff's potential sponsors or employers.  *Id.*  In this case, it is unquestionable that Lenich's actions were directed toward Plaintiff alone, and Plaintiff does not, and cannot, allege otherwise.  Accordingly, her tortious interference claim must fail.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims for damages should be precluded to the extent they are premised on rumor, innuendo, media attention, and office gossip proximately caused by third parties, and her claim for tortious interference with employment should be subject to judgment on the pleadings in full.

Dated: New York, New York  
       March 1, 2019

PIERCE BAINBRIDGE BECK PRICE & HECHT LLP

By: */s/ Eric Creizman*  
    Eric M. Creizman  
    Jonathan A. Sorkowitz  
    Jeffrey O. Newton  
    747 Third Avenue, Suite 2000  
    New York, New York 10017  
    Tel.:   (212) 972-0200  
    Email: ecreizman@piercebainbridge.com  
            jnewton@piercebainbridge.com  
            jsorkowitz@piercebainbridge.com

*Attorneys for Defendant Tara Lenich*